*Exhibit "A"*

# Provosty, Sadler & deLaunay, APC
## Attorneys and Counselors at Law

934 THIRD STREET, SUITE 800
P. O. BOX 13530
ALEXANDRIA, LOUISIANA 71315-3530
TELEPHONE (318) 445-3631
TELEFAX (318) 445-9377
WWW.PROVOSTY.COM

H. BRENNER SADLER[1]
FREDERICK B. ALEXIUS
JOSEPH J. BAILEY
H. BRADFORD CALVIT
CATHERINE G. BRAME
JOHN D. RYLAND

DAVID W. LAMBERT[2]
DAVID T. MARLER
ELI J. MEAUX
JAMES W. STANDLEY, IV

LEDOUX R. PROVOSTY (1894-1980)
RICHARD B. SADLER, JR. (1912-1990)
LEDOUX R. PROVOSTY, JR. (1930-1995)
WILLIAM H. DELAUNAY, JR. (1938-2010)

JOSEPH R. MARTIN, OF COUNSEL

[1]BOARD CERTIFIED IN TAXATION
[2]ALSO ADMITTED IN TEXAS

February 28, 2020

Writer's Direct Dial: 318/767-3118
E-Mail: emeaux@provosty.com

**Via First Class Mail**
Sean Wesley (#372598)
PRO SE
Raymond Laborde Correctional Center
1630 Prison Road
Cottonport, LA 71327
P: 318-876-2891

RE:     Sean Wesley (#372598) v.
LaSalle Management, et al
Docket No.: 1:16-cv-1479-P
USDC-WD-LA (Alexandria)
LMC: 10.166
File: 18-5810.113

Dear Mr Wesley:

Enclosed please find the Supplemental Responses to Request for Production of Documents in the above aforementioned matter.

With kind regards, I remain,

Sincerely,

PROVOSTY, SADLER, & deLAUNAY, APC

H. BRADFORD CALVIT
ELI J. MEAUX

EJM:ts
Enclosure
cc(w/encl):   Tracy Ledoux  / Ryan Horvath  / James McCormick

*Exhibit A*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

**SEAN WESLEY, PRO SE**             **CIVIL ACTION NO: 1:16-CV-1479**
**(#372598)**

**VERSUS**                          **JUDGE DRELL**

**LASALLE MANAGEMENT, ET AL.**      **MAGISTRATE JUDGE PEREZ-MONTES**


## SUPPLEMENTAL RESPONSES TO
## REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, LASALLE MANAGEMENT COMPANY, LLC, which in response to Plaintiff's

Request For Production of Documents, respectfully supplements as follows:

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:**

A copy of the written contract entered with the State of Louisiana through the Louisiana

Department of Corrections to house prisoners serving sentences imposed for felonies.

**SUPPLEMENTAL RESPONSE**
**TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:**

There are no contracts with the State of Louisiana through the Louisiana Department of
Corrections and LaSalle Management Company. In the spirit of cooperation in discovery the
following contracts are provided:

1.  Claiborne Parish Detention Center Agreements (CPDC K1-15)

2.  River Correctional Center Agreements (RCC K1-27)

3.  Jackson Parish Correctional Center  Agreements (JPCC K1-21)

4.  LaSalle Correctional Center  Agreements (LCC K1-15)

5.  Madison Parish Correctional Center Agreements (MCC K1-27)

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:**

A copy of all communications made with any authorized employee(s) of the State of Louisiana through the Louisiana Department of Corrections advising any employee(s) working at prisons owned and/or operated by LaSalle Management Company not to treat plaintiff Wesley for Hepatitis C.

**SUPPLEMENTAL RESPONSE**
**TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:**

A good faith effort was made to search for documents responsive to this Request for Production at the facilities at issue. The results of those searches is as follows:

1. River Correctional Center - no records of any such communications.

2. Jackson Parish Correctional Center - no records of any such communications.

3. Madison Parish Correctional Center - no records of any such communications.

4. LaSalle Correctional Center - no records of any such communications.

5. Claiborne Parish Detention Center - no records of any such communications.

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:**

A copy of all grievances sent to the warden's office via institutional mail system that shows the date it was received.

**SUPPLEMENTAL RESPONSE**
**TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:**

A good faith effort was made to search for documents responsive to this Request for Production at the facilities at issue. The results of those searches is as follows:

1. Claiborne Parish Detention Center - None.

2. River Correctional Center - None.

3. Jackson Parish Correctional Center - ARP dated November 23, 2016. (WESLEY/JPCC ARP 1)

4.    LaSalle Correctional Center - None. However in the spirit of cooperation in discovery see attached medical records (LCC M1-3).

5.    Madison Parish Correctional Center - None.

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:

A copy of the written policy of LaSalle Management Company A/K/A LaSalle Corrections regarding treatment and care for DOC prisoners with Hepatitis C house in prisons owned and/or operated by LaSalle Management Company.

## SUPPLEMENTAL RESPONSE
## TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:

A good faith effort was made to search for documents responsive to this Request for Production at the facilities at issue.  The results of those searches is as follows:

1.    Claiborne Parish Detention Center - None.

2.    River Correctional Center - None.

3.    Jackson Parish Correctional Center - None

4.    LaSalle Correctional Center - Please see LCC Policy on Infection Control (WESLEY/LCC4-7).

5.    Madison Parish Correctional Center - The requested records were previously provided; however, please see records marked (WESLEY/MCC 1-14).

Respectfully submitted:

**PROVOSTY, SADLER, & deLAUNAY, APC**

By: _____
H. BRADFORD CALVIT (#18158)
bcalvit@provosty.com
ELI J. MEAUX (#33981)
emeaux@provosty.com
934 Third Street, Suite 800 (71301)
P.O. Box 13530
Alexandria, LA 71315-3530
P: 318/767-3133    F: 767-9688
ATTORNEYS FOR DEFENDANT,
LASALLE MANAGEMENT COMPANY, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing SUPPLEMENTAL RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS has been served upon plaintiff by placing same in the U.S. Mail, properly addressed and with postage affixed, at Alexandria, Louisiana, this 28th day of February, 2020.

_____
OF COUNSEL

5.

*Exhibit 1*

LaSalle Correctional Center

**Institutional Policy Number:**

**Subject:**           LCC Medical Staff Portfolio and Procedural Protocol

**Reference:**         ACI 4th Edition - Health Care/Section E, Standards 4-4344
                       Through 4-4427, DR B-06-001, DR B-02-001

**Effective Date:**     2/12/2015

**To Whom This Applies:**   All Staff

**POLICY**
**STAFFING**
It is the policy of LCC to ensure the provision of quality health care services will be done in a professional manner by qualified and competent personnel.

**PROCEDURE**
**CHAIN OF COMMAND**
The following chain of command is to be utilized in decision-making processes, grievance procedures and in assigning responsibilities.

The Warden of the institution will have the final authority in all administrative decisions.

**PHYSICIAN**
The physician will have the final authority in all clinical decisions. However, being a contract employee, the physician will not be involved in any grievance procedures not directly related to that position. (4-4381)

12

A sealed first aid kit, stocked and maintained by medical staff, will be issued to each work crew that leaves the compound. First aid kits are in designated locations throughout the institution and should be utilized in any emergency situation. (4-4349 & 4-4390)

These first aid kits shall contain the following items:

(1) Sterile 4x4 Gauze Pad
(1) 1" Tape
(1) 3" Bandage
(1) Seat Belt Cutter
(1) CPR Micro Shield
(1) Pressure Dressing
(1) Pair Gloves
(1) Red Bag

From 4:00 pm to 8:00 am the following procedures should be followed:

If the emergency is not immediately life threatening, the Shift Commander shall call the DON for instructions. The DON is on duty 5 days a week (Monday – Friday) and may be reached at any time during off duty hours in emergency situations. (4-4351)

If the emergency requires transporting the offender to the hospital, the Shift Commander shall assign security personnel to transport the offender or contact Hardtner Medical Center Ambulance if deemed necessary. The Shift Commander will be responsible for determining the seriousness of the emergency, and the method of transportation to medical care as needed. (4-4351)

Security procedures shall be adhered to when transporting an offender via fleet vehicle or ambulance. If an offender is being transported by ambulance a security officer shall accompany the paramedics/EMTs and maintain full custody and control of the offender. (4-4351)

## INFECTION CONTROL

It is the policy of LCC to provide proper management of all infectious and communicable diseases thereby ensuring the safety of the offender population, the employees, and the public in general. (4-4354, 4-4355, 4-4356 & 4-4357) (4-4354)

The management of communicable and infectious diseases includes procedures for:

(1) Identification and monitoring of communicable and infectious diseases is done on a continuous basis by the medical department and findings are reported quarterly to the Warden's Office and Chief of Security's Office.

12

2.

WESLEY LCC5

13

(2) Staff training and offender education on communicable and infectious diseases is performed during staff orientation training, annual in-service training and offender intake orientation.

(3) When medical isolation is deemed necessary to protect either the offender or the facility, a medical transfer is requested to an appropriate D.O.C. facility.

(4) Follow-up care on communicable and infectious diseases are performed as ordered by the physician, mid-level provider, or licensed prescriber.

(5) Reporting of communicable and infectious diseases is done in accordance with local and state laws and DPS&C policy.

(6) All medical information is considered confidential and the offender's medical chart is kept in a secure location with limited access.

(7) Appropriate safeguards for staff and offenders are initiated on a case by case basis and may include, but not limited to, personal protective equipment, isolation procedures or transfer of an offender.

(8) LCC's standing order for occupational exposure shall be used for possible exposures to HIV and viral hepatitis.

## INFECTIOUS AND COMMUNICABLE DISEASES

Screening for infectious or communicable diseases will be carried out as ordered by the institution's physician or mid-level provider, the center for disease control and La. DPS & C.

## TREATMENT AND EDUCATION

A positive screening for any infectious or communicable disease will result in the initiation of protocol, as prescribed by the agency's physician or mid-level provider. All offenders testing positive for any infectious or communicable disease will be offered both written and oral educational materials on the disease. (4-4354 & 4-4361)

## FOLLOW UP

All offenders having an infectious or communicable disease will be routinely followed as prescribed by the agency's physician or mid-level provider. (4-4354)

(4-4355)
## MANAGEMENT OF TUBERCULOSIS

Procedures for the management of tuberculosis in offenders are identified in the communicable disease and infection control program. In addition, the following procedures shall also be included:

(1) All offenders will be screened annually for TB. Upon arrival to LCC, the offender's medical chart will be reviewed for current TB testing. If testing is current, the offender will be tested each year thereafter on or near the date of the last charted test. If not current, the offender will be tested

13

3.

WESLEY LCC6

14

immediately after his arrival. Form HC-09-A "Offender Tuberculosis Screening Test" shall be used for this purpose.

(2) Treating the offender if he is identified as having latent tuberculosis infection and/or tuberculosis disease is performed per the Health Department guidelines as ordered by the physician or mid-level provider.

(3) Referral and transfer to a facility where medical isolation is available when there is an abnormal CXR suggestive of active tuberculosis.

(4) Follow-up care, including arrangement with applicable departments of health for continuity of care if offender is released prior to completion of therapy is performed by the LCC medical department.

All offenders with a history of a positive TB test will be followed up annually for signs and symptoms of the disease.

(4-4354-1)

MRSA INFECTION MANAGEMENT

The management program of offenders with Methicillin Resistant Staphylococcus Aureus, also known as MRSA, shall include procedures for:

(1) Evaluating and treating infected offenders shall be performed per abscess standing order.

(2) Medical isolation, if necessary, shall be done in an inner cell per the discretion of the health authority and the Warden or his designee.

(3) An offender shall not be transferred to another D.O.C. facility with a draining abscess unless an emergency situation arises and with the approval of the Warden or his designee.

Requirements identified in the communicable disease and infection control program shall also be utilized for the management of offenders with MRSA

(4-4356)

MANAGEMENT OF HEPATITIS A, B, and C

Management of hepatitis A, B, and C in offenders includes procedures for:

(1) An initial ALT level will be used as a screening tool before ordering a hepatitis panel, when applicable. (4-4357)

MANAGEMENT OF HIV INFECTION

LCC shall include procedures for the management of HIV infection in offenders. The procedures shall include:

(1) Testing for HIV will be done as decided by the physician or mid-level provider based on individual medical histories, and present health complaints. All offenders who have tested positive for HIV will be reported to the LaSalle

14

4.

WESLEY LCC7

*Exhibit 2*

## SPECIFIC AGREEMENT

THIS AGREEMENT is entered into on the ___2 4th___ day of
___December___, 19__97__, between the LaSalle Parish Law Enforcement District,
represented herein by Dennis Warwick, Sheriff of LaSalle Parish, Louisiana and Chief
Law Enforcement Officer of LaSalle Parish, Louisiana (hereinafter referred to as
"SHERIFF"); and LaSalle Correctional Corporation, L.L.C., (hereinafter referred to as
"L.C.C."), a limited liability corporation domiciled in the parish of Richland, Louisiana,
represented herein by its duly authorized President, W. K. McConnell, for the purpose of
constructing, equipping, and operating a new jail facility located in LaSalle Parish,
Louisiana, for the housing of federal, out-of-state, state and parish inmates, as well as
pretrial parish prisoners (hereinafter referred to collectively as "INMATES"), on the
following general terms and conditions.

### I. PURPOSE OF AGREEMENT

L.C.C., acting as a private contractor under the provisions of
Louisiana Revised Statute 39:1800.1, et seq., will construct a new jail facility on
privately owned property located within LaSalle Parish, Louisiana, and will operate this
jail facility, along with sufficient surrounding property as needed for the proper operation
and security of the jail facility (hereinafter referred to as the "JAIL FACILITY") for the
SHERIFF. The JAIL FACILITY and sufficient surrounding property will be operated in
accordance with LSA R.S. 39:1800.1, et seq., as well as the consent decree rendered in
the case of Hayes Williams, et al vs. John J. McKeithen, et al, Docket No. 71-98-B in the
United States District Court in and for the middle District of Louisiana, (hereinafter
referred to as the "CONSENT DECREE"), and the Basic Jail Guidelines dated May 25,
1994, which have been recently mandated by the United States District Court, Middle
District of Louisiana for institutions housing Department of Corrections inmates.

### II. SPONSOR FEE FOR JAIL FACILITY

L.C.C. will purchase the property described in Exhibit "A" on which will be built
the JAIL FACILITY. The term of this agreement will be for a primary term of twenty
(20) years, with a 20-year option to renew, commencing on the date that final acceptance
of the JAIL FACILITY is issued by the Department of Corrections, and any other such
agency from which such acceptance is mandated.

LCC K1

The Sheriff will receive all payments for housing of any and all INMATES ("Payments"), and will remit to L.C.C. therefrom on a monthly basis the following:

All of the payments will be directed to L.C.C. as soon as possible, but not later than 72 hours after all the payments are received. L.C.C. will then return a check for the sponsorship fee to the Sheriff on a monthly basis.

The sponsorship fee will be determined as follows:

1. $80,000/year guaranteed minimum to be paid beginning 60 days after the first check is received from D.O.C. for housing of state inmates. The monthly check is to be $80,000/12 or $6,667/month for the initial period. For example, if the first D.O.C. check is received on June 15, 1999, then the first sponsor fee payment would be made to the SHERIFF on approximately August 15, 1999.

2. The sponsorship fee will be adjusted on an annual basis beginning after the first tax return is filed. The sponsorship fee will be adjusted to the greater of $80,000/year or 10% of the net income before tax as determined by the tax return for L.C.C.

3. In the event that the state D.O.C. per diem rate is adjusted to $25/day, then the sponsor fee will be increased effective the same date as the per diem to $100,000/year. If this occurs during the calendar year, then the fee will be prorated proportionately the $100,000/year., or the 10% of net income before tax, depending on whichever is greater. WKM DEW

### III. OPERATION OF JAIL FACILITY

The L.C.C. will operate the JAIL FACILITY and will provide all of the personnel necessary and proper for its operation in compliance with LSA R.S. 39:1800.1, et seq., the CONSENT DECREE, and the BASIC GUIDELINES, together with any additions and amendments thereto, during the term of the AGREEMENT.

The following specific rights, obligations and duties relative to the operation of the JAIL FACILITY are agreed upon by the parties hereto:

A. L.C.C. will construct and completely furnish the JAIL FACILITY with a capacity to house three hundred and fifty (350) inmates, together with fencing, razor wire, video surveillance, and other outside improvements, and with all items necessary for its acceptance, approval, and operation in accordance with the Cooperative Endeavor Agreement between the Louisiana Department of Public Safety and Corrections and the LaSalle Parish Law Enforcement District, LSA R.S. 39:1800.1,

LCC K2

et seq., the CONSENT DECREE and the BASIC GUIDELINES.
The parties agree that in the event that L.C.C. expands the JAIL FACILITY, and assuming that the D.O.C. and the consent decree allow for said expansion, then the L.C..C. will operate said JAIL FACILITY under the same terms and conditions of this Specific Agreement. SHERIFF agrees to make a good faith effort to cooperate in every way with L.C.C. in the operation, personnel selection, and inmate selection criteria.

  1. L.C.C. will employ the LaSalle Management Corporation, L.L.C. ("L.M.C.") to totally manage the jail facility. Plans are to include an experienced law enforcement officer currently serving as sheriff of a nearby parish as part of the management team.
  2. Approval of the warden hired to manage the LaSalle Parish Detention Center will be required by both L.M.C. and the Sheriff of LaSalle Parish ("SHERIFF"). The SHERIFF will also be involved in recommending personnel for all potential staff positions-- chief of security, maintenance foreman, clerical, cook, security lieutenants, etc. The actual selection of the employees will be done by L.M.C. with the SHERIFF having the initial authority to approve or reject any of the staff members selected for employment by L.M.C.
  3. L.M.C. will be responsible for assisting the LaSalle Parish Sheriff ("SHERIFF") in the preparation of all documents required to make the detention facility a reality.
  4. L.C.C. agrees to incorporate into the facility up to 15 beds which could be utilized to house pretrial and/or parish INMATES. The supervision and maintenance of this part of the population is the responsibility of L.C.C.; however, medical expense and uniforms are specifically excluded.
  5. The LaSalle SHERIFF shall have the right to inspect the facility at any time with proper notification given to L.M.C. All comments and/or suggestions made by the LaSalle SHERIFF will be considered for incorporation into the operating procedures. Written responses will be provided if requested by the LaSalle SHERIFF.

B. L.C.C. will install a law library in accordance with LSA R.S. 39:1800.1, et seq., the CONSENT DECREE and the BASIC GUIDELINES, as part of the "turn-key job".

C. L.C.C. will be responsible for the following items pertaining to the construction and maintenance of the building.
  1. A one-year warranty on the entire facility, including workmanship and installation of the items relating

LCC K3

to the construction, will be provided by L.C.C. from the construction contract.

2. A list of extended warranties for such items as the HVAC system, the electrical system, the emergency generator, etc. will be included from the construction company as required by the plans and specifications and as is standard in the construction industry.

3. L.C.C. will be responsible for the repair and maintenance of the structural components of the JAIL FACILITY, including the concrete slab, the concrete block walls, the structural steel columns and beams for the life of the project.

D. In addition, the L.C.C. will be responsible for the payment of:

1. the medical expenses of the INMATES housed at the JAIL FACILITY with the exclusion of parish INMATES or parish pretrial inmates;

2. the utilities of the JAIL FACILITY;

3. the liability insurance on the JAIL FACILITY and for the housing of the INMATES;

4. the clothing and linen necessitated by the operation of the JAIL FACILITY;

5. all salaries, taxes and other expenses for personnel employed in connection with the operation of the JAIL FACILITY;

6. all costs of transportation of INMATES, for any reason whatsoever;

7. all costs associated with feeding of prisoners;

8. any property taxes on JAIL FACILITY.

9. routine maintenance and repairs not covered by the one-year guarantees and additional extended warranties as outlined above. This includes, but is not limited to, the janitorial services, garbage and trash removal, grounds maintenance, plumbing, and electrical and HVAC repairs, etc.

E. L.C.C. to be responsive to SHERIFF's request to utilize local suppliers/subcontractors where prices are competitive.

F. The SHERIFF will retain the right to accept or reject any INMATES for housing at the JAIL FACILITY.

G. L.C.C. will, at its expense, obtain all plans and other materials necessary for designing, planning, and constructing the JAIL FACILITY, and will be responsible, at its expense, for the hiring of the architects(s), draftsmen, consultants, and other persons necessary and proper for this purpose.

LCC K4

H. The SHERIFF will review and approve the plans for the JAIL FACILITY prior to the beginning of construction thereof.

I. L.C.C. will install and maintain, at its expense, in the JAIL FACILITY, a telephone system for the use of INMATES.

J. The SHERIFF will house all D.O.C. INMATES in the Parish of LaSalle, Louisiana at the JAIL FACILITY once occupancy thereof begins unless the facility maintains 100% occupancy.

K. L.C.C. shall be responsible for the payment of, and provide the SHERIFF proof of coverage as applicable and as requested by the SHERIFF for the following:

A standard fire insurance policy insuring the JAIL FACILITY and its contents for losses and damages resulting from fire or other perils and a comprehensive general liability policy insuring L.C.C. for any loss or damages to persons or property in connection with the ownership and operation of the JAIL FACILITY. L.C.C. will be responsive to the SHERIFF's request to allow local insurance agents to offer proposals for consideration by L.C.C.

L. L.C.C. indemnifies and holds SHERIFF harmless for any claims made against SHERIFF, his agents or employees for injuries or property damage during the construction of the JAIL FACILITY.

M. L.C.C. will construct and operate a commissary within the JAIL FACILITY.

## IV. CONDITIONS

This agreement is entered into between the parties contingent upon approval being received by the SHERIFF from the Department of Corrections ("D.O.C.") for the construction and operation of the JAIL FACILITY, as substantially set forth in the "Cooperative Endeavor Between the Louisiana Department of Public Safety and Corrections and Dennis Warwick, Sheriff of LaSalle Parish", upon the extension of sufficient financing to L.C.C. for the acquisition, constructing, and equipping of the JAIL FACILITY, and upon the continued funding and continued housing of INMATES by

LCC K5

D.O.C. pursuant to the "Cooperative Endeavor Agreement Between the Louisiana Department of Public Safety and Corrections and the LaSalle Parish Law Enforcement District".

THUS DONE AND SIGNED, after due reading of the whole, at _Jena_, Louisiana, this _24th_ day of _December_, 19__.

WITNESSES:                          LASALLE PARISH LAW
                                    ENFORCEMENT DISTRICT,
                                    THROUGH
                                    DENNIS WARWICK, SHERIFF AND
                                    CHIEF LAW ENFORCEMENT
                                    OFFICER OF
                                    LASALLE PARISH

_____
_____
_____
NOTARY PUBLIC                       By: _____

WITNESSES:                          LASALLE CORRECTIONAL
                                    CORPORATION, L.L.C.

_____
_____                By: _____


                    _____
                       NOTARY PUBLIC


My commission expires: _at death_

LCC K6

## FIRST AMENDMENT TO SPECIFIC AGREEMENT

STATE OF LOUISIANA

PARISH OF LASALLE

BEFORE ME, the undersigned Notary Public and competent witnesses came and appeared:

LASALLE PARISH LAW ENFORCEMENT DISTRICT, referred to hereinafter as "L.P.L.E.D.", represented herein by Dennis Warwick, Sheriff of LaSalle Parish, Louisiana and Chief Law Enforcement Officer of LaSalle Parish, Louisiana, said district being referred to hereinafter as "SHERIFF"; and

LASALLE CORRECTIONAL CENTER, L.L.C., a limited liability company, whose registered office is c/o William K. McConnell, 810 Louisa St., P. O. Box 486, Rayville, Louisiana 71269, represented herein by William K. McConnell, referred to hereinafter as "L.C.C.",

who upon being duly sworn did declare as follows:

A "Specific Agreement" was entered into by SHERIFF and L.C.C. on December 24, 1997. The parties hereto now agree that the "Specific Agreement" referred to hereinabove shall be amended by adding thereto the following:

In order to improve the quality of jobs being offered for the employees of the L.C.C. and to insure that those employees will be eligible to participate in the Louisiana Sheriff Association's medical benefits and retirement plan, the following modifications are being made:

(1)    L.C.C. commits that each employee will be commissioned by the SHERIFF of LaSalle Parish, if the SHERIFF desires to do so.

(2)    L.C.C. commits to require each commissioned employee to participate in the medical plan and retirement plan as offered by the Louisiana Sheriff Association.

(3)    L.C.C. commits to provide both general liability and professional liability insurance for the facility and on each employee in the facility.

(4)    To insure that the commissioned employees of the L.C.C. qualify for the medical benefits and retirement plan, the actual payroll checks for these employees will be written by the L.P.L.E.D.

LCC K7

The money needed to cover the cost of this payroll, the medical benefits, and the retirement plan incurred by the L.P.L.E.D. will be the responsibility of the L.C.C. The money needed to cover such costs will be deposited into a special payroll and benefits account prior to the payroll checks being issued.

(5)   Further, the requirement that 15 beds be made available to the SHERIFF for the use of holding pretrial detainees will be eliminated.

(6)   The requirements for the L.C.C. personnel will be as follows:
   a) clear of criminal history
   b) sound health
   c) of good moral statute
   d) possess or pursue immediately a G.E.D. or high school educational degree
   e) must complete post certification for correctional officers
   f) character must be above reproach throughout employment
            *Note: These employees are not covered under civil service rules and/or guidelines.

(7)   The responsibility for hiring, training, terminating, promoting, scheduling work, etc. for all employees of L.C.C. remains the responsibility of the warden of L.C.C.; however, the SHERIFF must approve of any and all new hires.

(8)   compensation for surplus goods from the federal and state surplus agencies approved by the SHERIFF of LaSalle Parish for use in the L.C.C. facility will be made by L.C.C. in lump sum prior to the due date of the payment due to the federal and/or state surplus agency.

Except as amended above, the "Specific Agreement" dated December 24, 1997

and the amendments and corrections set forth hereinabove shall remain as written.

LCC K8

THUS DONE AND SIGNED, after due reading of the whole, at _Jena_,

Louisiana, on this _26th_ day of _January_, 1999.

WITNESSES:

LASALLE PARISH LAW ENFORCEMENT DISTRICT
through Dennis Warwick, Sheriff and Chief Law
Enforcement Officer of LaSalle Parish

By: _____
      DENNIS WARWICK

LASALLE CORRECTIONAL CENTER, L.C.C.

By: _____
    WILLIAM K. McCONNELL

_____
NOTARY PUBLIC

My commission expires: _6-30-2000_

LCC K9

## SECOND AMENDMENT TO SPECIFIC AGREEMENT

STATE OF LOUISIANA

PARISH OF LASALLE

BEFORE ME, the undersigned Notary Public and competent witnesses came and appeared:

> LASALLE PARISH LAW ENFORCEMENT DISTRICT, referred to hereinafter as "L.P.L.E.D.", represented herein by Carl Smith, Sheriff of LaSalle Parish, Louisiana and Chief Law Enforcement Officer of LaSalle Parish, Louisiana, said district being referred to hereinafter as "SHERIFF"; and

> LASALLE CORRECTIONAL CENTER, L.L.C., a limited liability company, whose registered office is c/o William K. McConnell, 105 Ray Street--Suite A, P. O. Box 809, Rayville, Louisiana 71269, represented herein by William K. McConnell, referred to hereinafter as "L.C.C.",

who upon being duly sworn did declare as follows:

A "Specific Agreement" was entered into by SHERIFF and L.C.C. on December 24, 1997 and amended the first time on January 26, 1999. The parties hereto now agree that the "Specific Agreement" referred to hereinabove shall be amended a second time by adding thereto the following:

The L.C.C. will increase the bed capacity from the current level of 448 beds to a new level of approximately 610 beds. As a result of this expansion, the sponsorship fee will be modified as follows:

> (1)    Upon execution of this second amendment, L.C.C. will begin providing a supervisor at no cost to the L.P.L.E.D. (along with an inmate work crew already being provided) for the purpose of doing public work, such as highway trash pickup, public park maintenance, etc. The transportation vehicle and fuel will continue to be provided by the SHERIFF's department.

LCC K10

(2)   Sixty (60) days after completion of the expansion of the approximately 610 beds, the sponsor fee will be increased from $80,000 per year (or $6,667 per month) to $100,000 per year (or $8,333 per month).

(3)   In the event that the state Department of Corrections per diem rate is adjusted to $25 per day, then the sponsor fee will be increased effective the same date as the per diem to $120,000 per year (or $10,000 per month).

Except as amended above, the "Specific Agreement" dated December 24, 1997

and amended on January 26, 1999 and the amendments and corrections set forth

hereinabove shall remain as written.

THUS DONE AND SIGNED, after due reading of the whole, at _Jena_,

Louisiana, on this _23_ day of _May_, 2005.

WITNESSES:

_____

_____

_____

_____

**LASALLE PARISH LAW ENFORCEMENT DISTRICT**
through Carl Smith, Sheriff and Chief Law
Enforcement Officer of LaSalle Parish

By: _____
**CARL SMITH**

**LASALLE CORRECTIONAL CENTER, L.C.C.**

By: _____
**WILLIAM K. McCONNELL**

_____
**NOTARY PUBLIC**

Printed Name of Notary: _____
Notary Identification Number: _____

My commission expires: _____

LCC.K11

## THIRD AMENDMENT TO SPECIFIC AGREEMENT

STATE OF LOUISIANA

PARISHES OF LaSALLE / RICHLAND

BEFORE ME, the undersigned Notary Public and competent witnesses came and appeared:

LaSALLE PARISH LAW ENFORCEMENT DISTRICT, referred to hereinafter as "L.P.L.E.D.", represented herein by Carl Smith, Sheriff of LaSalle Parish, Louisiana and Chief Law Enforcement Officer of LaSalle Parish, Louisiana, said district being referred to hereinafter as "SHERIFF";

and

LaSALLE CORRECTIONAL CENTER, L.L.C., a limited liability company, whose registered office is c/o William K. McConnell, 105 Ray Street--Suite A, P. O. Box 809, Rayville, Louisiana 71269, represented herein by William K. McConnell, referred to hereinafter as "L.C.C.",

who upon being duly sworn did declare as follows:

A "Specific Agreement" was entered into by SHERIFF and L.C.C. on December 24, 1997 and amended the first time on January 26, 1999 and the second time on May 23, 2005. The parties hereto now agree that the "Specific Agreement" referred to hereinabove shall be amended a third time by adding thereto the following:

The sponsorship fee will be modified as follows:

(1)     Upon execution of this third amendment, L.C.C. will stop providing a supervisor at no cost to the L.P.L.E.D. for the purpose of doing public work such as highway trash pickup, public park maintenance, etc.

(2)     Effective on September 1, 2007, the sponsor fee will be increased from $100,000 per year (or $8,333 per month) to $120,000 per year (or $10,000 per month).

(3)     In the event that the state Department of Corrections per diem rate is adjusted, then the sponsor fee will not be affected.

(4)     In the event that L.C.C. houses federal inmates, then the L.P.L.E.D. will receive an additional payment of $1 per day per inmate for each federal inmate held at a $46 per day rate or higher.

Except as amended above, the "Specific Agreement" dated December 24, 1997 and amended on January 26, 1999 and May 23, 2005, shall remain as written.

LCC K12

THUS DONE AND SIGNED, after due reading of the whole, at _____*Jena*_____, Louisiana, on this _____*17th*_____ day of _____*August*_____, 2007.

**WITNESSES:**

**LaSALLE PARISH LAW ENFORCEMENT DISTRICT**
through Carl Smith, Sheriff and Chief Law Enforcement Officer of LaSalle Parish

Printed Name: *Dan M. Moses*

By: _____
**CARL SMITH**

Printed Name: *Alan Graham*

_____
**NOTARY PUBLIC**

**Printed Name of Notary:** *Kim Loe*
**Notary Identification Number:** _____ Kim Loe, # 65762
**My commission expires:** *Exp of Employment* Ex Officio Notary, LaSalle Parish Sheriff's Dept.

THUS DONE AND SIGNED, after due reading of the whole, at *Rayville*, Louisiana, on this _____*9th*_____ day of _____*August*_____, 2007.

**WITNESSES:**

**LaSALLE CORRECTIONAL CENTER, L.L.C.**

Printed Name: *Peggy Moore*

By: _____
**WILLIAM K. McCONNELL**

Printed Name: *DENNIS WESTBROOKS*

_____
**NOTARY PUBLIC**

**Printed Name of Notary:** *Glenda P. Watkins*
**Notary Identification Number:** *057256*
**My commission expires:** *at death*

LCC K13

## FOURTH AMENDMENT TO SPECIFIC AGREEMENT

STATE OF LOUISIANA

PARISHES OF LaSALLE / RICHLAND

     BEFORE ME, the undersigned Notary Public and competent witnesses came and appeared:

     LaSALLE PARISH LAW ENFORCEMENT DISTRICT, referred to hereinafter as "L.P.L.E.D.", represented herein by Scott Franklin, Sheriff of LaSalle Parish, Louisiana and Chief Law Enforcement Officer of LaSalle Parish, Louisiana, said district being referred to hereinafter as "SHERIFF";

     and

     LaSALLE CORRECTIONAL CENTER, L.L.C., a limited liability company, whose registered office is c/o William K. McConnell, 105 Ray Street--Suite A, P. O. Box 809, Rayville, Louisiana 71269, represented herein by William K. McConnell, referred to hereinafter as "L.C.C.",

who upon being duly sworn did declare as follows:

     A "Specific Agreement" was entered into by SHERIFF and L.C.C. on December 24, 1997 and amended the first time on January 26, 1999, the second time on May 23, 2005, and the third time on August 17, 2007. The parties hereto now agree that the "Specific Agreement" referred to hereinabove shall be amended a fourth time by adding thereto the following:

     The sponsorship fee will be modified as follows:

    (1)    Upon execution of the third amendment, L.C.C. will stop providing a supervisor at no cost to the L.P.L.E.D. for the purpose of doing public work such as highway trash pickup, public park maintenance, etc.

    (2)    Effective on September 1, 2007, the sponsor fee will be increased from $100,000 per year (or $8,333 per month) to $120,000 per year (or $10,000 per month).

    (3)    In the event that the state Department of Corrections per diem rate is adjusted, then the sponsor fee will not be affected.

    (4)    In the event that L.C.C. houses federal inmates, then the L.P.L.E.D. will receive an additional payment of $1 per day per inmate for each federal inmate held at a $46 per day rate or higher.

    (5)    L.C.C. will provide an additional fee to the L.P.L.E.D. of 25¢ per day for each Harris County inmate held by L.C.C.

LCC K14

Except as amended above, the "Specific Agreement" dated December 24, 1997
and amended on January 26, 1999, May 23, 2005, and August 17, 2007, shall remain as
written.

THUS DONE AND SIGNED, after due reading of the whole, at _____,
Louisiana, on this _____ day of _____, 2008.

WITNESSES:

Printed Name: STEVE ANDREWS

Printed Name: Reba McClure

**NOTARY PUBLIC**

Printed Name of Notary: Belinda Kendrick # 72495
                        Deputy Clerk of Court, LaSalle Parish
Notary Identification Number: _____
My commission expires: _____

LaSALLE PARISH LAW
ENFORCEMENT DISTRICT
through Scott Franklin, Sheriff and Chief Law
Enforcement Officer of LaSalle Parish

By: _____
**SCOTT FRANKLIN**

THUS DONE AND SIGNED, after due reading of the whole, at _____,
Louisiana, on this _31st_ day of _October_, 2008.

WITNESSES:

Printed Name: Peggy O Moore

Printed Name: hiz Linson

**NOTARY PUBLIC**

Printed Name of Notary: GLENDA P. WATKINS
Notary Identification Number: 057256
My commission expires: at death

LaSALLE CORRECTIONAL
CENTER, L.L.C.

By: _____
**WILLIAM K. McCONNELL**

LCC K15

## SPECIFIC AGREEMENT

**THIS AGREEMENT** is entered into on the _14th_ day of _November_, 2005, between the Jackson Parish Law Enforcement District, represented herein by Andy Brown, Sheriff of Jackson Parish, Louisiana and Chief Law Enforcement Officer of Jackson Parish, Louisiana (hereinafter referred to as "SHERIFF"); and Jackson Parish Correctional Center, L.L.C., (hereinafter referred to as "J.P.C.C."), a limited liability company domiciled in the parish of Richland, Louisiana, represented herein by its duly authorized Managing Member, W. K. McConnell, for the purpose of constructing, equipping, and operating a new jail facility located in Jackson Parish, Louisiana, for the housing of federal, out-of-state, state and parish inmates, as well as pretrial parish prisoners (hereinafter referred to collectively as "INMATES"), on the following general terms and conditions.

### I.   PURPOSE OF AGREEMENT

Jackson Parish Correctional Center, L.L.C., acting as a private contractor under the provisions of Louisiana Revised Statute 39:1800.1, et seq., will construct a new jail facility on at least 10 acres of privately-owned property located within Jackson Parish, Louisiana at a location approved by the SHERIFF (hereinafter referred to as the "JAIL FACILITY") for the SHERIFF. The JAIL FACILITY and sufficient surrounding property will be operated in accordance with LSA R.S. 39:1800.1 and the Louisiana Basic Jail Guidelines dated May 25, 1994, for institutions housing Department of Corrections ("D.O.C.") inmates.

### II.   SPONSOR FEE FOR JAIL FACILITY

Jackson Parish Correctional Center, L.L.C. will purchase the property described in Exhibit "A" on which will be built JAIL FACILITY. The term of this agreement will be for a primary term of twenty (20) years, commencing on the date that final acceptance of the JAIL FACILITY is issued by the Department of Corrections, and any other such agency from which such acceptance is mandated.

The SHERIFF will receive all payments for housing of any and all INMATES ("Payments"), and will remit to J.P.C.C. therefrom on a monthly basis the following:

> All of the payments will be directed to J.P.C.C. as soon as possible, but not later than 5 days after all the payments are received. J.P.C.C. will then return a check for the sponsorship fee to the SHERIFF on a monthly basis.

JPCC K1

The sponsorship fee will be as follows:

$80,000 per year guaranteed to be paid beginning 180 days after the first check is received from D.O.C. for housing of state inmates or when occupancy level of 75% is achieved, whichever comes first. The monthly check is to be $80,000 ÷ 12 or $6,667 per month for the initial period. For example, if the first D.O.C. check is received from the SHERIFF on December 15, 2006, then the first sponsor fee payment would be due to the SHERIFF on June 15, 2007 unless the occupancy level achieved 75% prior to June 15, 2007.

III.    OPERATION OF JAIL FACILITY

The SHERIFF will operate the JAIL FACILITY and will provide all of the personnel necessary and proper for its operation in compliance with LSA R.S. 39:1800.1 and the BASIC GUIDELINES, together with any additions and amendments thereto, during the term of the Agreement.

The following specific rights, obligations and duties relative to the operation of the JAIL FACILITY are agreed upon by the parties hereto:

A.    J.P.C.C. will construct and completely furnish the JAIL FACILITY with a capacity to house four hundred (400) inmates, together with fencing, razor wire, video surveillance, and other outside improvements, and with all items necessary for its acceptance, approval, and operation in accordance with the Jackson Parish Law Enforcement District, LSA R.S. 39:1800.1, et seq., and the BASIC GUIDELINES. In this connection, the SHERIFF shall review and approve all architectural plans, specifications, etc. and all equipment prior to construction and installation.The parties agree that in the event that J.P.C.C. expands the JAIL FACILITY to 540 beds, and assuming that the D.O.C. allows for said expansion, then the SHERIFF will continue to operate said JAIL FACILITY under the same terms and conditions that are presently agreed upon. SHERIFF agrees to make a good faith effort to cooperate in every way with J.P.C.C. in the operation, personnel selection, and inmate selection criteria.

1.    J.P.C.C. will employ LaSalle Management Company as a consultant for the JAIL FACILITY. In this capacity, LaSalle Management Company is responsible for controlling all costs associated with the facility.

JPCC K2

    2. Approval of the warden hired to manage the Jackson Parish Correctional Center will be required by both LaSalle Management Company and the Sheriff of Jackson Parish ("SHERIFF"). The warden will be responsible for selecting personnel for all staff positions—chief of security, maintenance foreman, clerical, cook, security lieutenants, etc. The actual selection of the employees will be done by LaSalle Management Company with the SHERIFF having the authority to approve or reject any of the staff members selected for employment by LaSalle Management Company.

    3. LaSalle Management Company will be responsible for assisting the Jackson Parish Sheriff ("SHERIFF") in the preparation of all documents required to make the detention facility a reality.

B. J.P.C.C. will install a law library in accordance with LSA R.S. 39:1800.1, et seq., and the BASIC GUIDELINES, as part of the "turn-key job".

C. J.P.C.C. will be responsible for the following items pertaining to the construction and maintenance of the building:

    1. A one-year warranty on the entire facility, including workmanship and installation of the items relating to the construction, will be provided by J.P.C.C. from the construction contract.

    2. A list of extended warranties for such items as the HVAC system, the electrical system, the emergency generator, etc. will be included from the construction company as required by the plans and specifications and as is standard in the construction industry.

    3. J.P.C.C. will be responsible for the repair and maintenance of the JAIL FACILITY for the life of the project.

D. In addition, the J.P.C.C. will be responsible for the payment of:

    1. the medical expenses of the INMATES housed at the JAIL FACILITY; *(see Exhibit "8" for parish inmates)*

    2. the utilities of the JAIL FACILITY;

    3. the liability insurance on the JAIL FACILITY and for the housing of the INMATES;

4. the clothing and linen necessitated by the operation of the JAIL FACILITY;

5. all salaries, taxes, insurance, retirement, and other expenses for personnel employed in connection with the operation of the JAIL FACILITY;

6. all costs of transportation of INMATES, for any reason whatsoever;

7. all costs associated with feeding of prisoners;

8. any property taxes on JAIL FACILITY.

9. all maintenance and repairs, including, but not limited to, the janitorial services, garbage and trash removal, grounds maintenance, plumbing, and electrical and HVAC repairs, etc.

10. any other expenses associated with or arising out of or in connection with the operation of the JAIL FACILITY.

E. The SHERIFF will retain the right to accept or reject any INMATES for housing at the JAIL FACILITY.

F. J. P.C.C. will, at its expense, obtain all plans and other materials necessary for designing, planning, and constructing the JAIL FACILITY, and will be responsible, at its expense, for the hiring of the architect(s), draftsmen, consultants, and other persons necessary and proper for this purpose.

G. The SHERIFF will review and approve the plans for the JAIL FACILITY prior to the beginning of construction thereof.

H. J.P.C.C. will install and maintain at its expense in the JAIL FACILITY a telephone system for the use of INMATES.

I. J.P.C.C. shall be responsible for the payment of, and provide the SHERIFF proof of coverage as applicable and as requested by the SHERIFF with the SHERIFF listed as an insured under the policy, for the following:

A standard fire insurance policy insuring the JAIL FACILITY and its contents for losses and damages resulting from fire or other perils

JPCC K4

and a comprehensive general liability policy insuring J.P.C.C. for any loss or damages to persons or property in connection with the ownership and operation of the JAIL FACILITY.

J.    J.P.C.C. indemnifies and holds SHERIFF harmless for any claims made against SHERIFF, his agents or employees for injuries or property damage during the construction of the JAIL FACILITY.

K.    J.P.C.C. will construct and operate a commissary within the JAIL FACILITY.

L.    J.P.C.C. commits that each employee will be commissioned by the SHERIFF of Jackson Parish as correctional officers.

M.    J.P.C.C. commits to require each commissioned employee to participate in the medical plan and retirement plan as offered by the Louisiana Sheriffs' Association.

N.    J.P.C.C. commits to provide both general liability and professional liability insurance for the facility and on each employee in the facility.

O.    To insure that the commissioned employees of the J.P.C.C. qualify for the medical benefits and retirement plan, the actual payroll checks for these employees will be written from an account approved by the Jackson Parish Law Enforcement District (J.P.L.E.D.). The money needed to cover the cost of this payroll, the medical benefits, and the retirement plan incurred by the J.P.L.E.D. will be the responsibility of the J.P.C.C. The money needed to cover such costs will be deposited into a special payroll and benefits account prior to the payroll checks being issued.

P.    The requirements for the J.P.C.C. personnel will be as follows:
   a) clear of criminal history
   b) sound health
   c) of good moral stature
   d) possess or pursue immediately a G.E.D. or high school educational degree
   e) must complete post certification for correctional officers within one year.
   f) character must be above reproach throughout employment
       *Note: These employees are not covered under civil service rules and/or guidelines.

Q.    The responsibility for hiring, training, terminating, promoting, scheduling work, etc. for all employees of J.P.C.C. remains the responsibility of the warden of J.P.C.C.; however, the SHERIFF must approve of any and all new hires. The SHERIFF has the authority to terminate any employee found to be derelict of his/her duties or responsibilities.

R.    Compensation for surplus goods from the federal and state surplus agencies approved by the SHERIFF of Jackson Parish for use in the J.P.C.C. facility will be made by J.P.C.C. in lump sum prior to the due date of the payment due to the federal and/or state surplus agency.

## IV.    CONDITIONS

A.    This agreement entered into between the parties is contingent upon gaining approval from the Louisiana Department of Corrections by the SHERIFF for the construction and operation of the JAIL FACILITY and contingent upon the extension of sufficient financing to J.P.C.C. for the acquisition, constructing, and equipping of the JAIL FACILITY and upon the continued funding from the state at $22.39 per diem and continued housing of INMATES by the Department of Corrections in parish facilities. It is understood and agreed that in the event that the construction of this JAIL FACILITY is not started on or before December 1, 2006, the agreement shall be null and void and without legal effect.

B.    This agreement also recognizes a previously executed "Specific Agreement" between the Jackson Parish Police Jury and the Jackson Parish Sheriff's Department dated May 10, 2005. J.P.C.C. will honor the "Specific Agreement" terms as documented in said agreement on the behalf of the Jackson Parish Sheriff. A copy is attached to this agreement as Exhibit "B".

JPCC K6

THUS DONE AND SIGNED, after due reading of the whole,
at _Jonesboro_, Louisiana, this _17th_ day of _November_, 2005.

WITNESSES:

Printed Name: _Patrick H. Temple_

Printed Name: _Stephanie Jackson_

JACKSON PARISH LAW
ENFORCEMENT DISTRICT,
THROUGH
ANDY BROWN, SHERIFF
AND
CHIEF LAW ENFORCEMENT
OFFICER OF
JACKSON PARISH

By: _____
Andy Brown
Sheriff

_____
NOTARY PUBLIC

KAYNE PULLIG
NOTARY ID # 057973
JACKSON PARISH, LOUISIANA
MY COMMISSION IS FOR LIFE

My commission expires: _____
Notary Identification Number: _____
Printed Name of Notary: _Kayne Pullig_

WITNESSES:

Printed Name: _Patrick H. Temple_

Printed Name: _Stephanie Jackson_

JACKSON PARISH
CORRECTIONAL CENTER, L.L.C.

By: _____
W. K. McConnell
Managing Member

_____
NOTARY PUBLIC

My commission expires: _____
Notary Identification Number: _____
Printed Name of Notary: _Kayne Pullig_

KAYNE PULLIG
NOTARY ID # 057973
JACKSON PARISH, LOUISIANA
MY COMMISSION IS FOR LIFE

JPCC K7

## SPECIFIC AGREEMENT

THIS AGREEMENT is entered into between the Jackson Parish Police Jury and the Jackson Parish Sheriff's Department.  The Jackson Parish Police Jury being represented herein by it's duly authorized President Dr. Charles Garrett and the Jackson Parish Sheriff's Department being represented herein by Sheriff Andy Brown.

### PURPOSE OF AGREEMENT:

The Jackson Parish Sheriff's Department, acting in it's legal capacity as "The Law Enforcement District" for Jackson Parish, under the provisions of the Basic Jail Guidelines, will construct a new jail facility on land in Jackson Parish, relieving the Jackson Parish Police Jury of it's obligation to furnish the Sheriff with a suitable jail facility.

### TERMS OF AGREEMENT:

The length of this agreement will be for a period of ten (10) years and will commence on the date the jail facility is completed and parish prisoners are being incarcerated in the facility.  At the end of the ten (10) year agreement the Jackson Parish Police Jury will have the option to renegotiate the terms of this agreement with the Jackson Parish Sheriff's Department.

The Jackson Parish Police Jury will agree to pay the Jackson Parish Sheriff's Department, upon completion of it's new jail facility for each parish prisoner incarcerated, a per diem of $23 (twenty-three dollars) a day per prisoner to house up to thirty (30) parish prisoners.  When capacity in the new facility reaches over thirty (30) parish prisoners the Jackson Parish Police Jury agrees to pay the Jackson Parish Sheriff's Department a per diem of $18 (eighteen dollars) a day per prisoner for every parish prisoner exceeding thirty (30) parish prisoners.  The Jackson Parish Sheriff's Department shall be responsible for providing each prisoner with needed jail clothing, toilet articles, food and legal materials (including a law library).

The Jackson Parish Police Jury agrees to continue to pay all medical (including dental) and pharmaceutical cost of parish prisoners being detained in the new facility constructed and operated by the Jackson Parish Sheriff's Department.

The Jackson Parish Sheriff's Department agrees to furnish and operate a new jail facility relieving the Jackson Parish Police Jury of it's obligation to furnish the Sheriff with a jail facility.

The Jackson Parish Sheriff's Department relieves the Jackson Parish Police Jury of any obligations concerning construction, land purchase or maintenance of the new jail facility.

The Jackson Parish Sheriff's Department agrees that all male adult parish prisoners will be incarcerated in the new facility.  No male adult parish prisoner will be transferred out of the parish to be incarcerated in another facility unless ordered by the Court.

JPCC K15

The Jackson Parish Sheriff's Department will bill the Jackson Parish Police Jury on a monthly basis for the per diem on all parish prisoners incarcerated in the new facility.

The Jackson Parish Sheriff's Department will hold the Jackson Parish Police Jury harmless for any and all liability to prisoners, employees or other persons arising or said to arise out of any condition or alleged defect of the new jail facility or its operation.

The Jackson Parish Sheriff's Department will have the responsibility of transporting any prisoners incarcerated in the new jail facility to the Jackson Parish Courthouse when the prisoner's presence is required for courtroom proceedings.

The Jackson Parish Sheriff's Department reserves the right to furnish a new jail facility, by means of private company or as deemed necessary for funding to undertake this building project.

## CONDITIONS:

This agreement is entered into between the parties with the anticipation of the Jackson Parish Sheriff's Department furnishing and operating a new jail facility located in Jackson Parish and upon funding and continued funding to the Jackson Parish Sheriff's Department by the Jackson Parish Police Jury for the payment of incarcerating male prisoners in a new jail facility.

The above and foregoing constitutes the entire agreement between these parties.

THUS DONE AND SIGNED, at Jonesboro, Louisiana, this 10th day of May , 2005.

WITNESSES:

_____          _____
                                            DR. CHARLES GARRETT, PRESIDENT
                                            JACKSON PARISH POLICE JURY

_____          _____
                                            ANDY BROWN, SHERIFF
                                            JACKSON PARISH SHERIFF'S DEPT.

Sworn   to   and   subscribed   before   me   this   10th   day   of May , 2005.

_____
NOTARY PUBLIC

KAYNE PULLIG
NOTARY ID # 057973
JACKSON PARISH, LOUISIANA
MY COMMISSION IS FOR LIFE

JPCC K16

## FIRST AMENDMENT TO SPECIFIC AGREEMENT

**STATE OF LOUISIANA**

**PARISH OF JACKSON**

BEFORE ME, the undersigned Notary Public and competent witnesses came and appeared:

**JACKSON PARISH LAW ENFORCEMENT DISTRICT**, referred to hereinafter as "J.P.L.E.D.", represented herein by Andy Brown, Sheriff of Jackson Parish, Louisiana and Chief Law Enforcement Officer of Jackson Parish, Louisiana, said district being referred to hereinafter as "SHERIFF"; and

**JACKSON CORRECTIONAL CENTER, L.L.C.**, a limited liability company, whose registered office is c/o William K. McConnell, 105 Ray Street--Suite A, P. O. Box 809, Rayville, Louisiana 71269, represented herein by William K. McConnell, referred to hereinafter as "J.C.C.",

who upon being duly sworn did declare as follows:

A "Specific Agreement" was entered into by SHERIFF and J.C.C. on November 17, 2005. The parties hereto now agree that the "Specific Agreement" referred to hereinabove shall be amended by adding thereto the following:

In order to improve the capabilities of Jackson Parish Correctional Center, which in turn will help the facility be more competitive in attracting inmates, Jackson Correctional Center, L.L.C. shall furnish a second phase of construction to Jackson Parish Correctional Center, referred to as phase two. Phase two shall consist of beds to house at a minimum 200 women inmates and 100 work release inmates, as well as 280 beds for the general population. In making this additional $7,775,000 investment, Jackson Correctional Center, L.L.C. agrees to further:

(1) purchase a building currently being used as a night club on the Jackson Parish/Lincoln Parish line for no more than $275,000 with Sheriff Brown handling all negotiations. Jackson Correctional Center, L.L.C. will agree to donate said

1

JPCC K17

building and property to Jackson Parish Law Enforcement
District for potential use as a facility to assist in juvenile
management. No private companies will be
involved in providing any inmate services without the approval
of Jackson Correctional Center, L.L.C.

In addition, Jackson Parish Law Enforcement District and/or Jackson Parish

Sheriff's Department, represented by Sheriff Andy Brown, agree(s) to allow Jackson Parish

Correctional Center to have the exclusive right to house:

(1) All Louisiana Department of Corrections inmates
(2) Any other out-of-state inmates
(3) Any federal inmates
(4) All work release inmates

Sheriff shall receive a sponsor fee for phase two which will match sponsor fee

for phase one. The second sponsor fee will begin to be paid beginning one year after the

opening of the expanded facility.

In addition, the sheriff also shall receive 4% over the current Louisiana
Department of Corrections rate for any per diem that Jackson Parish
Correctional Center receives for any out-of-state or federal inmate.
Example: If Jackson Parish Correctional Center receives $50 per day for an
inmate, then the sheriff shall receive 4% of $25.61 which equals $1.02 per
inmate at the rate of $50 per inmate per day. This rate will be above the normal
sponsor fee.

Except as amended above, the "Specific Agreement" dated November 17, 2005 and

the amendments and corrections set forth hereinabove shall remain as written.

2

JPCC K18

THUS DONE AND SIGNED, after due reading of the whole, at _Jonesboro_,

Louisiana, on this _17th_ day of _October_, 2008.

WITNESSES:

_Delane Pullig_
Printed Name: _Delane Pullis_

_Rita A. Johns_
Printed Name: _Rita A. Johns_

JACKSON PARISH LAW ENFORCEMENT DISTRICT
through Andy Brown, Sheriff and Chief Law
Enforcement Officer of Jackson Parish

By: _Andy Brown_
 ANDY BROWN

_Kayne Pullig_
NOTARY PUBLIC

Printed Name of Notary: _KAYNE PULLIG_
Notary Identification Number: _NOTARY ID # 057973_
                              _JACKSON PARISH, LOUISIANA_
My commission expires: _MY COMMISSION IS FOR LIFE_


THUS DONE AND SIGNED, after due reading of the whole, at _Rayville_,

Louisiana, on this _16th_ day of _October_, 2008.

WITNESSES:

_Liz Kinson_
Printed Name: _Liz Kinson_

_Lois Davis_
Printed Name: _Lois Davis_

JACKSON CORRECTIONAL CENTER, L.L.C.

By: _William K. McConnell_
 WILLIAM K. McCONNELL

_Glenda P. Watkins_
NOTARY PUBLIC

Printed Name of Notary: _GLENDA P. WATKINS_
Notary Identification Number: _057256_
My commission expires: _at death_

3

<u>SECOND AMENDMENT TO SPECIFIC AGREEMENT</u>

**STATE OF LOUISIANA**

**PARISH OF JACKSON**

BEFORE ME, the undersigned Notary Public and competent witnesses came and appeared:

> **JACKSON PARISH LAW ENFORCEMENT DISTRICT**, referred to hereinafter as "J.P.L.E.D.", represented herein by Andy Brown, Sheriff of Jackson Parish, Louisiana and Chief Law Enforcement Officer of Jackson Parish, Louisiana, said district being referred to hereinafter as "SHERIFF"; and

> **JACKSON CORRECTIONAL CENTER, L.L.C.**, a limited liability company, whose registered office is c/o William K. McConnell, 105 Ray Street--Suite A, P. O. Box 809, Rayville, Louisiana 71269, represented herein by William K. McConnell, referred to hereinafter as "J.C.C.",

who upon being duly sworn did declare as follows:

A "Specific Agreement" was entered into by SHERIFF and J.C.C. on November 17, 2005 and a First Amendment was executed on October 16, 2008. The parties hereto now agree that the "Specific Agreement" referred to hereinabove and amended shall be further amended in Amendment Number 2 by adding thereto the following:

> The price of the night club being purchased is changed from $275,000 to $285,000.

> The initial payment of the second sponsor fee will be changed from "beginning one year after the opening of the expanded facility" to "beginning one year and forty-seven days after the opening of the expanded facility."

Except as amended above, the "Specific Agreement" dated November 17, 2005 and the first and second amendment and corrections set forth hereinabove shall remain as written.

1

THUS DONE AND SIGNED, after due reading of the whole, at _Jonesboro_

Louisiana, on this _25th_ day of _February_ , 2009.

WITNESSES:

Printed Name: _Paul Trosclair_

Printed Name: _Cory L Cheathooo_

JACKSON PARISH LAW ENFORCEMENT DISTRICT
through Andy Brown, Sheriff and Chief Law
Enforcement Officer of Jackson Parish

By: _____
ANDY BROWN

NOTARY PUBLIC

Printed Name of Notary: _____ KAYNE PULLIG
Notary Identification Number: _____ NOTARY ID # 057973
My commission expires: _____ JACKSON PARISH, LOUISIANA
MY COMMISSION IS FOR LIFE

THUS DONE AND SIGNED, after due reading of the whole, at _Jonesboro_

Louisiana, on this _25th_ day of _February_ , 2009.

WITNESSES:

Printed Name: _Paul Trosclair_

Printed Name: _Cory L. Cheathooo_

JACKSON CORRECTIONAL CENTER, L.L.C.

By: _____
WILLIAM K. McCONNELL

NOTARY PUBLIC

Printed Name of Notary: _____ KAYNE PULLIG
Notary Identification Number: _____ NOTARY ID # 057973
My commission expires: _____ JACKSON PARISH, LOUISIANA
MY COMMISSION IS FOR LIFE

2

JPCC K21

#C747

ARP-1

## ADMINISTRATIVE REMEDY PROCEDURE

### THIS IS A REQUEST FOR ADMINISTRATIVE REMEDY

SEAN  WESLEY   372598                          11/23/16
Inmate's Name          DOC #                    Date of Incident/Complaint

JACKSON PARISH CORRECTIONAL                     D-81
Place and Time of Incident/Complaint

Describe Nature of Complaint (i.e. WHO, WHAT, WHEN, WHERE, and HOW)

I have been denied medical treatment in the manner of not being treated for Hepatites C upon numerous medical request the nurse told me that I will not be be treated at all because my treatment is too expensive this demonstrates cruel and unsual punishment in direct violation of my U.S const 5th Amendment right.
Everything that state and federal law provides including medical treatment or $250,000 for denial of my const rights. And transfer to a medical facility.

Sean Wesley 372598                             11/23/16
Inmate's Signature        DOC #                Date

---

TO:  Sean Wesley  372598
        Inmate's Name and DOC #

( )  ACCEPTED:      Please respond to the inmate within 40 days.

(X)  REJECTED:      Your request has been rejected for the following reason:

Allegations are totally false. No sick call requests in file. No record of any visit with nurse.

1245-16                          Capt. B____ N__
Date                             ARP Screening Officer

WESLEY/JPCC ARP 1

21



DEPARTMENT OF
# PUBLIC SAFETY AND CORRECTIONS

J. "MIKE" FOSTER, JR., GOVERNOR                                          RICHARD L. STALDER, SECRETARY

September 3, 1999

Sheriff Randy Maxwell
Concordia Parish Law Enforcement District
4001 Carter St., Room 6
Vidalia, LA 71373

RE:  *D.O.C. Contract Number 451-550451*
     *Cooperative Endeavor Agreement #2*

Dear Sheriff Maxwell:

Enclosed for your records is a copy of the above referenced contract.  The contract
has been fully executed and approved by all required parties.

Thank you for providing these services.

Sincerely,

Patricia B. Austin, Director
Procurement and Contractual Review Division

Brenda J. Dorsa
Contracts/Grants Reviewer

PBA/bjd
c w/attachment:    Melissa Cook, Office of the Secretary
                   Wayne Ritter, Accounting

P. O. Box 94304  ●  Capitol Station  ●  Baton Rouge, Louisiana 70804-9304
(225) 342-6583
AN EQUAL OPPORTUNITY EMPLOYER

## COOPERATIVE ENDEAVOR AGREEMENT NUMBER 2

### BETWEEN THE

### LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

### AND THE

### CONCORDIA PARISH LAW ENFORCEMENT DISTRICT

THIS AGREEMENT made this __22__ day of __July__, 1999, by and between the CONCORDIA PARISH LAW ENFORCEMENT DISTRICT (hereinafter referred to as the "District"), represented by Randy Jay Maxwell, Sheriff and Chief Executive Officer of the District; and the STATE OF LOUISIANA, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, (hereinafter referred to as the "Department"), represented by Richard L. Stalder, Secretary.

WHEREAS, Article VII, Section 14(c) of the Constitution of the State of Louisiana states "For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation or individual"; and

WHEREAS, the Department desires to enter into partnerships with units of local governments to provide housing for state inmates; and

WHEREAS, as a result thereof, the Department is requesting the District to provide to the Department bed space for the mutual benefit of the parties; and

WHEREAS, the parties hereto recognize and acknowledge that the District will construct and that the Sheriff will operate and maintain a new jail facility (the "Jail Facility"), to be located in Concordia Parish, Louisiana, with a capacity of five hundred (500) beds, and the District agrees to provide the additional bed space to the Department for housing inmates pursuant to this Agreement; and

WHEREAS, in consideration of the Department contracting to house inmates at a minimum of forty percent (40%) of the capacity of the Jail Facility as stipulated in Section 3. below, the District agrees that the Sheriff will operate and maintain the Jail Facility in accordance with the "Basic Jail Guidelines" dated May 25, 1994 or to enter into candidate status for American Correctional Association accreditation utilizing Standards for Adult Local Detention Facilities, 3rd Edition, within six (6) months after the term of this Agreement begins and receive such accreditation within eighteen (18) months of the aforementioned date.

NOW, THEREFORE, the Department and the District hereby enter into a Cooperative Endeavor Agreement for the public purpose of housing inmates that have been sentenced to the Department in the Jail Facility under the terms and conditions of this Agreement for the mutual benefit of the parties.

This Agreement shall be subject to the following terms and conditions:

1.   The term of this Agreement shall commence ten (10) days after completion and occupancy of the Jail Facility and terminate twenty-five (25) years after said beginning date.

2.   If a Contractor has not been selected and construction commenced within one (1) year of the approval of this Agreement by the Commissioner of Administration, then the Department, at its sole option, may terminate this Agreement.

3.   During the term of this Agreement, the District hereby agrees to house inmates, and the Department agrees to maintain at all times a population of not less than forty percent (40%) of the Jail Facility's capacity of five hundred (500) beds.

Sheriff: Coop.agr

RCC K2

The District, in its discretion, may waive the requirement that the Department house a minimum of 40% of the Jail Facility's capacity of five hundred (500) beds. The Department's obligation to provide a minimum of 40% of the Jail Facility's capacity of five hundred (500) beds shall be completed within ninety (90) days of the commencement date of this Agreement.

4.  Except for the provisions of Sections 1., 2., 5. and 6. hereof, this Agreement shall not be cancelled or terminated and the obligations of the Department to house inmates at the Jail Facility shall not be negated or diminished so long as any of the indebtedness to finance the Jail Facility remains outstanding.

5.  For and in consideration of the District housing Department inmates in the Jail Facility as provided in this Agreement, the Department agrees to pay to the District the sums set forth in La. R.S. 15: 824(B)(1), and/or the General Appropriations Bill, which may be amended, subject to legislative appropriation. In the event the State of Louisiana fails to appropriate sufficient moneys for the Department to pay all of its obligations under this Agreement for any fiscal year, the term of this Agreement shall, at the option of the District or the Department, expire effective as of the last day of the fiscal year for which sufficient funds for such purpose were appropriated. This Agreement shall remain in full force and effect for succeeding fiscal years notwithstanding any nonappropriation for any prior fiscal year unless this Agreement is terminated by the District or the Department in accordance with the second sentence of this Section 5. The Department agrees to make an annual good faith effort to have appropriated funds sufficient to pay all amounts due under this Agreement for each fiscal year and this Agreement is only executory to the extent that funds are so appropriated. In the event sufficient funds to pay all obligations of the Department hereunder during any fiscal year are not so appropriated, such inability shall not constitute a default under this Agreement. If the funds appropriated in any such legislation are not at least equal to the amounts specified above, or if no funds are appropriated, the Department shall notify the District as soon as possible.

6.  The District agrees that the Sheriff will operate and maintain the Jail Facility in accordance with the "Basic Jail Guidelines" dated May 25, 1994 or enter into candidate status for American Correctional Association accreditation utilizing Standards for Adult Local Detention Facilities, 3rd Edition, within six (6) months after the term of this Agreement begins and receive such accreditation within eighteen (18) months of the aforementioned date.

    If, in the determination of the Department, the Sheriff fails to fulfill in a timely and proper manner its obligations to operate and maintain the Jail Facility in accordance with the aforementioned guidelines, the Department shall have the right to terminate this contract by giving written notice sent by certified mail (return receipt requested) to the District of such termination and specifying the effective date thereof, at least one hundred twenty (120) days before the effective date of such termination.

7.  The District and the Sheriff agree to protect, defend, indemnify, save and hold harmless the State of Louisiana, the Department, all state departments, agencies, boards and commissions, its officers, agents, servants and employees, including volunteers, from and against any and all claims, demands, expenses and liability arising out of injury or death to any person or the damage, loss or destruction of any property which may occur or in any way grow out of any act or omission of the District, its agents, servants and employees, and any and all costs, expenses and/or attorney fees incurred by the District as a result of any claims, demands and/or causes of action, including those claims, demands, or suits filed by inmates, expect for those claims, demands and/or causes of action arising out of the negligence of the Department, its agents, servants, representatives and/or employees. The District agrees to investigate, handle, respond to, provide defense for and defend any such claim, demand, or suit at its sole expense and agrees to bear all other costs and expenses related thereto, even if the claim, demand or suit is groundless, false or fraudulent.

8.  The Department recognizes that the District may assign its rights, title and interest in and to this Agreement and any revenues payable by the Department under this Agreement as security for the indebtedness incurred by the District and the Department hereby consents to and approves such assignment.

RCC K3

The District and the Sheriff grant to the State of Louisiana, through the Office of the Legislative Auditor, Department of Public Safety and Corrections, Inspector General's Office, Federal Government and/or other such designated body the right to inspect and review all books and records pertaining to the services rendered under this contract. The District is expected to comply with federal and/or state laws requiring an audit of the Jail Facility's operation as a whole or of specific program activities. The District and the Sheriff agree to comply with all public bid laws, applicable to the construction, operation, maintenance, renovation and/or lease of the Jail Facility.

THUS DONE AND SIGNED, after due reading of the whole, at _Vidalia_, Parish of Concordia, Louisiana, this _22_ day of _July_, 1999.

WITNESSES:

_(signature)_

_Gwen Byrd_

CONCORDIA PARISH
LAW ENFORCEMENT DISTRICT

By: _(signature)_

Randy Jay Maxwell, Sheriff and
Chief Executive Officer

Federal Tax I.D. # 72-6000317-00

THUS DONE AND SIGNED, after due reading of the whole, at Baton Rouge, Parish of East Baton Rouge, Louisiana, this _22 nd_ day of _July_, 1999.

WITNESSES:

_(signature)_

_Alison Poirier_

LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS

By: _(signature)_

Richard L. Stalder, Secretary

APPROVED BY:
DIVISION OF ADMINISTRATION

**APPROVED**
DIVISION OF ADMINISTRATION

AUG 3 1 1999

_(illegible)_
Commissioner

_____
Mark C. Drennen
Commissioner of Administration

RCC K4

## RIVER CORRECTIONAL CONSULTING AGREEMENT

**PROPERTY:**

### RIVER CORRECTIONAL CENTER
### FERRIDAY, LOUISIANA

**FOR PROJECT OWNER:**

### RIVER CORRECTIONAL CENTER, L.L.C.

**MANAGEMENT ENTITY:**

### CONCORDIA CONSULTING COMPANY, L.L.C.

This agreement is made this 24th day of May, 2000, by and between **RIVER CORRECTIONAL CENTER, L.L.C. (R.C.C.), a Louisiana Limited Liability Company**, represented herein by W. K. McConnell, hereinafter referred to as Owner and **CONCORDIA CONSULTING COMPANY, L.L.C., (C.C.C.), a Louisiana Limited Liability Company**, represented herein by Patrick H. Temple, hereinafter referred to as Agent.

**(I) Appointment & Acceptance:** The Owner appoints Concordia Consulting Company, L.L.C. as the exclusive financial consulting Agent for the property described in this agreement and the Agent accepts this appointment, subject to the terms and conditions of this agreement.

**(II) Description of Project.** The property, hereinafter referred to as Project, to be financially managed by the Agent under this agreement is a prison development consisting of the land, buildings and other improvements which make up and is described as follows:

| | |
|---|---|
| **Name:** | **River Correctional Center** |
| **City:** | **Ferriday** |
| **Parish:** | **Concordia** |
| **State:** | **Louisiana** |

Any future operations of R.C.C. and the C.C.C. will be negotiated at that time.

RCC K5

**(III) Requirements:** Agent agrees to financially manage the Project in compliance with generally accepted prison management guidelines authored by the State of Louisiana, and known as "Louisiana Jail Guidelines". In addition, upon the instructions of Owner, Agent will financially manage said Project so as to, at a minimum, conform with all requirements of the United States Department of Justice as said requirements pertain to prison facilities.

**(IV) Marketing :** The Agent will carry out the marketing activities deemed necessary by Owner and /or Agent solely at the Agent's expense.

**(V) Detainees:** The Agent will obtain contracts for prison inmates from the various governmental agencies and at contracted prices deemed reasonable by Agent to house and support such prison facilities. Incident thereto, the following provisions will apply:

1 - The Agent will make preparation for initial contracts as agreed to by Owner and Agent.

2- The Agent will follow the selection policies as agreed to by Owner and Agent.

3- The Agent will show the premises to prospective governmental agencies supplying prisoners.

4- The Agent will take and process contracts for detainees. If a contract is rejected, the Owner will be told the reason for rejection.

5- The Agent will prepare all contracts for prisoners and will execute same in the Owner's name. The terms and conditions of all contracts will comply with the pertinent provisions of the "Louisiana Jail Guidelines". These Contract Agreements will be in a form approved by Owner. Individual Contract Agreements may be approved by the managers of R.C.C.

6- The Agent will furnish Owner with contract schedules and/or detainee rolls on a monthly basis or as requested. Such schedules shall show number of detainees currently housed in the facilities and any contractual agreements housing such detainees, and any other charges for facilities and services.

7- The Agent will negotiate commercial leases and concession agreements and will execute same in Owner's name, subject to the prior approval of all terms and conditions by Owner, unless otherwise authorized to act on the behalf of Owner.

**(VI) Collection of Monies and Other Receipts:** The Agent will collect when due, all charges, and other amounts receivable on the Owner's account in connection with the management and operation of the Project. Such receipts will be deposited in an account, with a bank whose deposits are insured by the Federal Deposit Insurance Corporation. This account will be carried in the Owner's name and designated of record as "River Correctional Center Agency Account".

RCC K6

**(VII) Enforcement and Collection:** The Agent will secure full compliance with each contract with the terms and provisions of this agreement. The Agent may lawfully terminate any contracts when, in the Agent's judgment, sufficient cause for such termination occurs under the terms and provisions of the contract. For this purpose, Agent is authorized to consult with legal counsel, to bring actions for cancellation of contracts and to execute judicial pleadings incident to such actions; provided Agent keeps Owner informed of such actions and follows instructions as the Owner may prescribe. Subject to Owner's approval, attorney fees and other necessary costs incurred in connection with such actions will be paid out of the Agency Account as Project expenses.

**(VIII) Maintenance and Repair:** The Agent will maintain the Project in good repair in accordance with local codes and in a condition at all times acceptable to Owner, including, but not limited to, cleaning, painting, decorating, plumbing, carpentry, grounds care, and such other maintenance and repair work as may be necessary, subject to any limitations imposed by Owner.

Incident thereto, the following provisions will apply:

1-    Special attention will be given to preventative maintenance and to the greatest extent feasible, the services of regular maintenance employees will be used.

2-    The Agent will contract with qualified independent contractors for the maintenance and repair of air conditioning systems and for any other extraordinary repairs beyond the capabilities of the regular maintenance employees.

3-    The Agent will systematically and promptly review and investigate all service requests and take such action as is necessary and will keep records of same. Emergency requests will be received and serviced on a twenty-four (24) hour basis. Complaints of a serious nature will be reported to Owner after investigation.

4-    Agent is authorized to purchase all materials, equipment, tools, appliances, supplies and services necessary for the proper maintenance and repair of the facility. Such purchases shall be paid out of the Agency Account and treated as Project expenses.

5-    Notwithstanding anything to the contrary, herein, the prior approval of Owner will be required for any expenditure in excess of Twenty-five Thousand Dollars ($25,000.00), in any one instance for labor, materials or otherwise in connection with the maintenance and repair of the project, except for recurring expenses within the limits of the operating budget, or any "emergency repairs" involving manifest danger to persons or property, or required to avoid any suspension of any necessary service to the Project. In the latter event, Agent will notify Owner of the facts as promptly as possible and if possible shall secure Owner's authorization.

**(IX) Utilities and Services:** In accordance with the operating budget set forth therein, the Agent will make arrangements for water, electricity, gas, sewage, trash disposal, vermin extermination, decorating, laundry facilities, cable television, telephone services and any other

services specifically requested by Owner.  Subject to Owner's prior approval or as stipulated in the Operations Manual, Agent will make such contracts as necessary to secure such utilities and services.

**(X)  Employees:** The personnel to be regularly employed in the management of the Project include, but are not limited to, a Warden, Assistant Warden, Maintenance Personnel, Bookkeeper, Clerical, Security, and Secretarial.  All such on-site personnel will be the employees of the Project and not the Agent, but will be hired, paid, supervised, and discharged through the Agent and the Concordia Parish Sheriff.

The compensation of the Warden(s), Maintenance Personnel, Bookkeeper and/or other "front line" personnel, including "fringe benefits" and compensation of all such personnel will be recommended by Agent and approved R.C.C. managers. All such compensation, including, fringe benefits, payable to all such on-site employees, as prescribed in the "Louisiana Jail Guidelines", including all applicable local, state and federal taxes and assessments, including, but not limited to, Social Security taxes, unemployment insurance and workman's compensation insurance, incident to the employment of such personnel are to be paid by Agent, out of the Agency Account and will be treated as Project expenses.

So as to maintain and affirm Agent's ability to supervise and direct the actions of all such employees, Owner agrees to direct all instructions to the management concerning operations of the Project through the offices of Agent.  All employee meetings, employee counseling and/or inquiries into the actions of such employees shall be conducted by Agent or his duly authorized representative, with Owner reserving the right to request the scheduling of, attend and to present his instructions at such meetings.

**(XI) Disbursements From Agency Account:** From the funds collected and deposited by Agent in the Owner Account, pursuant to Section (VI) above, the Agent will make the following disbursements promptly, when payable:

1-   Compensation and/or payroll to employees as specified above and for the taxes and assessments payable to  local, state and federal governments in connection with such employees.

2-   The single aggregate payment required to be made monthly by the Owner to the Mortgage, including the amounts due under the Mortgage,  including the amounts due under the Mortgage for principal amortization, interest, mortgage insurance, taxes and assessments, fire and other hazards insurance premiums and the amount specified for allocation to the Reserve for Replacements.

3-    All sums otherwise due and payable as expenses of the Project authorized to be incurred by the Agent under the terms of this agreement, or as authorized by Owner.

RCC K8

4-      The herein agreed upon compensation payable to Agent, for prison management services rendered, in the amount of <u>Seven & No/100's percent (7.0%)</u> of the gross monthly contractual receipts.

5-   Except for the disbursements mentioned above, funds will be disbursed from the Agency Account only as the Owner may from time to time direct Agent to do so, in writing.

6-   **In the event that the balance of the Agency Account is at any time insufficient to pay disbursements due and payable under this section, the Agent will inform Owner of this fact and the Owner will then remit to the Agent sufficient funds to cover the deficiency within five (5) days from such notification.** In no event will Agent be required to use his own funds to pay such disbursements.

**(XII)   Budgets:** Annual operating budgets for the Project will be projected and prepared by Agent and submitted to Owner for express written approval. With the exception of "emergency expenditures" as discussed above, annual disbursements for each type of operating expense itemized in the budget will not exceed the amount authorized by the approved budget, without Owner's express written authorization. In addition to the preparation and submission of a recommended budget for the initial fiscal year, the Agent will prepare a recommended budget for each subsequent fiscal year beginning during the term of this agreement and will submit same to the Owner thirty (30) days prior to the beginning of each fiscal year. The Owner will promptly notify Agent, in writing, of any proposed changes to be incorporated into the approved budget and the Agent will keep Owner informed of any anticipated deviation from the receipts or disbursements stated in the approved budget. During the current fiscal year, at the sole discretion of Agent, he may submit to Owner a revised and/or amended budget for said current fiscal year for Owner's express written approval. In addition, Agent shall furnish Owner reports concerning the operating budget on a monthly basis during each fiscal year period.

        A proposed operating budget must be submitted and reviewed by R.C.C. members coincidental with executors of this agreement.

**(XIII) Records and Reports:** In addition to any requirements specified herein and/or specified in the "Louisiana Jail Guidelines", the Agent will have the responsibility with respect to records, as follows:

1 -   The Agent will establish and maintain a comprehensive system of records, books and accounts in a manner conforming to the instructions of the Owner and as specified in the "Louisiana Jail Guidelines". All records, books and accounts will be subject to examination at reasonable hours by any authorized representative of the Owner, or authorized representative of any lending institution that has the specific right to examine these records.

2-      With respect to each fiscal year ending during the term of this agreement, the Agent will have an annual financial report audited and certified by a Certified Public Accountant. The report will be prepared in accordance with generally accepted Accounting Principles (GAAP),

RCC K9

will be certified by the preparer and will be submitted to Owner within sixty (60) days from the close of each fiscal year.   Compensation for the preparer's services will be paid out of the Agency Account as an expense of the Project.

3-      The Agent will prepare a monthly report comparing actual and balanced figures for receipts and disbursements, an Income Statement, and a Balance Sheet, and will submit such reports to Owner within twenty (20) days after the end of each month.

4-      The Agent will furnish such information (including occupancy reports) as may be requested by the Owner from time to time with respect to financial, physical or operational conditions of the Project.

5-      By the twenty-fifth (25th) day of each month, the Agent will prepare and place on file an itemized list of all delinquent accounts as of the tenth (10th) day of the same month. These reports shall be made available to Owner upon request.

6-      By the twenty-fifth (25th) day of each month, the Agent will furnish Owner with a statement of receipt and disbursements during the previous month, with a schedule of accounts receivable and payable and reconciled bank statements for the Agency Account, and any other operational accounts bearing the name of the Project, for the previous month.

**(XIV) Dishonesty Coverage:**  The Agent will furnish a fidelity bond at Agent's expense at least equal to the gross potential income for One (1) month and is conditioned to protect Owner against misappropriation of Project funds by the Agent and his employees if the owner so demands. The Agent will also provide at his expense an errors or omissions policy for like amount if the owner so demands. Upon the instructions of Owner, a like fidelity bond will be secured to cover on-site personnel as specified by Owner. The costs of providing such bond shall be paid by the Owner Account and treated as a Project expense. The other terms and conditions of the bond, and the surety thereon, will be subject to the approval of Owner and specified in the "Louisiana Jail Guidelines".

Incident thereto, the following provisions will apply with respect to such a bond or employee dishonesty coverage, hereinafter referred to as "such coverage":

1-      Such coverage shall include all principals of the management entity and all persons who participate directly or indirectly in the management and maintenance of the Project and its assets, accounts and records.

2-      Such coverage must name the Mortgagee (if applicable) and the Owner as loss payees.

**(XV) Bids, Discounts, Rebates, etc.:**  The Agent will obtain contracts, materials, supplies, utilities and services on the most advantageous terms to the Project, and is authorized to solicit bids, either formal or informal, for items that can be obtained from more than one source. The Agent will secure and credit to the Owner all discounts, rebates or commissions obtainable with respect to purchases, services contracts on behalf of the Project or Owner.

RCC K10

**(XVI) On-Site Management Facilities**: Subject to the further agreement of the Owner and Agent, the Agent will maintain a management office within the Project. The Owner will make the said management office free and clear of any and all rental, utilities and telephone charges.

**(XVII) Insurance:** The Owner will inform the Agent of insurance to be carried with respect to the Project and its operations and the Agent will cause such insurance to be placed and kept in effect at all times. The Agent will pay all premiums out of the Agency Account and such premiums will be treated as operating expenses of the Project. All insurance will be placed with such companies, on such conditions, in such amounts and with such beneficial interests appearing thereon as shall be acceptable to the Owner and shall be otherwise in conformity with the mortgage; provided that the same will include public liability coverage, with Agent designated as one of the insured, in amounts acceptable to Agent as well as the Owner. The Agent will investigate and furnish the Owner with full reports as to all accidents, claims and potential claims for damages relating to the project and further agreed to cooperate with Owner's insurers in connection therewith.

**(XVIII) Compliance with Governmental Orders:** The Agent will take such actions as may be necessary to comply with any and all governmental orders or other requirements affecting the Project, whether imposed by federal, state, parish or municipal authority.  Nevertheless, the Agent shall take no action as long as the Owner is contesting, or has affirmed his intention to contest, any such order or requirement.  The Agent shall notify Owner in writing of all notices of such orders or other requirements within seventy-two (72) hours from the time of their receipt.

**(XIX) Nondiscrimination:** In the performance of his obligations under this agreement, the Agent will comply with the provisions of any federal, state or local law prohibiting discrimination in housing or employment on the grounds of race, color, sex, creed, religion or national origin.

**(XX) Agents Compensation:** The Agent will be compensated for his services under this agreement by monthly fees, to be paid out of the Agency Account and treated as Project expenses.  Such fees will be payable as described in Subsection (XI-4) above.

**(XXI) Term of Agreement:** This agreement shall be said to be in effect for a period of **THREE (3)** years and shall automatically renew for the same period of time under the terms and conditions in effect on the day of renewal, unless cancelled in writing by the Owner or the Agent **TWO (2)** months prior to the expiration of the **THREE (3)** year agreement, subject to the following provisions:

1-      In the event a petition in bankruptcy is filed by or against either of the parties hereto or in the event either party hereto makes an assignment for the benefit of creditors or takes advantage of any insolvency act, the other party hereto, may terminate this agreement by written notice to the other.  Said notice shall provide for a termination period of a minimum of sixty (60) days with the effective termination date to coincide with the last day of the calendar month during the term of this agreement.

RCC K11

2-     Upon termination, agent will submit to Owner any records and financial reports requested by Owner and after the parties hereto have accounted to each other with respect to all matters outstanding, as of the date of termination, the Owner will furnish to the Agent security in the form and principal amount satisfactory to Agent against any and all obligations or liability that the Agent may have properly incurred on behalf of Owner hereunder.

3-     In the event of termination by any party so authorized, Agent will turn over to the Owner all of the project's cash, trust accounts, investments and records within (30) days of the date that this management agreement is terminated.

(XXII) The Agent shall maintain an emergency plan in the event of labor disputes, riots, fires, power failures, civil disasters, and inmate disputes. A copy of this plan is to be available to all members.

(XXIII) The agent shall provide R.C.C. with their employment hiring, training, and certification procedures.

(XXIV) The agent will institute the programs necessary to obtain inmates from sources other than the Louisiana Department of Corrections with the goal of obtaining higher per diem rates for inmates.

(XXV) The agent will institute procedures that will ensure that all provisions of the Cooperative Endeavor Agreement with the Concordia Parish Law Enforcement District are met.

(XXVI) The agent will institute an inmate gardening program to help reduce the cost of inmate meals.

(XXVII) Agent will be responsible for maintaining a drug-free work force and a drug-free inmate population.

(XXVIII) Agent will provide R.C.C. with a hold-harmless and indemnification clause with regard to all phases of management of this enterprise.

(XXIX) Agent will stipulate in all contracts that Louisiana law will govern in the event of any dispute.

(XXX) Termination for Convenience. R.C.C. may terminate performance of work under this agreement in whole or in part whenever, for any reason, R.C.C. determines that it is in its best interest to do so. R.C.C. shall give the Agent, without penalty to R.C.C., one hundred twenty (120) days notice prior to termination of the agreement.
Upon such termination, the Agent shall have no right to any general, special, incidental or any other damages whatsoever of any description or amount, except that R.C.C. shall pay for all supplies and equipment on order and not yet delivered to the Facility as of the date of termination.

RCC K12

The Agent may terminate performance of work under the Agreement for any reason the Agent determines is in its best interest to do so. The Agent shall give R.C.C. one hundred twenty (120) days written notice by certified mail prior to termination of the Agreement. Upon such termination, R.C.C. shall have the right to demand damages as provided herein in Section 8.8 <u>Liquidated Damages</u>.

**(XXXI) Liquidated Damages**.  At the time of termination of the Agreement or at the conclusion of the term, R.C.C. may deduct from monies owed the Agent or otherwise obtain from the Agent sums sufficient to reimburse it for the following expenses:

a) In the event of default or termination by Agent pursuant to Section 8.7, R.C.C. may procure, on terms that it finds appropriate, goods or services similar to those provided under this Agreement, and the Agent shall be liable to R.C.C. for any excess costs for such similar goods and services. In addition, the Agent shall be liable to R.C.C. for administrative costs incurred by R.C.C. in procuring such similar goods or services.

**(XXXII) Waiver**. No waiver of any breach of any of terms or conditions of this Agreement shall be held to be a waiver of any other or subsequent breach; nor shall any waiver be valid or binding unless the same shall be in writing and signed by the party alleged to have granted the waiver.

**(XXXIII) Disputes.** If the parties are unable to resolve any disputes arising hereunder, they may, if both agree, submit the matter to arbitration in accordance with the rules of the American Arbitration Association. If the parties fail to agree to arbitration, then disputes will be resolved by the appropriate court. Any decision of the arbitrator shall be conclusive as to the matter submitted and may be enforced in any court of competent jurisdiction in the State of Louisiana. Arbitration proceedings shall be conducted in Louisiana at a location selected by R.C.C.

**(XXXIV) Non-Discrimination.**  No person will be subjected to discrimination in the performance of this Agreement on the grounds of handicap, race, color, religion, sex, age or national origin. Upon request, Agent shall show proof of such non-discrimination and shall post in conspicuous places, available to all employees and applicants, notice of such non-discrimination. Agent shall comply with all applicable federal and state laws, such as the Americans with Disabilities Act, etc.

**(XXXV) Binding Nature.** This Agreement shall not be binding until it is approved and executed by the parties.

**(XXXVI) Invalidity and Severability.** In the event that any provision of this Agreement shall be held to be invalid, the validity of the remaining provisions of the Agreement shall not in any way be affected thereby.

**(XXXVII) Counterparts.** This Agreement may be executed in multiple counterpart, each of which shall be deemed to an original and all of which shall constitute one Agreement, notwithstanding that all parties are not signatories to the original or the same counterpart, or that signature pages from different counterpart are combined, and the signature of any party to any counterpart shall be deemed to be a signature also and may be appended to any other counterpart.

**(XXXVIII) Interpretation.** The headings contained in the Agreement are for reference purposes only and shall not affect the meaning or interpretation of the Agreement.

**(XXXIX) Terminology and Definitions.** All personal pronouns used in this Agreement, whether used in the masculine, feminine, or neutral gender, shall include all other genders; the singular shall include the plural and the plural shall include the singular.

**(XL) Interpretation and Venue.** The Agreement shall be interpreted by the laws of the State of Louisiana. Concordia Parish, Louisiana shall be the venue in the event any action is filed to enforce or interpret provisions of this Agreement.

**(XLII) Release.** Agent, upon final payment of the amount due under this Agreement, releases R.C.C., its officers and employees, from all liabilities, claims and obligations whatsoever arising from or under this Agreement. Agent agrees not to purport to bind R.C.C. to any obligation not assumed herein by R.C.C. unless the Agent has express written authority to do so, and then only within the strict limits of this authority.

**(XLIII) Amendment.** This Agreement shall not be altered, changed or amended except by instrument in writing executed by the parties hereto.

**(XLIV) Scope of Agreement.** This Agreement and its appendices incorporate all the agreements, covenants and understandings between the parties hereto concerning the subject matter hereof. No prior agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Agreement.

**(XLV) Subcontracting and Assignment.** The Agent may, upon notice to R.C.C., assign the proceeds of this Agreement. The Agent shall not subcontract or assign any and all of the services to be performed under this Agreement without the consent, guidance and prior express written approval of R.C.C. In the event that approval is granted, the Agent shall guarantee that the subcontractor will comply with all the provisions of this Agreement.

**(XLVI) Third Party Beneficiaries.** The provisions of the Agreement are for the sole benefit of the parties hereto and will not be construed as conferring any rights on any other person.

RCC K14

**(XLVII) Notices.**

**Addresses:** All notices shall be sent certified mail, return receipt requested to:

      W. K. McConnell
      River Correctional Center, L.L.C.
      P. O. Box 809
      Rayville, LA 71269

    This Agreement constitutes the entirety of the Agreement by and between parties hereto with no adverse construction being construed against either party.

RCC K15

**WITNESS THE EXECUTION** of this agreement in the presence of the undersigned Notary Public and in the presence of the subscribing witnesses, after due reading of the whole, becoming effective and having a term as stipulated above, this _24th_ day of _May_ , 2000.

All of the parties hereto have executed this agreement both individually and as duly authorized Agents for their respective corporate entities represented herein.

**THUS DONE AND SIGNED** in the City of _Rayville_ , Parish of _Richland_ , State of Louisiana in my presence as Notary Public in and for said parish and state.

**OWNERSHIP ENTITY/OWNER**

Witnesses:

River Correctional Center, L.L.C.
By:

_____
W. K. McCONNELL

**MANAGEMENT ENTITY/AGENT**

Witnesses:

Concordia Consulting Company, L.L.C.
By:

_____
PATRICK H. TEMPLE

NOTARY PUBLIC (affix seal)

My commission expires: _Life_

RCC K16

## SPECIFIC AGREEMENT

THIS AGREEMENT is entered into on the _23rd_ day of _February_, 2000, between the Concordia Parish Law Enforcement District, represented herein by Randy Maxwell, Sheriff of Concordia Parish, Louisiana and Chief Law Enforcement Officer of Concordia Parish, Louisiana (hereinafter referred to as "SHERIFF"); and River Correctional Center, L.L.C., (hereinafter referred to as "R.C.C."), a limited liability company domiciled in the parish of Richland, Louisiana, represented herein by its duly authorized Managing Member, W. K. McConnell, for the purpose of constructing, equipping, and operating a new jail facility located in Concordia Parish, Louisiana, for the housing of federal, out-of-state, state and parish inmates, as well as pretrial parish prisoners (hereinafter referred to collectively as "INMATES"), on the following general terms and conditions.

## I.   PURPOSE OF AGREEMENT

R.C.C., acting as a private contractor under the provisions of Louisiana Revised Statute 39:1800.1, et seq., will construct a new jail facility on privately owned property located within Concordia Parish, Louisiana (hereinafter referred to as the "JAIL FACILITY") for the SHERIFF. The JAIL FACILITY and sufficient surrounding property will be operated in accordance with LSA R.S. 39:1800.1 and the Louisiana Basic Jail Guidelines dated May 25, 1994, for institutions housing Department of Corrections inmates.

## II.   SPONSOR FEE FOR JAIL FACILITY

R.C.C. will purchase the property described in Exhibit "A" on which will be built JAIL FACILITY. The term of this agreement will be for a primary term of twenty (20) years, with a 20-year option to renew, commencing on the date that final acceptance of the JAIL FACILITY is issued by the Department of Corrections, and any other such agency from which such acceptance is mandated.

The SHERIFF will receive all payments for housing of any and all INMATES ("Payments"), and will remit to R.C.C. therefrom on a monthly basis the following:

All of the payments will be directed to R.C.C. as soon as possible, but not later than 5 days after all the payments are received. R.C.C. will then return a check for the sponsorship fee to the SHERIFF on a monthly basis.

The sponsorship fee will be as follows:

$80,000/year guaranteed to be paid beginning 5 days after the first check is received from D.O.C. for housing of state inmates. The monthly check is to be $80,000/12 or $6,667/month for the

RCC K17

initial period. For example, if the first D.O.C. check is received from the SHERIFF on December 15, 2000, then the first sponsor fee payment would be due to the SHERIFF on December 20, 2000. The sponsorship fee will increase to $100,000/year when the state per diem is increased from $23/day to an amount greater than $23/day.

## III.   OPERATION OF JAIL FACILITY

The SHERIFF will operate the JAIL FACILITY and will provide all of the personnel necessary and proper for its operation in compliance with LSA R.S. 39:1800.1 and the BASIC GUIDELINES, together with any additions and amendments thereto, during the term of the Agreement.

The following specific rights, obligations and duties relative to the operation of the JAIL FACILITY are agreed upon by the parties hereto:

A.   R.C.C. will construct and completely furnish the JAIL FACILITY with a capacity to house five hundred (500) inmates, together with fencing, razor wire, video surveillance, and other outside improvements, and with all items necessary for its acceptance, approval, and operation in accordance with the Cooperative Endeavor Agreement between the Louisiana Department of Public Safety and Corrections and the Concordia Parish Law Enforcement District, LSA R.S. 39:1800.1, et seq., and the BASIC GUIDELINES. In this connection, the SHERIFF shall review and approve all architectural plans, specifications, etc. and all equipment prior to construction and installation. The parties agree that in the event that R.C.C. expands the JAIL FACILITY, and assuming that the D.O.C. allows for said expansion, then the SHERIFF will operate said JAIL FACILITY under such terms and conditions that can can be mutually agreed upon at that time. SHERIFF agrees to make a good faith effort to cooperate in every way with R.C.C. in the operation, personnel selection, and inmate selection criteria.

1.   R.C.C. will employ the River Consulting Company as a consultant for the JAIL FACILITY. In this capacity, the River Consulting Company is responsible for controlling all costs associated with the facility.

RCC K18

2. Approval of the warden hired to manage the River Correctional Center will be required by both the River Consulting Company and the Sheriff of Concordia Parish ("SHERIFF"). The warden will be responsible for selecting personnel for all staff positions—chief of security, maintenance foreman, clerical, cook, security lieutenants, etc. The actual selection of the employees will be done by River Consulting Company with the SHERIFF having the authority to approve or reject any of the staff members selected for employment by River Consulting Company.

3. River Consulting Company will be responsible for assisting the Concordia Parish Sheriff ("SHERIFF") in the preparation of all documents required to make the detention facility a reality.

B. R.C.C. will install a law library in accordance with LSA R.S. 39:1800.1, et seq., and the BASIC GUIDELINES, as part of the "turn-key job".

C. R.C.C. will be responsible for the following items pertaining to the construction and maintenance of the building.

1. A one-year warranty on the entire facility, including workmanship and installation of the items relating to the construction, will be provided by R.C.C. from the construction contract.

2. A list of extended warranties for such items as the HVAC system, the electrical system, the emergency generator, etc. will be included from the construction company as required by the plans and specifications and as is standard in the construction industry.

3. R.C.C. will be responsible for the repair and maintenance of the JAIL FACILITY for the life of the project.

D. In addition, the R.C.C. will be responsible for the payment of:

1. the medical expenses of the INMATES housed at the JAIL FACILITY;

2. the utilities of the JAIL FACILITY;

3. the liability insurance on the JAIL FACILITY and for the housing of the INMATES;

RCC K19

4.  the clothing and linen necessitated by the operation of the JAIL FACILITY;

5.  all salaries, taxes, insurance, retirement, and other expenses for personnel employed in connection with the operation of the JAIL FACILITY;

6.  all costs of transportation of INMATES, for any reason whatsoever;

7.  all costs associated with feeding of prisoners;

8.  any property taxes on JAIL FACILITY.

9.  all maintenance and repairs, including, but not limited to, the janitorial services, garbage and trash removal, grounds maintenance, plumbing, and electrical and HVAC repairs, etc.

10.  any other expenses associated with or arising out of or in connection with the operation of the JAIL FACILITY.

E.  R.C.C. to be responsive to SHERIFF's request to utilize local suppliers/subcontractors where prices are competitive.

F.  The SHERIFF will retain the right to accept or reject any INMATES for housing at the JAIL FACILITY.

G.  R.C.C. will, at its expense, obtain all plans and other materials necessary for designing, planning, and constructing the JAIL FACILITY, and will be responsible, at its expense, for the hiring of the architect(s), draftsmen, consultants, and other persons necessary and proper for this purpose.

H.  The SHERIFF will review and approve the plans for the JAIL FACILITY prior to the beginning of construction thereof.

I.  R.C.C. will install and maintain, at its expense, in the JAIL FACILITY, a telephone system for the use of INMATES.

J.  The SHERIFF, to the best of his ability, will maintain the percentage occupancy between the existing Concordia Correctional Center facility and the new River Correctional Center at approximately equal levels within six months of project completion.

RCC K20

K.    R.C.C.shall be responsible for the payment of, and provide the SHERIFF proof of coverage as applicable and as requested by the SHERIFF with the SHERIFF listed as an insured under the policy for the following:

A standard fire insurance policy insuring the JAIL FACILITY and its contents for losses and damages resulting from fire or other perils and a comprehensive general liability policy insuring R.C.C. for any loss or damages to persons or property in connection with the ownership and operation of the JAIL FACILITY. R.C.C. will be responsive to the SHERIFF's request to allow local insurance agents to offer proposals for consideration by R.C.C.

L.    R.C.C. indemnifies and holds SHERIFF harmless for any claims made against SHERIFF, his agents or employees for injuries or property damage during the construction of the JAIL FACILITY.

M.    R.C.C. will construct and operate a commissary within the JAIL FACILITY.

N.    R.C.C. commits that each employee will be commissioned by the SHERIFF of Concordia Parish, if the SHERIFF desires to do so.

O.    R.C.C. commits to require each commissioned employee to participate in the medical plan and retirement plan as offered by the Louisiana Sheriff Association.

P.    R.C.C. commits to provide both general liability and professional liability insurance for the facility and on each employee in the facility.

Q.    To insure that the commissioned employees of the R.C.C. qualify for the medical benefits and retirement plan, the actual payroll checks for these employees will be written from an account approved by the C.P.L.E.D. The money needed to cover the cost of this payroll, the medical benefits, and the retirement plan incurred by the C.P.L.E.D. will be the responsibility of the R.C.C. The money needed to cover such costs will be deposited into a special payroll and benefits account prior to the payroll checks being issued.

RCC K21

R.    The requirements for the R.C.C. personnel will be as follows:
   a) clear of criminal history
   b) sound health
   c) of good moral stature
   d) possess or pursue immediately a G.E.D. or high
      school educational degree
   e) must complete post certification for correctional officers
   f) character must be above reproach throughout employment
      *Note: These employees are not covered under civil
             service rules and/or guidelines.

S.    The responsibility for hiring, training, terminating, promoting,
scheduling work, etc. for all employees of R.C.C. remains the
responsibility of the warden of R.C.C.; however, the SHERIFF
must approve of any and all new hires. The SHERIFF has the
authority to terminate any employee found to be derelict
of his/her duties or responsibilities.

T.    Compensation for surplus goods from the federal and
state surplus agencies approved by the SHERIFF of
Concordia Parish for use in the R.C.C. facility will be
made by R.C.C. in lump sum prior to the due date of the
payment due to the federal and/or state surplus agency.

## IV.   CONDITIONS

This agreement is entered into between the parties after approval having
been received by the SHERIFF from the Department of Corrections ("D.O.C.") for the
construction and operation of the JAIL FACILITY, as substantially set forth in the
"Cooperative Endeavor Between the Louisiana Department of Public Safety and
Corrections and Randy Maxwell, Sheriff of Concordia Parish" dated July 22, 1999, and
contingent upon the extension of sufficient financing to R.C.C. for the acquisition,
constructing, and equipping of the JAIL FACILITY, and upon the continued funding and
continued housing of INMATES by D.O.C. pursuant to the "Cooperative Endeavor
Agreement Between the Louisiana Department of Public Safety and Corrections and the
Concordia Parish Law Enforcement District". It is understood and agreed that in the
event that the construction of this JAIL FACILITY is not started on or before July 22,
2000, the agreement shall be null and void and without legal effect.

RCC K22

THUS DONE AND SIGNED, after due reading of the whole, at _Ferriday_, Louisiana, this _23rd_ day of _February_, 2000.

WITNESSES:

_Melissa McNeal_

_Mary Beth Porter_

CONCORDIA PARISH LAW ENFORCEMENT DISTRICT, THROUGH RANDY MAXWELL, SHERIFF AND CHIEF LAW ENFORCEMENT OFFICER OF CONCORDIA PARISH

By _[signature]_

_[signature]_
NOTARY PUBLIC

My commission expires: _at death_

WITNESSES:

_Melissa McNeal_

_Mary Beth Porter_

RIVER CORRECTIONAL CENTER, L.L.C.

By: _[signature]_

_[signature]_
NOTARY PUBLIC

My commission expires: _at death_

RCC K23

## FIRST AMENDMENT TO SPECIFIC AGREEMENT

**STATE OF LOUISIANA**

**PARISH OF CONCORDIA**

BEFORE ME, the undersigned Notary Public and competent witnesses came and appeared:

CONCORDIA PARISH LAW ENFORCEMENT DISTRICT, referred to hereinafter as "L.P.L.E.D.", represented herein by Randy Maxwell, Sheriff of Concordia Parish, Louisiana and Chief Law Enforcement Officer of Concordia Parish, Louisiana, said district being referred to hereinafter as "SHERIFF"; and

RIVER CORRECTIONAL CENTER, L.L.C., a limited liability company, whose registered office is c/o William K. McConnell, 810 Louisa St., P. O. Box 486, Rayville, Louisiana 71269, represented herein by William K. McConnell, referred to hereinafter as "L.C.C.",

who upon being duly sworn did declare as follows:

A "Specific Agreement" was entered into by SHERIFF and L.C.C. on February 23, 2000. The parties hereto now agree that the "Specific Agreement" referred to hereinabove shall be amended by adding thereto the following:

(1) Where the name River Consulting Company, L.L.C. or River Consulting Company appears, it shall be replaced with the name Concordia Consulting Company, L.L.C.

Except as amended above, the "Specific Agreement" dated February 23, 2000 and the amendments and corrections set forth hereinabove shall remain as written.

RCC K24

**THUS DONE AND SIGNED**, after due reading of the whole, at _Ferriday_, Louisiana, on this _10th_ day of _March_, 2000.

WITNESSES:

CONCORDIA PARISH LAW
   ENFORCEMENT DISTRICT
through Randy Maxwell, Sheriff and Chief Law
Enforcement Officer of Concordia Parish

By: _____
   RANDY MAXWELL

RIVER CORRECTIONAL CENTER, L.C.C.

By: _____
   WILLIAM K. McCONNELL

_____
   NOTARY PUBLIC

My commission expires: _at death_

RCC K25

## SECOND AMENDMENT TO SPECIFIC AGREEMENT

**STATE OF LOUISIANA**

**PARISH OF CONCORDIA**

BEFORE ME, the undersigned Notary Public and competent witnesses came and appeared:

CONCORDIA PARISH LAW ENFORCEMENT DISTRICT, referred to hereinafter as "C.P.L.E.D.", represented herein by Randy Maxwell, Sheriff of Concordia Parish, Louisiana, and Chief Law Enforcement Officer of Concordia Parish, Louisiana, and district being referred to hereinafter as "SHERIFF"; and

RIVER CORRECTIONAL CENTER, L.L.C., a limited liability company, whose registered office is c/o William K. McConnell, 105 Ray Street--Suite A, Rayville, Louisiana 71269, represented herein by William K. McConnell, referred to hereinafter as "R.C.C.",

who upon being duly sworn did declare as follows:

A "Specific Agreement" was entered into by SHERIFF and R.C.C. on February 23, 2000 and amended on March 10, 2000. The parties hereto now agree that the "Specific Agreement" referred to hereinabove shall be further amended by adding thereto the following:

In the event that the salary of one or more of the staff members serving at River Correctional Center cannot be agreed upon by both the managing member of R.C.C. and the SHERIFF, then the party desiring the higher salary will prevail; however, the cost of the higher salary will be borne or covered by the party that is requiring the higher salary. For example, if the SHERIFF desires to give an across-the-board 10% raise to all of the employees at the River Correctional Center, and no agreement can be reached with the managing member of R.C.C., then the SHERIFF may proceed with giving the across-the-board increases, but the funding for the increase will come from the SHERIFF's operating budget and not require reimbursement from R.C.C.

Except as amended above, the "Specific Agreement" dated February 23, 2000 and amended March 10, 2000 and the amendments and corrections set forth hereinabove shall remain as written.

THUS DONE AND SIGNED, after due reading of the whole, at Vidalia, Louisiana, on this 30th day of June, 2006.

RCC K26

Witnesses:

Concordia Parish Law
Enforcement District
Through Randy Maxwell, Sheriff
And Chief Law Enforcement Officer of
Concordia Parish

By: _____
Randy Maxwell

River Correctional Center, L.L.C.

By: _____
William K. McConnell

_____
Notary Public          30891

My commission expires: _At death_

RCC K27

Exhibit 5

# SERVICES AGREEMENT

### between

# CLAIBORNE PARISH LAW ENFORCEMENT DISTRICT, LOUISIANA

### and

# LaSALLE MANAGEMENT COMPANY, L.L.C.

**July 1, 2010**

CPDC K1

*Exhibit 5*

# SERVICES AGREEMENT

THIS AGREEMENT, duly executed, is between Claiborne Parish Law Enforcement District, Louisiana (the "District") represented by Ken Bailey, Sheriff of Claiborne Parish, who is duly authorized to act herein, and LaSalle Management Company, L.L.C. ("LaSalle"), a Louisiana limited liability company, represented by William K. McConnell, Managing Member, who is duly authorized to act herein.

WHEREAS, LaSalle is in the business of providing services to prisons, including services promoting prisons, locating state and federal prisoners for prisons, advising and consulting with respect to the operations of prisons in general, and commissary services, budgeting for the operations of prisons, cash and financial services for prisons, negotiating for the placement of state and federal prisoners in prisons, serving as a liaison between prisons and governmental entities concerning the foregoing, negotiating for, obtaining and maintaining goods and other services for prisons, and providing the other services set forth in this Agreement;

WHEREAS, the District regards LaSalle's services as beneficial to the successful operation of the Prison known as the Claiborne Parish Detention Center, referred to herein as "the Prison" in a manner contemplated by the District, and the District desires to obtain the services of LaSalle; and

WHEREAS, this Agreement shall be effective as of the 1st day of July, 2010.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the mutual covenants contained herein,

IT IS AGREED AS FOLLOWS:

**Section 1. Common Understandings**. LaSalle and the District both acknowledge the following as of the effective date of this Agreement:

(a)     The District has the authority to make contracts and leases for the procurement of services, equipment and supplies. It is the intention of the District to utilize the services of LaSalle in connection with the operation of those aspects of the Prison's operation identified in this Agreement to the fullest extent permitted by law, subject to any limitations set forth in this Agreement.

(b)     LaSalle will assist or advise the District in creating and maintaining policies for the Prison, but such policy will ultimately be determined by the District.

(c)     LaSalle will assist or advise the District in fulfilling the requirements of any and all court orders/judicial decrees applicable to the Prison, and in complying with any and all state and federal laws applicable to the Prison or to the Sheriff of Claiborne Parish.

1

CPDC K2

**Section 2. Services**. LaSalle shall provide or contract for in compliance with all applicable law, including public bid laws, or assist or advise the District in contracting for or providing the following services in connection with the Prison and its operations:

(a) Information to insure compliance with all aspects and provisions of this agreement;

(b) Business administration, including budgeting, financial and other record keeping, audits, and regulatory compliance;

(c) Acquisition of instructional materials, equipment, and supplies for the District.

(d) Maintenance (including cleaning services) of Prison facilities and equipment;

(e) Medical services for inmates to be provided in accordance with generally accepted jail requirements and maintain appropriate records of such care which shall be available to the Sheriff at all reasonable times.

(f) Advice and consulting concerning management of Prison affairs, including implementation of policies and procedures affecting prisoner welfare and safety and visitor relations;

(g) Advice and consulting concerning employment of Prison personnel, including training of security personnel and guards in compliance with Louisiana Basic Jail Guidelines and applicable laws;

(h) Advice and consulting concerning food service required by law;

(i) Advice and consulting concerning transportation services required by law;

(j) Advice and consulting concerning other services required by law; and

(k) Advice and consulting concerning conduct of grievance procedures and due process hearings required by law or by agreements to which the District is bound.

**Section 3. Minimum Conditions of Confinement**. LaSalle will insure that the Prison is operated, managed, supervised, and maintained for the secure custody, care and safekeeping of all prisoners at the facility in accordance with federal, state and local law, including the standards promulgated by the Louisiana Basic Jail Guidelines and this agreement. The level and the quality of services provided shall meet or exceed the standards promulgated by the Louisiana Basic Jail Guidelines and the minimum conditions of confinement required by law. In addition to such laws, regulations, and standards, the minimum conditions of confinement during the entire period of this agreement shall include:

CPDC K3

(a)     Adequate staffing shall be provided 24 hours a day to provide security and supervise inmates;

(b)     Three (3) meals (including two hot meals) shall be provided per day for all inmates;

(c)     Access to reasonable medical care, including twenty-four (24) hour per day emergency medical care, will be provided for the inmates, with complete medical records being maintained and retained;

(d)     An automatic smoke and fire detection and alarm system shall be maintained and a written policy, procedure and practice regarding fire and other safety emergency standards shall be maintained;

(e)     A water supply that is certified to be in compliance with applicable laws and regulations and a waste disposal program shall be maintained;

(f)     All inmates will have reasonable access to the courts and adequate legal materials;

(g)     Adequate clothing will be provided for all inmates; and

(h)     A discipline system for inmates that is in compliance with federal and state laws and meets the approval of the Chief Executive of the Law Enforcement District shall be utilized.

**Section 4. Prisoners**. LaSalle will obtain contracts for male prison inmates from the various governmental agencies at contracted prices deemed reasonable by the parties to house inmates and support the Prison facilities. Incident thereto, the following provisions will apply:

(a)     LaSalle will make preparation for initial contracts as agreed to by the District and LaSalle;

(b)     LaSalle will follow the selection policies as agreed to by the District and LaSalle;

(c)     LaSalle will show the premises to prospective governmental agencies supplying prisoners;

(d)     LaSalle will take and process contracts for prisoners. If a contract is rejected, the District will be told the reason for rejection;

(e)     LaSalle will prepare all contracts for prisoners and provide same to the District for execution. The terms and conditions of all contracts

3

CPDC K4

will comply with the pertinent provisions of the Louisiana Basic Jail Guidelines. These contract agreements will be in a form approved by District.

(f)     LaSalle will furnish the District with contract schedules and/or prisoner rolls on a monthly basis or as requested. Such schedules shall show and specify the number, source, and type – whether federal, U.S. Marshal, I.N.S., out-of-state (with source state identified), Louisiana DOC, convicted parish inmate, pre-trial detainee (with the source parish identified) – of prisoners currently housed in the facilities on a daily basis and any contractual agreements housing such prisoners, and any charges for facilities and services;

(g)     Only male inmates are eligible for incarceration in Claiborne Parish Detention Center pursuant to this agreement, including all inmates of Claiborne Parish, sentenced Louisiana Department of Corrections inmates, federal inmates, out-of-state inmates, and out-of-parish inmates, but excluding juveniles;

(h)     Up to 65 beds for pre-trial detainees or sentenced misdemeanor inmates from Claiborne Parish will be available at a cost of $3.50 per inmate per day, excluding any medical, mental or education service, except as provided herein. These 65 inmates shall have access at no cost to regular sick call by an on-staff nurse and any expense associated with outside medical care or prescription drugs for these 65 inmates will not come out of the accounts set up pursuant to this agreement. If pre-trial population is greater than 65, then all inmates above 65 shall be charged current Louisiana Department of Corrections rates.

(i)     Transportation of pre-trial inmates to and from court will be provided;

(j)     Sentenced inmates will be available on a reasonable basis for parish road crews or other work crews, provided that the parish pays for a commissioned, trained deputy and the sheriff approves of the guard and status for the inmates who go on work crews outside of the facility.

(k)     Sheriff's office vehicles will be serviced at the Prison with the Sheriff responsible for the cost of parts.

   **Section 5. Term.** This agreement shall run for a period of five (5) years from the effective date of this agreement unless terminated as provided herein. Unless cancelled in writing by either party at least two (2) months prior to the expiration of the five (5) year term, this agreement will automatically renew for an additional five (5) year term under the terms and conditions in effect on the day of the renewal, except that the monthly payments to the Claiborne Parish Sheriff will first be re-negotiated and determined in good faith by the parties.

CPDC·K5

**Section 6. Personnel**. All on-site personnel will be the employees of the Claiborne Parish Sheriff. LaSalle will assist the Sheriff in hiring, paying, supervising, and discharging employees who work at the Prison. All new hires must undergo NCIC background check, have good moral character, and pass pre-employment drug testing. All new hires must be approved by the Sheriff and the Sheriff has the power to veto any new hire. All on-site personnel will complete basic corrections training within the time required by law. No person working at the Prison may be discharged without the consent and approval of the Sheriff, and the Sheriff has the right to discharge any person working at the Prison.

The compensation of all employees working at the Prison will be approved by the Sheriff consistent with the correctional industry. All employees working at the Prison will be subject to the rules, regulations, and policies of the Sheriff, including the Fair Labor Standards Act, and all non-exempt employees will be paid overtime as required by the FLSA. The Sheriff has the right, at any time, to audit any records necessary to ensure compliance with the FLSA.

Employees working at the Prison will participate in the employee benefit programs of the Claiborne Parish Sheriff. A personnel handbook for persons working at the Prison will be maintained. LaSalle will insure that it complies with all state and federal laws and regulations as well as Sheriff's policies.

**Section 7. Discrimination**. In the performance of this agreement, the parties will comply with the provisions of any federal, state or local law prohibiting discrimination in housing or employment on the grounds of race, color, sex, sexual orientation, disability, religion or national origin. An harassment policy in compliance with all state and federal employment discrimination laws will be maintained by LaSalle at all times. It will be posted and published to all employees at the Prison, and a copy provided to the Sheriff.

**Section 8. Commitment to the Prison**. Pursuant to the terms of this Agreement, LaSalle has committed itself to spend such of its funds as may be reasonably necessary so as to fund the expenses and working capital relating to the operation of the Prison and to make payments required by this agreement.

LaSalle shall carry out the marketing activities deemed necessary by the District and/or LaSalle solely at LaSalle's expense. LaSalle agrees to use its best efforts to seek out sources of inmates to be housed at the Prison, and to assist or advise the District in negotiating and entering into contracts with such governmental entities for the housing of inmates at the Prison. All of such commitments of LaSalle are intended to develop the Prison into a successful and fully utilized correctional facility, capable of generating sufficient revenue consistently to pay the monthly payment obligation, and provide the citizens of Claiborne Parish with all the benefits of a successful and fully utilized correctional facility.

LaSalle will institute the programs necessary to obtain inmates from sources other than the Louisiana Department of Corrections with the goal of obtaining higher per diem rates for inmates.

CPDC K6

LaSalle will employ its best efforts to encourage and pursue the full utilization and operation of the Prison in compliance with this Contract and all applicable laws and regulations.

**Section 9. Equipment and Supplies.** LaSalle shall assist or advise the District in acquiring all equipment and supplies necessary for the operation of the Prison as provided in Section 2 of this Agreement. Except as otherwise agreed by the parties in writing, all such equipment and supplies shall be the property of the District.

**Section 10. Financial Matters.**

**I.      Budget.** Prior to the beginning of each Fiscal Year of the District, LaSalle shall determine a budget (the "Budget") identifying the sources and amounts of funds to be received, and the use and amounts of funds to be expended or reserved, during the succeeding Fiscal Year.

All Project Revenues received shall be deposited directly into a segregated account known as the "Claiborne Parish Detention Center Account" (the "Account"). The Account will be with a bank approved by the District and whose deposits are insured by the Federal Deposit Insurance Corporation. "Project Revenues" shall mean all gross payments or transfers arising from the operation of the Prison, including without limitation: (i) payments for the incarceration, detention, or housing of inmates (including, but not limited to, Claiborne Parish pre-trial inmates and sentenced misdemeanor inmates at $3.50 per day, out-of-parish pre-trial inmates at an appropriate rate, state and out-of-state inmates, and any federal inmates) in the Prison; and (ii) gross revenues generated within the Prison by the provisions of goods and services to the inmates or other persons.

The District shall have authority to expend or reserve such funds in the Account in accordance with the Budget and this Agreement and as necessary for the proper maintenance and operation of the Prison. The District shall transfer such funds from the Account to other accounts dedicated exclusively to the operations and maintenance of the Prison as is necessary for payment of operating expenses included in the Budget.

**II.      Payments.** To the extent Project Revenues are in excess of Prison expenses, the District shall, on a monthly basis, pay to LaSalle, as LaSalle's fee, all amounts in the Account or other accounts funded therefrom as set forth herein below.

Prior to making a monthly payment to LaSalle for LaSalle's fee, the following payments will be made promptly as same are payable:

(a)      Compensation and/or payroll to deputies and employees working in conjunction with the prison and all taxes and assessments payable with respect thereto to local, state and federal governments in connection therewith, the cost of all benefits provided to such deputies and employees, including, but not limited to, insurance, vacation, sick leave, holiday pay, overtime and retirement and the cost incurred with respect

CPDC K7

to all insurance, including, but not limited to, any liability insurance, worker's compensation insurance, or insurance required under Section 12 with respect to such.

(b)  All sums otherwise due and payable as expenses of the Prison authorized to be incurred under the terms of this agreement.

(c)  Effective July 1, 2010, the sponsor fee will be modified from $22,000 per month to $32,000 per month for the next twelve-month period. If the approved bed housing capacity is approved to be 700 beds that was the capacity during a two-year period of 2006 and 2007 prior to the health inspector reducing the capacity to 590, then the sponsor fee will remain at $32,000 per month for the second year of the contract term. If the occupancy averages at least 650 during the second year of the contract beginning July 1, 2011, and each year of the five-year contract period after year two, then the sponsor fee will remain at $32,000 per month. If the occupancy falls below a yearly average of 650 in any year, the sponsor fee will be lowered to $27,000 per month for the following year. When the annual occupancy returns to a minimum of 650 in subsequent years, the sponsor fee will be increased back to $32,000 per month for the next year. The following is an example of what capacity and rates could be and the resulting sponsor fee:

| Year | Capacity | Actual Occupancy | Monthly Sponsor Fee |
|---|---|---|---|
| 2010 | 590 | 570 | $32,000 |
| 2011 | 590 | 580 | $27,000* |
| 2012 | 700 | 660 | $32,000 |
| 2013 | 700 | 680 | $32,000 |
| 2014 | 700 | 640 | $32,000** |

\* Reduced to $27,000 because capacity was not 700
\*\* Maintained at $32,000 because the sponsor fee is adjusted the year following the occupancy being below 650 which would not take effect during this contract period.

(d)  Additional monthly payments to the Claiborne Parish Sheriff in the amounts of (i) $2/day for any out-of-state, federal, I.N.S., U.S. Marshal, etc., inmates subject to at least a $35.00 per diem; (ii) $1.00/day for other out-of-state, federal, I.N.S., U.S. Marshal, etc., inmates subject to less than a $35.00 per diem and above $30.00; and (iii) $0.25/day for any out-of-state, federal, I.N.S., U.S. Marshal, etc., inmates subject to below $30.00 per diem and above $25.00 per diem.

After the monthly payments set forth in (a) through (e) immediately above in this Section 10, the amount payable to LaSalle pursuant to this agreement will be paid.

7

CPDC K8

In the event that the balance of the Account is insufficient at any time to pay disbursements due and payable under this Section 10, LaSalle will inform the District of this fact, and LaSalle will then remit sufficient funds to the Account to cover the deficiency. LaSalle is required to use its own funds therefor, provided, however, that LaSalle shall otherwise receive all amounts as described in Section 11 of this agreement as its fee for its services after all amounts required to be paid and described in subparagraphs (a) through (e) immediately above of paragraph II of this Section 10 of this agreement are paid in full.

**Section 11. Payments to District and Fee for Services**. The Budget will include an annual amount of not less than $384,000 to be paid to the District unless reduced according to Section 10.II.(c) above.

LaSalle shall be paid a fee for its services rendered hereunder. The fee payable to LaSalle for services rendered is any and all revenues remaining after all billings and/or payments as set forth in Section 10.II of this agreement, including the monthly sponsor fee payment to the Claiborne Parish Sheriff, have been paid in full each month.

Notwithstanding anything herein to the contrary, all amounts due and payable by the District to LaSalle shall be an obligation payable solely from Project Revenues (as defined in this Agreement) and other amounts on deposit in the Account for the Prison. No other assets or monies of the District shall be used or pledged for the obligations of the District created by this Agreement.

**Section 12. Insurance**. The District will from time to time inform LaSalle of the type and amount of insurance to be carried, and LaSalle will cause such insurance to be placed and kept in effect at all times. LaSalle will pay all premiums and such premiums will be treated as operating expenses of the Prison. All insurance will be placed with such companies on such conditions, in such amounts and with such beneficial interests appearing thereon as shall be acceptable to the District and shall be otherwise in conformity with the mortgage, provided that the same will include public liability coverage with the District, the Sheriff of Claiborne Parish, LaSalle, and their employees designated as insureds. LaSalle will promptly investigate and promptly furnish the District with full reports as to all accidents, claims and potential claims for damages relating to the Prison and further agrees to cooperate with the District, the Sheriff, and all insurers in connection therewith. Any applicable deductibles or self-insured retentions, or similar type payments, will be paid from the Account, but only after the payments set forth in Section 10 (II) (a-e) have been made.

LaSalle further agrees to indemnify and hold the Sheriff and the District harmless for all sums due as a result of or arising out of claims not paid or covered by insurance, including defense costs, expenses, and attorney fees as a result of such claims or enforcement of this provision.

**Section 13. Records**. In addition to any requirements specified herein and/or specified in the Louisiana Basic Jail Guidelines and as provided by law, LaSalle will have the responsibility with respect to records as follows:

8

CPDC K9

(a)     LaSalle shall maintain a current, complete and accurate set of records, books and accounts in connection with the operation and management of the Prison. All records, books and accounts will comply with the Louisiana Basic Jail Guidelines and be subject to examination at reasonable hours by any authorized representative of the District or authorized representative of any lending institution that has the specific right to examine these records.

(b)     LaSalle will furnish such information (including occupancy reports) as may be requested by the District or as required by law.

(c)     LaSalle agrees to provide the District with a copy of all reports of all incidents within 24 hours of the occurrence, including immediate notification of any escape, attempted escape, death, or attempted suicide.

(d)     LaSalle agrees to keep appropriate records of medical treatment provided to inmates and provide to the District a copy of same as well as copies of reports of medical treatment provided to inmates elsewhere.

(e)     The original records necessary for the operation and management of the prison shall be and remain the property of the District. Upon termination of this agreement all such records will be provided to the District within 30 days.

**Section 14. Grievances**. LaSalle will advise the District of and consult with the District in conducting all grievance or complaint procedures and due process hearings to which prisoners, guards, or others may be entitled by law or pursuant to policies approved by the District.

**Section 15. Audit**. LaSalle covenants to cause to be performed on an annual basis, commencing the first Fiscal Year following the Service Commencement Date, an audit by an independent certified public accountant of operations and processes of the Prison. A copy of such audit shall be provided by LaSalle to the District within ninety (90) days after the close of the fiscal year.

**Section 16. Termination**. Prior to the end of the five-year terms, this Agreement may be terminated under the following circumstances:

(a)     In the event of the breach of a material term of this Agreement, by the non-breaching party if the breach is not cured within 45 days after the breaching party receives written notice of the breach from the other party;

(b)     By either party if the other party, within seven days following receipt of written notice, fails to resolve to the reasonable satisfaction of the

9

CPDC K10

notifying party the dissolution or insolvency of the other party, including, without limitation, (i) the filing by or against the other party of any petition or application under any bankruptcy law, or (ii) the taking of the interest of the other party in this Agreement by execution or other process of law against the other party;

(c)     By mutual written consent of the parties;

(d)     Notwithstanding Section 26 (Invalidity) of this agreement, at the option of the District, if any provision of this agreement is determined to be contrary to Louisiana law.

Upon termination of this Agreement, no change in inmate population is to occur during the final two months beyond normal Louisiana Department of Corrections initiated requests. LaSalle agrees that at the end of the contract period, the number of Louisiana Department of Corrections inmates at the Prison will be at least equal to the average number of Louisiana Department of Corrections inmates of other Louisiana facilities owned, controlled or operated by LaSalle or any of its members, or with which LaSalle or any of its members, subsidiaries or affiliates are associated.

Upon termination of this Agreement, LaSalle will submit to the District any records and financial reports requested by the District, and LaSalle will turn over to the District all cash, trust accounts, investments and records within thirty (30) days of the date that this agreement is terminated.

**Section 17. Effect of Termination**. The termination of this Agreement shall in no way affect or impair any right which has accrued to either party hereto prior to the date when such termination shall become effective. In order to facilitate an orderly transition, the parties agree that in the event of any such termination, the parties shall reasonably cooperate with each other to develop a mutually agreeable transition plan to assure minimal disruption in the Prison.

**Section 18. Maintenance**. LaSalle will maintain the Prison in good repair in accordance with local codes and in a condition at all times acceptable to the District, including, but not limited to, cleaning, painting, decorating, plumbing, carpentry, grounds care, and such other maintenance and repair work as may be necessary, subject to any limitation imposed by the District.

Incident thereto, the following provisions will apply:

(a)     Special attention will be given to preventative maintenance and to the greatest extent feasible, the services of regular maintenance personnel will be used.

(b)     LaSalle may contract with qualified independent contractors for the maintenance and repair of air conditioning systems

CPDC K11

and for any other extraordinary repairs beyond the capabilities of the regular maintenance employees.

(c)     LaSalle will systematically and promptly review and investigate all service requests and take such action as is necessary and will keep records of same. Emergency requests will be received and serviced on a twenty-four (24) hour basis. Complaints of a serious nature will be reported to the Sheriff.

(d)     LaSalle is authorized to purchase all materials, equipment, tools, appliances, supplies and services necessary for the proper maintenance and repair of the facility. Such purchases shall be paid out of the Prison Account and treated as Prison expenses.

(e)     Notwithstanding anything to the contrary herein, the prior approval of the District will be required for any expenditure which is capital in nature to be paid by the District.

**Section 19. Utilities and Services**. LaSalle will make arrangements for water, electricity, gas, sewage, trash disposal, pest and vermin control and extermination, decorating, laundry facilities, cable television, telephone service, and any other services specifically needed for proper operation of the prison. Any utility deposits currently existing will remain in place and will continue to be listed as an asset to the District.

**Section 20. Escapes**. In the event an inmate incarcerated in the Prison escapes from the Prison, the Claiborne Parish Sheriff will be immediately contacted and notified, and commissioned line officers will be responsible for the capture and return of the escaped inmate.

**Section 21. Medical Service for Parish Inmates**. LaSalle will provide nurse and doctor services for inmates in the Prison and for inmates held in the 65-bed jail located in the town of Homer, Louisiana. Reasonable charges will be made to the Parish for services provided to all pre-trial inmates in both facilities; however, in the event the Parish agrees to fund a portion of the doctor's salary or expenses, any doctor's expense incurred at either facility will be waived. No charges will be made for services provided to female Department of Corrections prisoners held. If the cost of medical treatment for any Department of Corrections inmate is deemed excessive by LaSalle, the District will agree to the transfer of said Department of Corrections inmate incurring excessive cost out of the facility.

**Section 22. Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of Louisiana without giving effect to the principles of conflict of laws.

**Section 23. Entire Agreement**. This Agreement constitutes the entire agreement of the parties hereto and supersedes all prior agreements and understandings, written or oral, between the parties relating to the subject matter hereof.

11

CPDC K12

**Section 24. Notices**. All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if: (i) delivered by hand, (ii) sent by overnight courier service, or (iii) sent by certified or registered mail, postage prepaid, return receipt requested, to the party to whom such notice is intended to be given at the addresses set forth herein. Any notice delivered in the manner provided above will be deemed given at the time of receipt. Until changed by notice in the manner provided above, the addresses of the parties are as follows:

<u>District</u>:   Claiborne Parish Law Enforcement District, Louisiana
Claiborne Parish Sheriff's Office
613 East Main Street
Homer, LA 71040
Attention: Parish Sheriff

<u>LaSalle</u>:   LaSalle Management Company, L.L.C.
105 Ray Street, Suite A
P. O. Box 809
Rayville, LA 71269
Attention: Managing Member

**Section 25. Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which, taken together, shall constitute one original.

**Section 26. Invalidity**. If any provision or application of this Agreement, including without limitation any grant of authority by the District to LaSalle, is held to be invalid, unlawful or unenforceable, such provision or application shall be revised or applied in a manner that renders it valid, lawful and enforceable to the fullest extent possible. In such event, the parties agree to use their best efforts to revise or apply such provision in accordance with the intent of this Agreement. The invalidity of any particular provision of this Agreement shall not affect any other provision hereof.

**Section 27. Assignment**. LaSalle shall not assign any of its rights or obligations hereunder without the prior written consent of the District.

**Section 28. Waiver**. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision. No such waiver shall be binding unless it is in writing and no waiver will be held to continue unless otherwise expressly stated by the party waiving the provision.

**Section 29. Further Assurances**. In order to more fully assure each party of the benefit of contracting hereunder, each party agrees to deliver to the other party such confirmations of fact, records, certificates, instruments of assignment and other documents and things as may be reasonably requested by the other party to carry out the purposes of this Agreement.

12

CPDC K13

**Section 30. Litigation**.

**I.      Prior Occurrences**. The District shall remain solely responsible for any losses or costs resulting from litigation pending on July 1, 2001 or for lawsuits arising thereafter relating to events or conditions which occurred or existed prior to July 1, 2001. LaSalle agrees to cooperate with the District in the defense of such suits, if any.

**II.      Post Conviction Actions**. LaSalle shall not be responsible for defense of any post conviction action, including appeals and writs of habeas corpus, filed by any inmate challenging the underlying judgment of the inmate's conviction or the sentence imposed.

**Section 31. Third Party Rights**. The provisions of this Agreement are for the sole benefit of the parties hereto and shall not be construed as conferring any rights to any other person.

**Section 32. Amendment**. This Agreement may be amended only by a written instrument executed on behalf of both LaSalle and the District.

**Section 33. Emergency Plan**. LaSalle shall maintain an emergency plan in the event of labor disputes, riots, fires, power failures, civil disasters, and inmate disputes. A copy of this plan is to be available to the District.

**Section 34. Miscellaneous**. In the event that the terms of this contract must be modified to comply as a qualified management agreement according to the Internal Revenue Service, both parties agree to perform those modifications. In the event this contract requires further approval, both parties agree to cooperate in seeking such approval.

CPDC K14

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement effective the date and year first above written.

WITNESSES:

LaSALLE MANAGEMENT COMPANY, L.L.C.

Printed Name: _Kevin L. Scantlett_

By: _____
Printed Name: _William R. McConnell_
Title: _Managing Member_

Printed Name: _Patrick H. Temple_

**SWORN TO AND SUBSCRIBED** before me, Notary Public in and for _Richland_ Parish, Louisiana, this _15th_ day of _July_, 20_10_.

_Glenda P. Watkins_
**NOTARY PUBLIC**
My commission expires: _at death_
Notary Identification Number: _057256_
Printed Name of Notary: _GLENDA P. WATKINS_

WITNESSES:

CLAIBORNE PARISH LAW ENFORCEMENT DISTRICT, LOUISIANA

Printed Name: _Gwen Willis_

By: _Ken Bailey_
Printed Name: _Ken Bailey_
Title: _Sheriff_

Printed Name: _Daniela Polk_

**SWORN TO AND SUBSCRIBED** before me, Notary Public in and for _Claiborne_ Parish, Louisiana, this _16_ day of _August_, 20_10_.

_Jo Bellew_
**NOTARY PUBLIC**
My commission expires: _at death_
Notary Identification Number: _60319_
Printed Name of Notary: _Jo Bellew_

14

CPDC K15

*Exhibit 6*

# SERVICES AGREEMENT

### BETWEEN

## MADISON PARISH LAW ENFORCEMENT DISTRICT, REPRESENTED BY SHERIFF LARRY COX

### AND

## LASALLE MANAGEMENT COMPANY, L.L.C.



This Agreement shall be effective as of **January 1st, 2014**

MCC K1

**SERVICES AGREEMENT**

THIS AGREEMENT, is entered into by and between the Madison Parish Law Enforcement District, Louisiana (the "District"), represented by Larry Cox, Sheriff of Madison Parish, who is duly authorized to act herein, and LaSalle Management Company, L.L.C. ("LaSalle"), a Louisiana limited liability company, represented by William K. McConnell, Managing Member, who is duly authorized to act herein. WHEREAS, LaSalle is in the business of providing services to prisons, including management of prison operations, facilities maintenance; locating state and federal prisoners for prisons; advising and consulting with respect to the operations of prisons in general; administration of commissary services; budgeting for the operations of prisons; cash and financial services for prisons; negotiating for the placement of state and federal prisoners in prisons; serving as a liaison between prisons and governmental entities concerning the foregoing; negotiating for, obtaining and maintaining goods and other services for prisons; and providing the other services set forth in this Agreement;

WHEREAS, the District regards LaSalle's services as beneficial to the successful operation of the Prison facilities more specifically identified in Section 1(b) below as the prisons at Madison Parish (collectively referred to herein as "the Prison(s)" or "the Prison Facilities") in a manner contemplated by the District, and the District desires to obtain the services of LaSalle; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the mutual covenants contained herein,

IT IS AGREED AS FOLLOWS:

**Section 1. Common Understandings.** LaSalle and the District both acknowledge the following as of the effective date of this Agreement:

(a) The District has the authority to make contracts and leases for the procurement of services, equipment and supplies, as well as for the management and operation of prison facilities under La. R.S. 13:5904. It is the intention of the District to utilize the services of LaSalle in connection with the operation of those aspects of the Prisons' operation identified in this Agreement to the fullest extent permitted by law, subject to any limitations set forth in this Agreement.

(b) It is recognized that the Prison Facilities described herein include four separate sub-facilities, each of which is individually owned, but taken together as a whole, make up the Prison Facilities as described hereunder. These separate sub-facilities are further identified as: *Southern Correctional Facility, L.L.P. (SCF), Madison Correctional Center, L.L.P. (MCC), Louisiana Transitional Center for Women (LTCW)*, and *Bayou View Land Co. L.L.C. (BVLC)*.

(c) LaSalle agrees to honor the terms of other management agreements engaged in by Sheriff Larry Cox on behalf of the Madison Parish Law Enforcement District with the respective owners of the referenced Prison Facilities prior to this Agreement.

(d) **Effective Date**: this Agreement shall be effective as of **January 1ˢᵗ , 2014**

MCC K2

**Section 2. Services.** LaSalle is committed to the continued operation of the Prison Facilities as safe, secure, and fully utilized correctional facilities capable of generating a sufficiently stable revenue stream capable of meeting the operational costs and other obligations of the District arising out of administration and operation of the Prison Facilities, and agrees to operate and maintain the Prison Facilities in a manner that complies with state laws and regulations and Constitutional dictates that apply to such facilities in order to provide the citizens of Madison Parish with all the benefits of safe, secure, and fully utilized correctional facilities. LaSalle, in the performance of its role as operator of the Prison Facilities, agrees to the perform the duties and satisfy the obligations set forth herein and shall provide or contract for, in compliance with all applicable law, the following services in connection with the Prison Facilities and their operations:

(a)     LaSalle will ensure that the Prison Facilities are operated and maintained for the secure custody, care and safekeeping of all prisoners at the facility in accordance with federal, state and local law, including the standards of the Louisiana Basic Jail Guidelines promulgated by the Louisiana Department of Corrections. LaSalle shall provide the following services as part of the operation of the Prison Facilities:

   i.   Adequate staffing shall be provided 24 hours a day to provide security and supervise inmates;

   ii.  Three (3) meals (including two hot meals) shall be provided per day for all inmates;

   iii. Provide access to reasonable medical care either through on-site medical staff or transportation to a hospital, treatment facility or emergency care facility;

   iv.  All inmates will have reasonable access to the courts and adequate legal materials;

(b)     LaSalle will manage the business affairs of the Prison Facilities, including budgeting, purchasing and procurement of materials and supplies, financial and other record keeping, audits, and regulatory compliance;

(c)     LaSalle will maintain and acquire instructional materials and supplies appropriate and sufficient to insure compliance with Basic Jail Guidelines ;

(d)     LaSalle will be responsible for all routine maintenance of the Prison Facilities and equipment, in accordance with prior agreements between the Sheriff and the owners of the respective Prison Facilities as described below;

(e)     LaSalle will manage all affairs of the Prison Facilities, including personnel and staffing, procurement of supplies; institutional safety and security; and the implementation of policies and procedures affecting prisoner welfare, institutional security, staff and inmate safety, and safe and secure visitor relations;

(f)     LaSalle will provide food service required by law that meets the dietary requirements of the inmate population and complies with constitutional mandates that accommodate

MCC K3

religious beliefs of the inmate population where appropriate;

(g)     LaSalle will provide all transportation services to accommodate the inmate population and facilitate maximum occupancy of the Prison Facilities.

**Section 3. Prisoners.** LaSalle will seek to maximize the occupancy of the Prison Facilities by entering into  contracts with various governmental agencies to house male and female prison inmates from the various governmental agencies at rates no less than the per diem rates established for the Housing of Louisiana Department of Corrections inmates in parish jails. Incident thereto, the following guidelines and provisions will apply:

(a)     LaSalle will honor all existing contracts made by the District, and will make preparations for the initial contracts as agreed to by the District and LaSalle;

(b)     LaSalle will market the Prison Facilities to governmental agencies responsible for housing or incarceration of persons convicted of crimes in various jurisdictions and will be available to provide information and tours of the Prison Facilities, if necessary; these entities are to include,  but not necessarily be limited to: the State of Louisiana, Madison Parish Police Jury, other Parishes , the United States Marshal's Service, and other out-of-state and/or federal entities;

(c)     Sentenced inmates may be made available, upon proper approval and on reasonable terms agreeable to the District, for parish road crews or other public works and/or work-release crews, provided that the parish pays for a commissioned, trained deputy or other POST-certified peace officer to provide security during such off-site assignments and the Sheriff approves of the guards and  the inmates who go on work crews outside of the Prison Facilities .

(d)     LaSalle shall maintain the monthly average occupancy for the Prison Facilities within one percent (1%) of the monthly average occupancy of all other LaSalle managed prison facilities in the state of Louisiana.

**Section 4. Term.** This Agreement shall run for a period of ten (10) years from the effective date of this Agreement unless otherwise terminated as provided herein.

**Section 5. Personnel.** LaSalle shall be solely responsible for staffing the Prison Facilities and all personnel will be employees of LaSalle, with the exception that the District may designate up to __ employees of the Sheriff who are to be assigned to the Prison Facilities to assist in the operation thereof and who shall at all times remain employees of the Sheriff. LaSalle will be solely responsible for paying, supervising, and discharging employees who work at the Prison. All new hires must undergo a NCIC (or equivalent) background check, have good moral character, have graduated high school or have obtained a GED, and must pass pre-employment drug testing. All personnel with responsibility for the transportation, custody and/or control of inmates or detainees shall either have completed, at a minimum, basic corrections training courses equivalent to POST corrections training courses or will complete at least basic corrections training courses within one year of the date of hiring. LaSalle and the District both

MCC K4

acknowledge each of the following as effective as of the date of the execution of this Agreement:

(a)   LaSalle will select a qualified Warden for the Prison.

(b)   The compensation of all employees working at the Prison will remain consistent with the current pay rates being paid by the Sheriff to corrections personnel.

(c)   LaSalle warrants that it will comply with all applicable labor laws and regulations, including, but not limited to, the Fair Labor Standards Act, the Americans with Disabilities Act, and the Family Medical Leave Act. The Sheriff has the right, at any time, to audit any records necessary to ensure compliance with the FLSA, ADA, FMLA, and other applicable laws and regulations.

(d)   In the performance of this section of the agreement, the parties will comply with the provisions of any federal, state or local law prohibiting discrimination in housing or employment on the grounds of race, color, sex, sexual orientation, disability, religion or national origin.

(e)   LaSalle shall indemnify and hold the District and the Sheriff harmless from any and all claims, causes of action, court costs, attorney fees, and losses related to and/or arising out of the operation of the Prison Facilities by LaSalle under the terms of this Agreement and the acts and omissions of the officers, employees, contractors and agents of LaSalle.

**Section 6. Financial Matters.**

**6.1  General:** All revenues generated by the operation of the Prison Facilities by LaSalle under this Agreement, including all third party payor per diem payments for the housing, incarceration, or detention of inmates at the Prison Facilities, commissary revenues, inmate telephone revenues, work release revenues, and other revenues related to or arising out of the operation of the Prison Facilities ("Prison Revenues") received by the District and/or Sheriff will be paid to LaSalle within seventy two (72) hours of receipt by the District and/or Sheriff.

**6.2 Expenses:** LaSalle shall first pay the costs and expenses associated with the operation of the Prison Facilities out of the Prison Revenues it receives from the District/Sheriff. These operational costs and expenses will be given priority and payments will be made promptly by LaSalle as they become due, including but not limited to the following:

(a)   <u>Payroll Cost:</u> LaSalle will pay the compensation and payroll to its employees working at the Prison Facilities and all associated taxes and assessments payable to local, state and federal governments, as well the cost of benefits provided to such employees of LaSalle, including, but not limited to, insurance, vacation, sick leave, holiday pay, overtime and retirement plans and benefits, subject to the following exceptions:

i.    Any payments or compensation for or related to the current

MCC K5

balance of any and all accrued vacation and sick-leave benefits accruing and remaining unused as of December 31st, 2013 of the Sheriff's prison staff assigned to the Prison Facilities shall be the responsibility of the District and/or Sheriff. After December 31, 2013, LaSalle will be responsible for the accrual of vacation and sick-leave for its employees beginning on the day LaSalle takes over operational control over the Prison Facilities and going forward.

ii.    Any payments or compensation for or related to Sheriff's personnel that as members of the Louisiana Sheriffs' Pension and Relief Fund (the "Fund") retire or are retired from employment with the Sheriff's Office at the Prison Facilities and the costs of any benefits for these retirees conferred under the Fund while those employees were employed by the Sheriff, will be paid according to the laws and regulations applicable to the particular retiree and the Fund. LaSalle will not be responsible for Retiree Benefits payable under the Fund for employees retired from the Sheriff's employment as members of the Fund, including the provision of health insurance benefits for retired personnel or any other benefit conferred to members of the Fund.

(b)    <u>Utility Service Cost</u>: LaSalle will ensure that monthly payments and deposits necessary for water, electricity, gas, sewage, trash disposal, pest and vermin control and extermination, decorating, laundry facilities, cable television, telephone service, and any other services specifically needed for proper and efficient operation of the prison are made in a timely manner to ensure continuous operation of the Prison Facilities;

i.    Any utility deposits currently existing will remain in place and continue to be considered and treated as assets of the District, unless and until reimbursement is made to the District.

(c)    <u>Routine Maintenance Cost</u>:  LaSalle will provide normal routine maintenance and keep the Prison in good repair in accordance with local codes and in a condition at all times acceptable to the District;

i.    *Major Repairs Exclusion:* In accordance with any provision made in prior agreements between the District and the respective owners of the Prison Facilities, the District and/or respective owner(s) of the facility involved will be responsible for any and all Major Repair(s) to the Prison facility. Major Repair(s) includes, but is not limited to the repair or replacement of: generators, air-conditioning units, boilers, roof damage, underground plumbing, structural components; foundation repair, as well as any fixture that would remain with the prison facility; and includes any other   major expenditures for capital projects.

(d)    <u>Liability Insurance</u>: LaSalle will purchase and provide for all insurance for potential losses pertaining to the operations of the Prison Facilities.  Policies of

MCC K6

insurance will be provide coverage and terms identical to the following policies and endorsements thereto: CNA Commercial Automobile Policy number MNA 271361121; Travelers Employment Practices Liability Policy Number 105802675; and Princeton Excess and Surplus Lines Insurance Company General Liability and Excess Automobile Policy Number N1-A3-RL-0000073-02. The Insurers shall have ratings equal to or greater than the insurers issuing the referenced policies. These policies of insurance will also name the District and the Sheriff as additional insureds. LaSalle shall also carry workers' compensation coverage in the form and amounts as required by Louisiana law. LaSalle shall be solely responsible for the payment of any awards or settlements of damages and/or attorney fee awards that are to be paid out of any deductible according to the policies or paid in excess of the coverage provided under the policies per claim and in the aggregate. LaSalle shall also indemnify and hold the District and Sheriff harmless for any payments of premiums, deductibles, and damages in excess of policy limits. The respective owner(s) of the Prison Facilities will be responsible for procuring and paying the cost of premiums and deductibles for any and all insurance policies insuring against any the property damage resulting to the Prison Facility and will provide for the appropriate amount of property coverage relative to owner(s) liability.

(e)  Consumable Goods: The cost of supplies and goods utilized in the management and operation of the Prison Facilities will be paid by LaSalle.

(f)  Inventory: LaSalle will conduct a physical inventory of all office, food and medical supplies located at the Prison Facilities prior to taking over operation and will reimburse the District for the actual cost paid by the District for the items upon proof of such costs as provided by the District.

(g)  Automobiles: LaSalle will provide for such automobiles and inmate transport vehicles as it deems necessary for the operation of the Prison Facilities under the terms of this Agreement. LaSalle will make a bid equal to the reasonable wholesale value that is acceptable to the District and in accordance with law to purchase the vehicles currently used for the operation of the facility, provided that the transaction can take place in a timely manner for LaSalle to begin operating the facility. If necessary, LaSalle may lease current vehicles used in the operation of the facility for a period of time to continue the safe and efficient operation of the facility, provided it is acceptable to the District and in accordance with law.

**6.3 Payments to District and Fee for Services:** All Prison Revenues collected by LaSalle pursuant to this agreement and in operation of the Prison Facility, shall be applied as follows:

(a) Sponsor Fee: LaSalle shall pay a monthly sponsor fee to the District of $26,500.00 (Twenty Six Thousand Five Hundred Dollars) on or before the fifteenth of each month following the month in which the Services were provided.

(b) Fee for Services: LaSalle shall be paid a monthly fee for its services rendered

MCC K7

hereunder. The fee payable to LaSalle for services rendered shall be paid out of the Prison Revenues it receives and shall be all revenues remaining after it has first fully paid the all other expenses, costs, and other payables as set forth in Section 6 above in this Agreement.

**Section 7. Records.** In addition to any requirements specified herein and/or specified in the Louisiana Basic Jail Guidelines and as provided by law, LaSalle will have the responsibility with respect to records as follows:

(a)   LaSalle shall maintain a current, complete and accurate set of records, books and accounts in connection with the operation and management of the Prison Facilities. All records, books and accounts will comply with the Louisiana Basic Jail Guidelines and be subject to examination at reasonable hours by any authorized auditor, agent or representative of the District, the Louisiana Legislative Auditor, the Louisiana Department of Corrections, and/or any authorized representative of any lending institution that has the specific right to examine these records.

(b)   LaSalle will furnish such information (including occupancy reports) as may be requested by the District or as required by law.

(c)   LaSalle agrees to provide the District with a copy of all reports of all incidents within 24 hours of the occurrence, including immediate notification of any escape, attempted escape, death, suicide, or attempted suicide. Such reports shall be made on forms or in a format acceptable to the District.

**Section 8. Termination.** Prior to the end of the ten year term, this Agreement may be terminated under the following circumstances:

(a)   In the event of the breach of a material term of this Agreement, by the non-breaching party if the breach is not cured within 45 days after the breaching party receives written notice of the breach from the other party;

(b)   LaSalle may terminate this agreement for any reason upon ninety (90) days written notice sent by certified mail to the other party.

**Section 9. Escapes.** In the event an inmate incarcerated in the Prison escapes from the Prison, the Madison Parish Sheriff will also be immediately contacted and notified by personal telephonic, e-mail, and/or facsimile communication, in a manner and method that is acceptable to and as may be provided for by the District and/or Sheriff to facilitate the rapid deployment of commissioned line officers to effect the capture and return of the escaped inmate to secure custody.

**Section 10. Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of Louisiana without giving effect to the principles of conflict of laws.

MCC K8

**Section 11. Entire Agreement.** This Agreement constitutes the entire agreement of the parties hereto and supersedes all prior agreements and understandings, written or oral, between the parties relating to the subject matter contained herein.

**Section 12. Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which, taken together, shall constitute one original.

**Section 13. Invalidity.** If any provision or application of this Agreement, including without limitation any grant of authority by the District to LaSalle, is held to be invalid, unlawful or unenforceable, such provision or application shall be revised or applied in a manner that renders it valid, lawful and enforceable to the fullest extent possible. In such event, the parties agree to use their best efforts to revise or apply such provision in accordance with the intent of this Agreement. The invalidity of any particular provision of this Agreement shall not affect any other provision hereof.

**Section 14. Assignment.** LaSalle shall not assign any of its rights or obligations hereunder without the prior written consent of the District.

**Section 15. Waiver.** No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision. No such waiver shall be binding unless it is in writing and no waiver will be held to be continuing unless otherwise expressly stated by the party waiving the provision.

**Section 16. Further Assurances.** In order to more fully assure each party of the benefit of contracting hereunder, each party agrees to deliver to the other party such confirmations of fact, records, certificates, instruments of assignment and other documents and things as may be reasonably requested by the other party to carry out the purposes of this Agreement.

**Section 17. Third Party Rights.** The provisions of this Agreement are for the sole benefit of the parties hereto and shall not be construed as conferring any rights to any other person, except whereas otherwise expressly provided in this agreement.

**Section 18. Amendment.** This Agreement may be amended only by a written instrument executed on behalf of both LaSalle and the District.

**Section 19. Notices.** Except for the notice required in Section 9 in the event of an escape, all notices, requests, demands and other communications hereunder shall be made in writing and shall be deemed to have been duly given if: (i) delivered by hand, (ii) sent by overnight courier service, or (iii) sent by certified or registered mail, postage prepaid, return receipt requested, to the party to whom such notice is intended to be given at the addresses set forth herein. Any notice delivered in the manner provided above will be deemed given at the

MCC K9

time of receipt. Until changed by notice in the manner provided above, the addresses of the parties are as follows:

District:    MADISON PARISH LAW ENFORCEMENT DISTRICT, LOUISIANA
             100 North Ceder Street
             Courthouse Building – Room 3
             Tallulah, LA 71282

LaSalle:     LASALLE MANAGEMENT COMPANY, L.L.C
             192 Bastille Lane, Suite 200
             Ruston, LA 71270
             Attention: Managing Member

**Section 20. Litigation:** LaSalle will only be responsible and/or liable for causes of action arising out of its operation of the Prison Facilities as provided in this Agreement from the date it commences such operations.   Concerning liabilities, both parties recognize and agree to the following:

**20.1 – Prior Occurrences.** The District shall remain solely responsible for any losses or costs resulting from litigation pending on or before January 1st, 2014 or for lawsuits arising thereafter that relate to events or conditions which occurred or existed prior to January 1st, 2014.  LaSalle agrees to cooperate with the District in the defense of such suits, if any.

**20.2 – Post Conviction Actions.** LaSalle shall not be responsible for defense of any post-conviction action, including appeals and writs of habeas corpus, filed by any inmate challenging the underlying judgment of the inmate's conviction or the sentence imposed.

**Section 21. Miscellaneous.** In the event that the terms of this contract must be modified to comply as a qualified management agreement according to the Internal Revenue Service, both parties agree to perform those modifications.  In the event this contract requires further approval by any governmental or regulatory entity, both parties agree to cooperate in good faith in seeking such approval.

MCC K10

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement effective the date and year first above written.

WITNESSES:                                    LASALLE MANAGEMENT COMPANY, L.L.C.

_Sharon Russell_                              By: _William K. McConnell_

Printed Name: _Sharon Russell_                Printed Name: _William K. McConnell_

_Ryan Horvath_                                Title: _Managing Member_

Printed Name: _Ryan Horvath_

SWORN TO AND SUBSCRIBED before me, Notary Public in and for _Madison_ Parish, Louisiana, this _18th_ day of _December_, 20_13_

_Lisa Byrd_

NOTARY PUBLIC

My commission expires: _at death_

Notary Identification Number: _____

Printed Name of Notary: Lisa Byrd, Notary Pub

033958

WITNESSES                                     MADISON PARISH LAW ENFORCEMENT
                                              DISTRICT, LOUISIANA

_Sharon Russell_                              By: _Larry Cox_

Printed Name: _Sharon Russell_                Printed Name: _LARRY COX_

_Ryan Horvath_                                Title: _SHERIFF_

Printed Name: _Ryan Horvath_

SWORN TO AND SUBSCRIBED before me, Notary Public in and for _Madison_ Parish, Louisiana, this _18_ day of _December_, 20_13_

_Lisa Byrd_

NOTARY PUBLIC

My commission expires: _at death_

Notary Identification Number: _____

Printed Name of Notary: Lisa Byrd, Notary Public

033958

MCC K11

Louisiana Department of Public Safety and Corrections, Corrections Services
Contract Number: _____

COOPERATIVE ENDEAVOR AGREEMENT
BETWEEN THE
LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
CORRECTIONS SERVICES (DEPARTMENT)
AND THE MADISON PARISH LAW ENFORCEMENT DISTRICT

AGREEMENT # 682798

| 1) MAILING ADDRESS: | 2) CITY, STATE, ZIP CODE: |
|---|---|
| 100 North Cedar Street | Tallulah, LA 71282 |
| 3) FEDERAL TAX I.D. NUMBER OR SOCIAL SECURITY NUMBER: | 4) LICENSE OR CERTIFICATE NUMBER: |
| 72-6000871 | |

**THIS AGREEMENT** made this   23rd   day of July, 2009, by and between the Madison Parish Law Enforcement District (hereinafter referred to as the Agency), represented by Sheriff Larry G. Cox and the **STATE OF LOUISIANA, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**, (hereinafter referred to as the "Department"), represented by James M. Le Blanc, Secretary.

**WHEREAS,** Article VII, Section 14(c) of the Constitution of the State of Louisiana states that "For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation or individual"; and

**WHEREAS,** the Department desires to enter into partnerships with units of local governments to provide for the housing of state Offenders.

Whereas, in consideration of the Department providing a facility for the District to house state Offenders as provided in this agreement and to pay the District the sums set forth in La.R.S.15:824(B)(1), or the current per diem appropriated for this purpose, which may be amended, subject to legislative appropriation, the district agrees to operate and maintain the facility in accordance with the "Basic Jail Guidelines" dated July 1, 2009 or as amended.

**NOW, THEREFORE,** the Department and Madison Parish Law Enforcement District hereby enter into a Cooperative Endeavor Agreement for the public purpose of allowing the District to utilize the SHRC facility to house state Offenders and provide a regional reentry facility for state Offenders housed in local facilities.

This agreement shall be subject to the following terms and conditions:

**5) DESCRIPTION OF SERVICES TO BE PROVIDED:**

The Madison Parish Law Enforcement District agrees to house approximately 537 state offenders at the Steve Hoyle Rehabilitation Center (SHRC) located at 1005 West Green Street, Tallulah, Louisiana 71282 in Madison Parish in accordance with the basic jail guidelines dated July 1, 2009.  The Department agrees to make its best effort to maintain the offender population at a level of at least 537.

**Possession of Facility**
On the Service Commencement Date of this Contract, the State shall grant to the Agency exclusive use, possession and control of the land and property comprising the Facility and its grounds, subject to the State and Department's rights to enter and inspect same.

1

MCC K12

Louisiana Department of Public Safety and Corrections, Corrections Services
Contract Number: _692793_

**Utilities**
Agency shall pay all utility charges and deposits incurred or imposed with respect to the Facility.

**Possessions of Moveable Property**
On the Service Commencement of the Contract, the State shall grant the Agency exclusive use and possession, subject to the terms of this Contract, of all movable property purchased by the Department. Agency shall have the exclusive use of the movable property listed in the State's Master Listing of Property during the term of the Contract.

**Additional Property**
Any additional property purchased by the Agency during the term of this Contract may be purchased by the State at the conclusion of the Contract at the Agency's cost, less depreciation using the straight-line method over a five-year period.

**Inventory**
If this Contract is terminated for any reason, the State and the Agency shall conduct a joint inventory prior to the termination to determine if property listed on Appendix A and replacement items purchased by the Agency are in place at the Facility. Agency shall be liable for unlocated property based on replacement cost of such property.

**Maintenance, Repair and Replacement**
The Department will be responsible for routine and preventive maintenance performed by departmental staff and offender labor and will maintain a preventive maintenance program. The Agency will be responsible for providing all maintenance parts, supplies, and services that must be acquired through an outside vendor. This includes but is not limited to the servicing of grease traps, sewer lift stations and the provision of pest control. Subject to the limitations contained herein, the Agency shall make necessary repairs and replacement of all equipment upon obsolescence or damage to property listed in Appendix A, Agency shall replace such property with the same or similar property of equal or lesser value based on replacement cost of that property, unless approval not to has been granted by the Department. Obsolete or damaged property shall be disposed of through the Louisiana Property Assistance agency in accordance with La.R.S.39:321 et al. All tagged moveable property shall be accounted for using the State's movable property system.

**Construction and Renovation**
No construction or renovation to the Facility shall be undertaken by the Agency without the express written approval of the Department. Funding needed for any major repair projects will be requested by the Department in either the operating or Capital Outlay appropriations, as appropriate.

**Telecommunications**
Agency will maintain all telecommunications equipment. The Agency may utilize its own contract to provide for inmate telephone services at the facility.

**Insurance**
The Agency shall continually maintain and pay for such insurance as will protect the Agency and the state as a named insured,
    a. all claims, including death and claims based on violations of civil rights, arising from the services performed under the Contract;
    b. all claims arising from the service performed under the Contract by Agency; and
    c. actions by a third party against Agency as a result of the Contract.

**Types of Insurance**
The Agency will maintain insurance as follows:
    a. Worker's Compensation and Unemployment Compensation Insurance protecting the Agency from claims for damages for physical or personal injury

Louisiana Department of Public Safety and Corrections, Corrections Services
Contract Number: 682748

which may arise from operations performed pursuant to this contract, whether such operations are performed by the Agency, by a sub-Agency, or by a person directly or indirectly employed by either of them;

b. General Liability Insurance, which shall specifically include civil rights and medical matters, in an amount not less than one million dollars ($1,000,000) for each occurrence with an aggregate of at least three million dollars ($3,000,000) per year. Such insurance shall also provide coverage, including the cost of defense, for all stat officers and employees, whether in their official or individual capacities, against claims and actions as set forth in Section 7.2; and,

c. Automobile and other vehicle liability Insurance in an amount not less than one million dollars ($1,000,000) per occurrence.

All insurance policies required under this Contract must provide no less than thirty (30) days advance notice to the State of any contemplated cancellation.

**Fire and Property Insurance**
The State shall maintain fire and property insurance on the State's buildings and equipment located at the Facility site.

| 6) | EFFECTIVE DATE: | 7) | ENDING DATE |
|---|---|---|---|
| | July 27, 2009 | | July 26, 2019 |

**CONTRACTS MORE THAN $20,000:** This contract is not effective until approved by the Director of the Office of Contractual Review in accordance with La. R.S. 39:1502. It is the responsibility of the Agency to advise the agency in advance if contract funds or contract terms may be insufficient to complete contract objectives.

| 8) | MAXIMUM CONTRACT AMOUNT: $47,831,814.36 | 9) | PAYMENT MADE ONLY UPON APPROVAL OF: Chief of Operations |
|---|---|---|---|

Travel and other reimbursable expenses shall constitute part of the total maximum payable under the contract.

**10) TERMS OF PAYMENT:**

The Department agrees to pay to the District the sums set forth in La.R.S.15:824(B)(1), ($24.39, the current per diem appropriated for this purpose), which may be amended, subject to legislative appropriation.

In the event that the monthly per diem payments for housing are less than $175,000 for July, 2009, and $325,000 for August, 2009, the Department will supplement the housing payments by advancing payments to allow for a minimum payment of $175,000 for July, 2009, and $325,000 for August, 2009. Any such advances will be recouped on a monthly basis during the last four months of the fiscal year by crediting one fourth of the amount advanced against payments for these months. In no event shall the total payments for housing for the fiscal year exceed the actual number of offender days times the per diem rate.

**11) SPECIAL PROVISIONS:**

The Agency understands and agrees that the following special conditions of the contract exist for the benefit of the institution, the employees and the Offenders and agrees to abide by said special conditions contained herein and in Section 2 "Employee Rules" of the *Corrections Services Employee Manual* which is attached. "Agency" shall be substituted for "Employee" throughout. Should the manual be modified or amended, Agency will be notified and shall comply with the rules as modified or amended.

3

Louisiana Department of Public Safety and Corrections, Corrections Services
Contract Number: 682788

Agency understands and agrees that violation of any of the following special conditions shall be cause for immediate cancellation of this contract without prior notice:

Warden's Policy

1.  While on the institutional grounds, the Agency will strictly adhere to all federal, state and local laws and institutional directives.

2.  Any person may be barred from the institution or removed from the institution if it is in the best interest of the Department.

3.  If requested to do so by the Warden, the Agency must leave the institution grounds immediately.

In accordance with Department Regulation No. C-01-022 "Sexual Assault and Sexual Misconduct", the Agency agrees to report allegations of sexual misconduct, respond to investigation inquiries and participate in training as directed by the Department of Public Safety and Corrections.    Included in this regulation are the **SEXUAL ASSAULT AND SEXUAL MISCONDUCT WITH OFFENDERS Acknowledgement Form** and the **Louisiana Criminal Code:  La. R.S. 14:134 Malfeasance In Office Form**, both to be signed by the Agency and made a part of this contract.  Should the regulation be modified or amended, the Agency will be notified and shall comply with the regulation as modified or amended.

**12) ADDITIONAL PROVISIONS:**

Any alterations, variations, modifications, waivers of provisions or amendments to this agreement shall be valid only when they have been reduced to writing, duly signed by both parties and when required, approved by the Division of Administration and attached to the original of this agreement.  Reimbursement for services not provided for in this agreement shall be disallowed.

The Agency agrees to abide by the requirements of the following as applicable: Americans with Disabilities Act of 1990, Title VI and VII of the Civil Rights Act of 1964 as amended by Equal Opportunity Act of 1972, La. R.S. 15:574.12, Confidentiality, Vietnam Era Veteran's Readjustment Assistance Act of 1974, Title IX of the Education Amendments of 1972, the Age Act of 1975, Federal Executive Order 11246 and the Federal Rehabilitation Act of 1973, as amended.  Agency agrees not to discriminate in its employment practices, and will render services under this agreement without regard to race, color, religion, sex, sexual orientation, national origin, veteran status, political affiliation, or disabilities.  Any act of discrimination committed by Agency, or failure to comply with these statutory obligations when applicable shall be grounds for termination of this agreement.

Agency shall not assign any interest in this agreement, and shall not transfer any interest in the same (whether by assignment or novation), without the prior written consent of the Department except that claims for money due or to become due to Agency from the Department under this agreement may be assigned to a bank, trust company, or other financial institution without such approval.  Notice of any such assignment or transfer shall be furnished promptly to the Department's Procurement and Contractual Review Division and the Office of Contractual Review.

Procurement of any equipment, supplies or professional services shall be in compliance with local government regulations.

Unless indicated to the contrary, equipment shall mean any item with a useful life of at least one (1) year and an acquisition cost of at least one thousand dollars ($1000) or more and purchased with state funds.  Upon destruction, theft or obsolescence during

MCC K15

Louisiana Department of Public Safety and Corrections, Corrections Services
Contract Number: _682-788_

the term of the contract, the Agency shall replace said equipment with new equipment of a quality equal to the original equipment.

Equipment acquired by Agency pursuant to this agreement shall be used only for the performance and furtherance of this contract.

Equipment purchased with contract funds may not be conveyed, sold, salvaged or transferred without the express written consent of the Department.  Depreciation is not allowed on equipment acquired with contract funds.

All equipment, including replacements, regardless of cost or useful life shall be considered to be the property of the Agency for the duration of the contract and shall be claimed by the Department upon termination of the contract or whenever such equipment is not being used in conformity with the provisions of this contract.  Agency shall maintain or cause to be maintained in good working order all equipment purchased during the period of its useful life.

Agency grants to the State of Louisiana, through the Office of the Legislative Auditor, Office of the Governor, Division of Administration, Department of Public Safety and Corrections/Corrections Services Internal Audit Division, Office of the Inspector General, Federal Government and/or other such designated body the right to inspect, review, and audit all books and records, including those of sub-Agencies, (in whatever form they may be kept, whether written, electronic or other) relating or pertaining to the services rendered under this agreement, (including any and all documents, data, and other materials, in whatever form they may be kept, which support or underlie those books and records).  This right extends to all books, records, and data kept by or under the control of the Agency, including but not limited to those kept by the Agency, its employees, agents, assigns, successors, and sub-Agencies.  The Agency further grants full, unrestricted access to all necessary personnel and resources, and will cooperate fully during such inspections, reviews, and audits.

The Agency agrees such inspections, reviews, and audits may be conducted during normal business hours at the business location(s) where such books, records, and data are maintained and/or stored.  Those performing such inspections, reviews, and audits are granted direct access to all data pertaining and supporting services under this agreement, and have a right to use general audit software and other reporting tools against the data files and/or databases.  The Agency further grants the right to audit the Agency's disaster recovery, and business continuance plans to ensure all books, records, and data will be sufficiently protected in the event of a prolonged outage or disaster.

Agency is expected to comply with federal and/or state laws regarding an audit of its operation as a whole or of specific program activities.  If an audit is performed within the agreement period, for any reason, a copy of the audit engagement letter and final audit report shall be sent to the Office of the Louisiana Legislative Auditor, Office of Inspector General, Department of Public Safety & Corrections/Corrections Services Internal Audit Division, and Department of Corrections Procurement and Contractual Review Division.

Agency agrees and realizes that this agreement is subject to and conditioned upon the availability and appropriation of Federal and/or State funds and that no liability or obligation for payment will develop between the parties until this agreement has been approved by the Director of the Office of Contractual Review, Division of Administration in accordance with La. R.S. 39:1502.

The continuation of this agreement is contingent upon the appropriation of funds by the Legislature to the Department to fulfill the requirements of the agreement.  If the Legislature fails to appropriate sufficient monies to provide the continuation of this agreement, the agreement shall terminate on the date of the beginning of the first fiscal year for which funds are not appropriated.  If a lawful gubernatorial order is issued in or for any given fiscal year during the term of this agreement which reduces the funds appropriated in such amounts sufficient to preclude making the payments set out

5

Louisiana Department of Public Safety and Corrections, Corrections Services
Contract Number: _692798_

herein, the agreement shall terminate on the date said funds are no longer available. The occurrence of either of these incidents, or any like incident having the same effect, shall not cause any liability to incur unto the Department.

Agency agrees to retain all books, records, and other document relevant to this agreement and the funds expended hereunder for at least three (3) years after final payment.

Agency agrees that the responsibility for payment of taxes from the funds thus received under this agreement shall be the agency's obligation and identified under their Federal Tax Identification or Social Security Number listed on page 1.

Agency shall not enter into any subcontract for work or services contemplated under this agreement without obtaining prior written approval of the Department.   Any subcontracts approved by the Department shall be subject to the conditions and provisions that the Department may deem necessary.   Such prior written approval, unless otherwise provided in this agreement, shall not be required for the purchase by Agency of supplies and services which are incidental but necessary for the performance of the work required under this agreement.   No provisions of this clause and no such approval by the Department of any subcontract shall be deemed in any event or manner to provide for the incidence of any obligation of the Department beyond those specifically set forth herein.   No subcontract shall relieve the Agency of responsibility for the performance under this agreement.

The Agency or the Department shall be excused from performance under the agreement for any period that Agency or the Department is prevented from performing any services in whole or in part as a result of an act of God, strike, war, civil disturbance, epidemic or court order provided the Agency or Department had prudently and promptly acted to take any and all corrective steps that are within the Agency's or Department's control to ensure that the Agency or Department can promptly perform.

No funds provided herein shall be used to urge any elector to vote for or against any candidate or proposition on an election ballot nor shall such funds be used to lobby for or against any proposition or matter having the effect of law being considered by the Legislature or any local governing authority or of any political subdivision.   This provision shall not prevent the normal dissemination of factual information relative to a proposition on any election ballot or a proposition or matter having the effect of law under consideration by the Legislature or governing authority or of any political subdivision.   Contracts with individuals, such as physicians, shall be exempt from this clause.

Agency agrees to protect, defend, indemnify, save and hold harmless the State of Louisiana, all State Departments, Agencies, Boards and Commissions, its officers, agents, servants and employees, including volunteers, from and against any and all claims, demands, expense and liability arising out of injury or death to any person or the damage, loss or destruction of any property which may occur or in any way grow out of any act or omission of the Agency, its agents, servants, and employees and any and all costs, expense and/or attorney fees incurred by the Agency as a result of any claim, demands, and/or causes of action except for those claims, demands and/or causes of action arising out of the negligence of the Department, its agents, representatives, and/or employees.   Agency agrees to investigate, handle, respond to, provide defense for and defend any such claims, demands, or suit at its sole expense and agrees to bear all other costs and expenses related thereto, even if it (claim, etc.) is groundless, false, or fraudulent.

The Department may terminate this agreement for cause based upon the failure of the Agency to comply with the terms and/or conditions of the agreement; provided that the Department shall give the Agency written notice specifying the Agency's failure.   If within thirty (30) days, after receipt of such notice, the Agency shall not have either corrected such failure or, in case of failure which cannot be corrected in thirty (30) days, begun in good faith to correct said failure and thereafter proceeded diligently to

6

Louisiana Department of Public Safety and Corrections, Corrections Services
Contract Number: _692788_

complete such correction, then the Department may, at its option, place the Agency in default and the agreement shall terminate on the date of the termination specified in such notice.  The Department may exercise any rights available to it under Louisiana law to terminate for cause upon the failure of the Department to comply with the terms and conditions of this agreement; provided that the Agency shall give the Department written notice specifying the Department's failure and a reasonable opportunity for the Department to cure the defect.

Either party may cancel this agreement at any time, with or without cause, by giving the other party thirty (30) days written notice forwarded to their respective addresses as provided herein or at any subsequent address provided in writing.  The Agency shall be entitled to payment for deliverables in progress, to the extent work has been performed satisfactorily.  The Department has the right to cancel this agreement upon less than thirty (30) days due to budgetary reductions or changes in fund priorities of the State as stated hereinabove.

Upon completion or termination of this agreement all records, reports, documents, worksheets or any other materials delivered or transmitted to Agency by Department and related to this agreement shall remain the property of the Department and shall be returned to Department at the Agency's expense and all records, reports, documents, or other material related to this agreement and/or obtained or prepared by Agency in connection with the performance of the services contracted for herein shall become the property of the Department and shall, upon request, be returned at Agency's expense to the Department.   The Department shall retain ownership of all work product and documentation in whatever form.

This agreement contains or has attached hereto all the terms and conditions agreed upon by the contracting parties.  In witness whereof, this agreement is signed and entered into on the date indicated below.


James M. Le Blanc, Secretary       Date              Witness
Department of Public Safety
and Corrections                              1-24-09


Larry Cox, Sheriff                   7/24/09  Date    Witness
Madison Parish Law
Enforcement District


**A P P R O V E D**
Office of the Governor
Office of Contractual Review

AUG 2 6 2009

DIRECTOR

MCC K18

## Madison Parish Cooperative Endeavor

The goals and objectives of the Madison Parish Cooperative Endeavor is to provide a facility to the Madison Parish Law Enforcement District for housing state offenders that will enable  the District to house state female offenders in one location rather than being dispersed in multiple local facilities throughout the state. This will enable more coordinated and consistent  programming for female offenders being housed at the local level and will provide the district with a facility to provide reentry services for state female offenders at the local level (under separate cooperative endeavor) with the goal of reducing recidivism.

The performance measures will be the average number of offenders being housed at the facility; continued compliance with the Basic Jail Guidelines in the operation of the facility; and the recidivism rate for offenders housed in local facilities.

| | | | | | |
|---|---|---|---|---|---|
| 85700-004581 | SHRC PURCHASING C   UTER | 01H5221 | | 0.00 | 1,237.00 |
| 85700-004788 | SHRC BUSINESS OFFICE FAX MACHINE | GAG1FN02258 | 001L | 0.00 | 1,059.00 |
| 85700-004548 | SHRC LAPTOP COMPUTER | 1NWMM01 | 001O | 0.00 | 2,055.00 |
| 85700-004559 | SHRC HUMAN RESOURCES COMPUTER | 62HSX21 | 001O | 0.00 | 1,135.00 |
| 85700-004799 | SHRC SCANNER | CFH0001841 | 001O | 0.00 | 1,129.00 |
| 85700-004550 | SHRC COMPUTER | 2BX7B21 | 001P | 0.00 | 1,442.00 |
| 85700-004670 | SHRC ARCHIVE STORAGE TRAILER-West | SHNS99-404651 | 002 | 0.00 | 1,900.00 |
| 85700-004212 | DWCC 002 SERVER | 7PP4301 | 002A | 9,198.00 | 9,198.00 |
| 85700-004536 | SHRC INMATE BANKING COMPUTER | BH2Z321 | 002A | 0.00 | 1,237.00 |
| 85700-004540 | SHRC SERVER | 154258001 | 002A | 0.00 | 8,407.00 |
| 85700-004541 | SHRC SERVER - DOMAIN CONTROLLER | 3DLGX21 | 002A | 0.00 | 1.00 |
| 85700-004557 | SHRC PAYROLL COMPUTER | 84X5Z11 | 002A | 0.00 | 1,072.00 |
| 85700-004580 | SHRC VISITATION COMPUTER | JBXB21 | 002A | 0.00 | 1,442.00 |
| 85700-004604 | SHRC COMPUTER | H5M2H11 | 002A | 0.00 | 1,257.00 |
| 85700-004620 | SHRC INTAKE COMPUTER | 4GW0N01 | 002A | 0.00 | 1,113.00 |
| 85700-004645 | SHRC COMPUTER | 15Z0N01 | 002A | 0.00 | 1,113.00 |
| 85700-004646 | SHRC COMPUTER | 8MW0N01 | 002A | 0.00 | 1,113.00 |
| 85700-004659 | SHRC NURSE'S STATION COMPUTER | BFW0N01 | 002A | 0.00 | 1,113.00 |
| 85700-004749 | SHRC COMPUTER | 2F57511 | 002A | 0.00 | 1,150.00 |
| 85700-004772 | SHRC COMPUTER | D5MQK11 | 002A | 0.00 | 1,597.00 |
| 85700-004779 | SHRC COMPUTER | 7D57511 | 002A | 0.00 | 1,150.00 |
| 85700-004783 | SHRC COMPUTER | BD57511 | 002A | 0.00 | 1,150.00 |
| 85700-004784 | SHRC COMPUTER | C6MQK11 | 002A | 0.00 | 1,597.00 |
| 85700-004787 | SHRC COMPUTER | 3D57511 | 002A | 0.00 | 1,150.00 |
| 85700-004882 | SHRC SERVER | EA2YKZRZ36 | 002A | 4,632.00 | 4,632.00 |
| 85700-004738 | SHRC LASER PRINTER | SJPAKC01418 | 002B | 0.00 | 3,029.00 |
| 85700-004556 | SHRC PAYROLL COMPUTER | 52HSX21 | 002C | 0.00 | 1,135.00 |
| 85700-004669 | SHRC GAS TANK | 852857 | 003 | 0.00 | 12,127.00 |
| 85700-004702 | SHRC MOTOROLA PORTABLE RADIO | 722CEN0536 | 003 | 1,254.40 | 1,254.40 |
| 85700-004703 | SHRC MOTOROLA PORTABLE RADIO | 722CEN0538 | 003 | 1,254.40 | 1,254.40 |
| 85700-004704 | SHRC MOTOROLA PORTABLE RADIO | 722CEN0537 | 003 | 1,254.40 | 1,254.40 |
| 85700-004850 | GLOCK PISTOL - SHRC | GFY874 | 003 | 408.00 | 408.00 |
| 85700-004855 | GLOCK PISTOL - SHRC | GFY864 | 003 | 408.00 | 408.00 |
| 85700-004857 | GLOCK PISTOL - SHRC | GFY791 | 003 | 409.00 | 409.00 |
| 85700-005043 | Plastic Game Shot Electric Airsoft Pistol | N/A | 003 | 29.97 | 29.97 |
| 85700-004918 | COMPUTER LAPTOP | NC85V02A00072 | 003A | 0.00 | 1,990.00 |
| 85700-004537 | SHRC COMPUTER | 34X5Z11 | 003B | 0.00 | 1,072.00 |
| 85700-004771 | SHRC LASER PRINTER | JPBKC12095 | 003B | 0.00 | 2,226.00 |
| 85700-005357 | Motorola Base Unit Radio | 514CHZ0790 | 003B | 2,276.00 | 2,276.00 |
| 85700-005359 | MOTOROLA BASE STATION FOR SHRC | 514CHZ0802 | 003B | 2,276.00 | 2,276.00 |
| 85700-004601 | SHRC COMPUTER | D7H7611 | 005B | 0.00 | 1,079.00 |
| 85700-004542 | SHRC COMPUTER | 54X5Z11 | 005M | 0.00 | 1,072.00 |
| 85700-004764 | SHRC COMPUTER | 67MQK11 | 005O | 0.00 | 1,597.00 |
| 85700-004558 | SHRC ID COMPUTER | 74X5Z11 | 005P | 0.00 | 1,072.00 |
| 85700-005017 | AFIS Scanning Machine | 224338 | 005P | 41,500.00 | 41,500.00 |
| 85700-005488 | AFIS LIVESCAN 4000 WITH CPU | MXL5410QK0 | 005P | 33,504.00 | 33,504.00 |
| 85700-005489 | AFIS TENPRINT CARD PRINTER | 792T96B | 005P | 1,935.00 | 1,935.00 |
| 85700-004873 | SHRC FOOD CART | 381695 - 072004 | 006A | 4,489.00 | 4,489.00 |
| 85700-005057 | Natural Gas Griddle | 0701100159466 | 006A | 2,712.00 | 2,712.00 |
| 85700-004667 | SHRC WAREHOUSE STORAGE TRAILER | NSAU4024820 | 007C | 0.00 | 1,900.00 |
| 85700-004675 | SHRC WALK-IN STORAGE COOLER | GFRU5309890 | 007C | 0.00 | 7,000.00 |
| 85700-004676 | SHRC WALK-IN STORAGE COOLER | GFRU5309246 | 007C | 0.00 | 7,000.00 |
| 85700-004677 | SHRC WAREHOUSE STORAGE UNIT | 5070149 | 007C | 0.00 | 3,500.00 |
| 85700-004678 | SHRC WAREHOUSE STORAGE UNIT | 5075222 | 007C | 0.00 | 3,500.00 |
| 85700-005360 | COLD STORAGE UNIT | 488019-6 | 007C | 0.00 | 7,700.00 |
| 85700-004747 | COMPUTER | G9L2F21 | 008A | 0.00 | 1,136.00 |
| 85700-005387 | 5 TON ROOFTOP AIR CONDITIONER AND | N0E8852929 | 008A | 2,298.00 | 2,298.00 |
| 85700-005388 | 5 TON ROOFTOP AIR CONDITIONER AND | N0E8852930 | 008A | 2,298.00 | 2,298.00 |
| 85700-005389 | 5 TON ROOFTOP AIR CONDITIONER AND | N0E8852931 | 008A | 2,298.00 | 2,298.00 |
| 85700-004790 | SHRC PIPE THREADER | EBE01935A03 | 008B | 0.00 | 4,203.00 |
| 85700-004930 | Telescoping Hydraulic Maintenance Lift | 1092 | 008F | 7,125.00 | 7,125.00 |

MOC5020

| Asset ID | Description | Serial | Loc | Value 1 | Value 2 |
|---|---|---|---|---|---|
| 85700-004947 | 4 Post Vehicle Lift | | | 1,999.99 | 1,999.99 |
| 85700-004948 | Wheel Balancer | | 008F | 1,899.00 | 1,899.00 |
| 85700-004949 | Tire Changer | | 008F | 2,271.00 | 2,271.00 |
| 85700-004177 | 1995 GENESIS BUS - UNIT#209 | 4DRGSAAN2SA066676 | 008G | 25.00 | 64,257.00 |
| 85700-004502 | 2002 INTERNATIONAL 4700 - UNIT#36 | 1HTSLABM42H513524 | 008G | 0.00 | 36,966.00 |
| 85700-004505 | 2000 FORD F150 - UNIT#16 SHRC | 1FTZX1724YNB19569 | 008G | 0.00 | 15,823.00 |
| 85700-004509 | SHRC KAWASKI MULE - UNIT#20 | JK1AFBC14YB51914S | 008G | 0.00 | 4,825.00 |
| 85700-004510 | SHRC KAWASAKI MULE - UNIT#19 | JK1AFBC18X8510785 | 008G | 0.00 | 4,475.00 |
| 85700-004523 | 2001 DODGE RAM B3500 - UNIT#35 | 2B5WB35Y51K526119 | 008G | 0.00 | 19,918.00 |
| 85700-004531 | 2000 JEEP CHEROKEE - UNIT#17 | 1J4FF28S2YL225552 | 008G | 0.00 | 18,874.00 |
| 85700-004683 | 2001 FORD EXPEDITION - UNIT#33 | 1FMRU15L11LA97290 | 008G | 0.00 | 23,701.00 |
| 85700-004687 | 2001 DODGE CARAVAN - UNIT#23 | 2B4GP44301R252941 | 008G | 0.00 | 19,995.00 |
| 85700-004907 | 2005 DODGE DURANGO - UNIT 253 - RAC | 1D4HD38N15F560514 | 008G | 17,359.00 | 17,359.00 |
| 85700-004936 | 2002 FORD F150 4X4 - UNIT #SV46 | 1FTRX18W32NB43791 | 008G | 13,900.00 | 13,900.00 |
| 85700-005175 | 2007 TRUCK, 3/4 TON-UNIT #275 - CHASE | 1D7KS28D27J601636 | 008G | 23,770.00 | 23,770.00 |
| 85700-004554 | SHRC NCIC COMPUTER | J3X5Z11 | 009C | 0.00 | 1,072.00 |
| 85700-004684 | SHRC MOTOROLA PORTABLE RADIO | 466ABU0323 | 009D | 0.00 | 1,152.00 |
| 85700-005270 | Ballistic Vest - WILKINS | #01348821 / #0134882; | 009D | 1.00 | 1.00 |
| 85700-005283 | Ballistic Vest - ARNOLD | #01482057 / #0148205( | 009D | 1.00 | 1.00 |
| 85700-005384 | PORTABLE RADIO - MOTOROLA XTS2500 | 205CJK4293 | 009D | 2,395.00 | 2,395.00 |
| 85700-005385 | PORTABLE RADIO - MOTOROLA XTS2500 | 205CJK4291 | 009D | 2,095.00 | 2,095.00 |
| 85700-004606 | SHRC COMPUTER | 96M2H11 | 009F | 0.00 | 1,257.00 |
| 85700-004671 | SHRC STORAGE UNIT II | GSTU8479071 | 010 | 0.00 | 2,875.00 |
| 85700-004672 | SHRC STORAGE UNIT II | 4165350 | 010 | 0.00 | 2,875.00 |
| 85700-004673 | SHRC VIDEO CONFERENCE | 04EA5F | 010A | 5,489.00 | 5,489.00 |
| 85700-004691 | SHRC - VIDEO CONFERENCE | 4023400 | 010A | 1,044.00 | 1,044.00 |
| 85700-004752 | SHRC COMPUTER | 26MQK11 | 010C | 0.00 | 1,597.00 |
| 85700-004590 | SHRC COMPUTER | 28H7611 | 010D | 0.00 | 1,079.00 |
| 85700-004895 | SHRC MEDICAL - SPOT VITAL SIGNS MOI | 200417164 | 011B | 1,594.00 | 1,594.00 |
| 85700-004648 | SHRC DENTAL SUCTION APPARATUS | 202182 | 011C | 0.00 | 1,877.00 |
| 85700-004612 | SHRC COMPUTER | FP2PX01 | 011J | 0.00 | 1,257.00 |
| 85700-004737 | SHRC LASER PRINTER | JPAKG06525 | 013E | 0.00 | 3,029.00 |
| 85700-004778 | SHRC COMPUTER (SCANTRON) | 85MQK11 | 013E | 0.00 | 1,597.00 |
| 85700-004808 | SHRC INMATE LAB LASER PRINTER | USQF087836 | 013E | 0.00 | 1,073.00 |
| 85700-005026 | Scranton Optical Mark Reader | ED-06568 | 013E | 4,667.00 | 4,667.00 |
| 85700-004582 | SHRC COMPUTER | B3X5Z11 | 013F | 0.00 | 1,072.00 |
| 85700-004583 | SHRC COMPUTER - MORRIS | BG2Z321 | 013G | 0.00 | 1,237.00 |
| 85700-004610 | SHRC CLASSIFICATION COMPUTER | 36M2H11 | 013H | 0.00 | 1,257.00 |
| 85700-004623 | SHRC AFTERCARE COMPUTER | FH43J11 | 013K | 0.00 | 1,281.00 |
| 85700-004883 | SHRC AFTERCARE LAPTOP COMPUTER | 3J0CFK68YK9W | 013K | 4,403.00 | 4,403.00 |
| 85700-004607 | SHRC COMPUTER | 76M2H11 | 013L | 0.00 | 1,257.00 |
| 85700-004805 | SHRC AFTERCARE COMPUTER | HH43J11 | 013N | 0.00 | 1,281.00 |
| 85700-004806 | SHRC EDUCATION COMPUTER | CN198682 | 013N | 0.00 | 1,436.00 |
| 85700-004741 | SHRC LAMINATOR | PDG11701 | 013O | 0.00 | 1,238.00 |
| 85700-004555 | SHRC DELL PC | JGW0N01 | 013S | 0.00 | 1,113.00 |
| 85700-004748 | SHRC LIBRARY COMPUTER | G5MQK11 | 013S | 0.00 | 1,597.00 |
| 85700-004970 | Computer, Desktop | 710167 | 013Y | 1,000.00 | 1,000.00 |
| 85700-004971 | Computer, Desktop | 710232 | 013Y | 1,000.00 | 1,000.00 |
| 85700-004972 | Computer, Desktop | 710185 | 013Y | 1,000.00 | 1,000.00 |
| 85700-004973 | Computer, Desktop | 710126 | 013Y | 1,000.00 | 1,000.00 |
| 85700-004974 | Computer, Desktop | 710173 | 013Y | 1,000.00 | 1,000.00 |
| 85700-004975 | Computer, Desktop | 710152 | 013Y | 1,000.00 | 1,000.00 |
| 85700-004977 | Computer, Desktop | 710133 | 013Y | 1,000.00 | 1,000.00 |
| 85700-004978 | Computer, Desktop | 710177 | 013Y | 1,000.00 | 1,000.00 |
| 85700-004598 | SHRC COMPUTER | 4HW0N01 | 013Z | 0.00 | 1,113.00 |
| 85700-004786 | SHRC INMATE LAB SERVER | GBD7901 | 013Z | 0.00 | 5,682.00 |
| 85700-004959 | Computer, Desktop | 710148 | 013Z | 1,000.00 | 1,000.00 |
| 85700-004960 | Computer, Desktop | 710233 | 013Z | 1,000.00 | 1,000.00 |
| 85700-004961 | Computer, Desktop | 710196 | 013Z | 1,000.00 | 1,000.00 |
| 85700-004962 | Computer, Desktop | 710125 | 013Z | 1,000.00 | 1,000.00 |
| 85700-004963 | Computer, Desktop | 710156 | 013Z | 1,000.00 | 1,000.00 |
| 85700-004964 | Computer, Desktop | 710145 | 013Z | 1,000.00 | 1,000.00 |

MC000421

| | | | | | |
|---|---|---|---|---|---|
| 85700-004965 | Computer, Desktop | 710250 | | 1,000.00 | 1,000.00 |
| 85700-004966 | Computer, Desktop | 710252 | | 1,000.00 | 1,000.00 |
| 85700-004967 | Computer, Desktop | 710234 | 013Z | 1,000.00 | 1,000.00 |
| 85700-004968 | Computer, Desktop | 710142 | 013Z | 1,000.00 | 1,000.00 |
| 85700-004638 | SHRC INDIA DORM  AIR CONDITIONER | 5601A05573 | 016 | 0.00 | 7,591.00 |
| 85700-004636 | SHRC HOTEL DORM AIR CONDITIONER | 5601A05566 | 017 | 0.00 | 7,591.00 |
| 85700-004637 | SHRC GOLF DORM AIR CONDITIONER | 5601A05571 | 018 | 0.00 | 7,591.00 |
| 85700-004635 | SHRC AIR CONDITIONER | 5601A02772 | 019 | 0.00 | 7,591.00 |
| 85700-004634 | SHRC  DORM AIR CONDITIONER | 5601A05567 | 020 | 0.00 | 7,591.00 |
| 85700-004631 | SHRC DELTA DORM AIR CONDITIONER | 5600K09379 | 021 | 0.00 | 7,591.00 |
| 85700-004633 | SHRC CHARLIE DORM AIR CONDITIONER | 5600K09380 | 022 | 0.00 | 7,591.00 |
| 85700-004632 | SHRC BRAVO DORM AIR CONDITIONER | 5600M00971 | 023 | 0.00 | 7,591.00 |
| 85700-004630 | SHRC ALPHA DORM AIR CONDITIONER | 5600M03977 | 024 | 0.00 | 7,591.00 |
| 85700-004579 | SHRC COMPUTER | J7H7611 | 026A | 0.00 | 1,079.00 |
| 85700-004538 | SHRC WARDEN COMPUTER | 6G2Z321 | 028 | 0.00 | 1,237.00 |
| 85700-004641 | SHRC KENTUCKY SCHOOL BUILDING | | 030 | 0.00 | 189,800.00 |
| 85700-004639 | SHRC BOOTCAMP BUILDING | | 031 | 0.00 | 393,500.00 |
| 85700-004640 | SHRC VO-TECH SCHOOL #1 BUILDING | | 032 | 0.00 | 221,500.00 |
| 85700-004680 | SHRC VO-TECH #2 SCHOOL BUILDING | | 033 | 0.00 | 221,500.00 |
| 85700-004664 | SHRC PORTABLE STORAGE BUILDING | | 034 | 0.00 | 3,650.00 |
| 85700-004796 | SHRC WELDING MACHINE | U1010102315 | 034 | 0.00 | 2,953.00 |
| 85700-004526 | SHRC TRAILER (work) | 1M9US1621XR405152 | 037 | 0.00 | 1,800.00 |
| 85700-004932 | John Deere Tractor - Unit #254 | LV5325S130055 | 037 | 23,784.86 | 23,784.86 |
| 85700-005068 | ICE MACHINE | 07011320014873 | 037 | 2,316.00 | 2,316.00 |

MCC K22

**STATE OF LOUISIANA**
**DIVISION OF ADMINISTRATION**
BA-22 (Revised 10/2005)

Date: 7/23/2009      Dept/Budget Unit/Program #:    Dept. of Corrections/LHSAO/451

Dept/Agency/Program Name:   DPS&C/LHSAO/Local Housing of Adult Offende    OCR/CFMS Contract #:    682788

Agency/Program BA-22 # :   451/#1     Agency/Program Contract #:   451/682788

| Fiscal Year for this BA-22: | 2009-10 (yyyy-yy) | BA-22 Start/End Dates: | 07/27/09 (Start Date) | 06/30/10 (End Date) |
|---|---|---|---|---|

Multi-year Contract (Yes/No):       *If "Yes", provide contract dates:*
      Yes    07/27/09 (Start Date)      07/26/19 (End Date)

Madison Parish Law Enforcement District       682788
(Contractor/Vendor Name)                  (Contractor/Vendor No.)

To utilize the Steve Hoyle Rehabilitation Center to house approximately 537 state offenders and provide a regional re-entry facility
*(Provide a statement of "Services Provided")*
for state offenders housed in local facilities

Contract Amendment (Yes/No):    No    Amendment Start/End Dates:
                                              (Start Date)      (End Date)

Contract Cancellation (Yes/No):    No    Date of Cancellation:

*(Provide rationale for amendment or cancellation)*

| This information is to be provided at the Agency/Program Level | | | | |
|---|---|---|---|---|
| MEANS OF FINANCING | AMOUNT | | | |
| | Current Year | % | Total Contract | % |
| State General Fund | $4,440,029 | 100.0% | $47,831,814 | 100.0% |
| Interagency Transfers | $0 | 0.0% | $0 | 0.0% |
| Fees and Self Gen. | $0 | 0.0% | $0 | 0.0% |
| Statutory Dedication | $0 | 0.0% | $0 | 0.0% |
| Federal | $0 | 0.0% | $0 | 0.0% |
| TOTALS | $4,440,029 | 100.0% | $47,831,814 | 100.0% |

*Specify Source (i.e., grant name, fund name, IAT sending agency and revenue source, fee type and source, etc.)
Are revenue collections for funds utilized above in line with budgeted amounts? (Yes/No)      Yes
If not, explain.

| This information is to be provided at the Agency/Program Level | |
|---|---|
| Name of Object Code/Category: | Miscellaneous Charges/Other Charges |
| Object Code/Category Number: | 3650/65 |
| Amount Budgeted: | $136,087,492 |
| Amount Previously Obligated: | $0 |
| Amount this BA-22: | $4,440,029 |
| Balance: | $131,647,463 |

The approval of the aforementioned contract will not cause this agency/program to be placed in an Object Category deficit.

Agy/Prg Contact:                        Reviewed/Approved By: *Elaine Leibenguth*
Name: James M. Le Blanc                 Name: Elaine Leibenguth
Title: Secretary                          Title: Budget Administrator I
Phone: (225) 342-1597                Phone: (225) 342-7451

| FOR AGENCY USE ONLY | | | | | | |
|---|---|---|---|---|---|---|
| AGENCY | PROGRAM | ACTIVITY | ORGANIZ. | OBJECT | REPT CAT | AMOUNT |
| 451 | 10G0 | | 9004 | 3650 | | $4,440,029 |

MCC K23

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
BA22 LOG SHEET - LOCAL HOUSING CONTRACTS
FISCAL YEAR: 2009-2010

7/23/2009 15:34

LOCAL HOUSING OF ADULT OFFENDERS                        Budget      136,087,492

| Obj. Code EXPENDITURE ORG. | CONTRACT NUMBER | Explanation CONTRACTOR | PROGRAM A TYPE OF SERVICE | BUDGET BA-22 (C/Y) AMOUNT | Amnt. Budgeted AMOUNT OBLIGATED YTD |
|---|---|---|---|---|---|
| 9004 | 682788 | Madison Parish Law Enforcement District | Housing Adult Inmates | 4,440,029 | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |
| | | | | | 4,440,029 |

4,440,029

| Obj. Code EXPENDITURE ORG. | CONTRACT NUMBER | Explanation CONTRACTOR | PROGRAM B TYPE OF SERVICE | BUDGET BA-22 (C/Y) AMOUNT | Amnt. Budgeted AMOUNT OBLIGATED YTD |
|---|---|---|---|---|---|
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |
| | | | | | 0 |

0

P:\Disco440x1V_red\LEISENGUTHE\My Documents\Excel\FY2010\LHSAO-BA-22\BA22-LogSheet-LocalHousing.xls
7/23/2009

MCC K24

**BOBBY JINDAL**
Governor

**JAMES M. Le BLANC**
Secretary

# State of Louisiana
## Department of Public Safety and Corrections

August 13, 2009

Ms Sandra Gillen, Director
Office of Contractual Review
Division of Administration
P. O. Box 94095
Baton Rouge, LA 70804-9095

RE: Justification for late submittal for CFMS# 682788

Dear Ms. Gillen:

The above-referenced cooperative endeavor with the Madison Parish Law Enforcement District for the purpose of providing housing to state offenders and a reentry facility for state offenders housed in local facilities is being submitted late due to final decisions made on the utilization of the SHRC facility with the contractor, internal processing, and obtaining needed approvals required.

Your approval of this cooperative endeavor is appreciated. If any additional information is necessary, please call 225-342-3991.

Sincerely,

Suzanne C. Sharp, Director
Procurement and Contractual Review Division

Sylvia Hanson
Contracts/Grants Reviewer

SCS/sh

Enclosure

Post Office Box 94304, Baton Rouge, Louisiana 70804-9304 • (225) 342-6666 • Fax (225) 342-6593
www.doc.la.gov
An Equal Opportunity Employer

MCC K25



**BOBBY JINDAL**
Governor

**JAMES M. LE BLANC**
Secretary

## State of Louisiana
### Department of Public Safety and Corrections

August 14, 2009

Ms. Sandra Gillen, Director
Office of Contractual Review
Division of Administration
P. O. Box 94095
Baton Rouge, LA  70804-9095

RE: Justification for Multi-Year contract for CFMS# 682788

Dear Ms. Gillen:

Please consider this justification for the Louisiana Department of Public Safety and Corrections, to enter into a multi-year cooperative endeavor with The Madison Parish Law Enforcement District.  Funds for the first fiscal year of the coop are available and payment and performance for subsequent fiscal years shall be in accordance with La. R.S. 15:824(B)(1).

This cooperative endeavor is to provide housing for state offenders and provide a regional reentry facility for state offenders housed in local facilities.  This coop will allow for the continued provision of these services to the offenders.

Your approval of this cooperative endeavor is appreciated.  If any additional information is necessary, please call 225-342-3991.

Sincerely,

Suzanne C. Sharp, Director
Procurement and Contractual Review Division

*Sylvia Hanson*
Sylvia Hanson
Contracts/Grants Reviewer

SCS/sh

Enclosure

MCC K26



**LaSALLE MANAGEMENT COMPANY, LLC**
192 Bastille Lane, Suite 200
Ruston, LA 71270

January 10, 2014

To: James M. LeBlanc, Secretary

LOUISIANA DEPT. OF PUBLIC SAFETY AND CORRECTIONS
P.O. BOX 94304 BATON ROUGE, LA  70804-9304

As a sub-contractor to the Madison Parish Sheriff for the management of the Detention Facility located in Tallulah, Madison Parish, LA, the LaSalle Management Company, L.L.C. agrees to meet all the contractual obligations of contact #682788 between the Louisiana Department of Public Safety and Corrections and the Madison Parish Sheriff's Office.

_____      _____January 10, 2014_____
WILLIAM K. MCCONNELL,  Managing Director                     Date

MCC K27

Exhibit 7

# MADISON CORRECTIONAL CENTER

HC-11          L.T.C.W. / M.C.C.M.

## COMMUNICABLE AND INFECTIOUS DISEASE

**OBJECTIVE:** To address the management of any infectious disease

1. Have appropriate protective supplies available such as gloves, face mask, shield, gowns and aprons.

2. Handwashing and personal hygiene shall be promoted.

3. All offender living areas shall be cleaned on a regular basis.

4. Minimum temperatures shall be monitored on all laundry.

5. Kitchen areas shall be cleaned with an approved disinfectant.

6. All sharps / needles should be placed in sharp containers.

7. Never recap needles.

8. Report all needle sticks.

9. Vaccinations given in a timely manner and monitored as ordered.

10. Universal precautions shall always be practiced with any bodily fluids.

11. All HIV, Hepatitis C, critically ill imates will be transferred to DOC facility for further evaluation and treatment measures.

12. All contaminated material will be placed in a red bag and taken to bio hazard room and disposed.

13. Biohazard area should be locked at all time.

14. Any lab work done / ordered per physician will be sent to lab.

1.

WESLEY/MCC 1

STATE OF LOUISIANA
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

**Health Care Policy**
**No. HC-09B**                                                         08 June 2011

COMMUNICABLE AND CONTAGIOUS DISEASES
AND INFECTION CONTROL PROGRAM

VIRAL HEPATITIS

1.   **OBJECTIVE:**  To address the management of viral hepatitis infection.

2.   **REFERENCES:**  ACA Standards 4-4356 and 4-4387 (Adult Correctional Institutions;) La. R.S. 15:739 and Center for Disease Control (CDC) guidelines.

3.   **POLICY:**  It is the Secretary's policy that there shall be a written plan to address the management of viral hepatitis A, B and C infections.

4.   **APPLICABILITY:**  Deputy Secretary, Chief of Operations, Department's Medical/Mental Health Director, Regional Wardens and Wardens.  Each Warden is responsible for ensuring that appropriate unit written policy and procedures are in place to comply with the provisions of this policy.

5.   **GENERAL:**

The viral hepatitis infection management plan shall include procedures for:

- Surveillance (identification and monitoring);
- Immunization and other prevention measures;
- Treatment protocols;
- Follow-up care;
- Isolation (when indicated);
- Pre- and Post-exposure management protocols;
- Education and staff training; and
- Discharge planning.

6.   **PROCEDURES FOR HEPATITIS A:**

A.   Transmission

Hepatitis A virus (HAV) infection is acquired primarily by the fecal-oral route by either person-to-person contact or ingestion of contaminated food or water.  HAV can be stable in the environment for months.  Heating food to temperatures greater than

WESLEY/MCC 2

Health Care Policy No. HC-09B
08 June 2011
Page Two

185°F (85°C) for one minute or disinfecting surfaces with a 1:100 dilution of bleach in tap water will inactivate HAV.

B.   Surveillance for Hepatitis A

Hepatitis A is a reportable disease.  The goals of Hepatitis A surveillance include:

- Identifying contacts of contagious case-patients who might require postexposure prophylaxis;
- Detecting outbreaks;
- Monitoring disease incidence by identifying acute, symptomatic infections in all age groups; and
- Determining the epidemiologic characteristics of infected persons, including the source of infection.

C.   Treatment for HAV Infection

Prophylactic vaccination and post exposure prophylaxis are the treatments to be considered for the elimination of Hepatitis A infections.  Medical isolation may be required to contain the possible transmission of the virus until it is confirmed that the patient is not contagious.  Medical isolation, if indicated, is mostly beneficial when performed early in the infection.

D.   Postexposure Prophylaxis Against HAV Infection

Individuals exposed to active HAV and who are not immune as a result of previous Hepatitis A vaccine or prior exposure shall be treated according to current CDC guidelines.

7.   **PROCEDURES FOR HEPATITIS B:**

A.   Transmission

Hepatitis B virus (HBV) infection is spread by contact with an infected person's blood and/or body fluids.

B.   Prophylaxis Against HBV Infection

Since there is no known cure for Hepatitis B infection, prevention is important. Hepatitis B vaccine is the best protection against HBV infection.  All direct care staff shall be offered the Hepatitis B vaccine.

C.   Treatment for HBV Infection

WESLEY/MCC 3

Health Care Policy No. HC-09B
08 June 2011
Page Three

Once the primary care provider has determined that an offender is positive for Hepatitis B, the offender shall be referred to the Louisiana State University (LSU) hospital hepatitis clinic by completing the Hepatitis Clinic Screening (Form HC-09-A.)

D.   Post Exposure Prophylaxis Against HBV Infection

Each facility shall have a post exposure policy and procedure for offenders and employees based on CDC guidelines. This policy shall address at a minimum, post exposure prophylaxis and follow up testing. Offenders cannot refuse to have blood drawn for testing if they are involved in an incident in which another person was exposed to their blood or body fluids.

8.   PROCEDURES FOR HEPATITIS C:

A.   Hepatitis C virus (HCV) infection is a bloodborne pathogen and is transmitted primarily through large or repeated direct percutaneous exposures to blood.

B.   Any changes to existing guidelines for screening, work-up, and treatment of offenders with HCV shall be determined by the cooperative efforts of the Department and LSU hospital hepatitis staff.

C.   Education about the risk factors for HCV shall be included in health education information given to offenders during orientation at the offender's permanent state facility assignment.

D.   A Hepatitis Clinic Screening (Form HC-09B-A) shall be completed for all HCV positive offenders and forwarded to LSU hospital hepatitis staff. If treatment is contraindicated as detailed in Section 8.N., this shall be indicated on Form HC-09B-A, with the required information necessary to add the offender to the LSUMC and DPS&C databases (i.e., name, DOC number, facility, date of HCV test, results of ALT, etc.) and reason(s) for exclusion from treatment. Form HC-09B-A may also be used to obtain confirmation from the LSU hospital hepatitis staff that treatment is contraindicated for an offender based on the absolute or relative contraindications. If there is uncertainty about whether the offender qualifies for treatment consideration, Form HC-09B-A shall be completed and sent to the LSU hospital hepatitis staff for disposition. A copy of the form shall also be forwarded to the Louisiana State Penitentiary (LSP) Medical Director, who compiles the Department's database of all HCV positive offenders.

E.   Via Form HC-09B-A, qualifying HCV positive adult male offenders housed at non-LSP facilities are referred to the reviewing LSU hospital hepatitis staff. Their recommendations may include transfer of the offender to Elayn Hunt Correctional Center (EHCC) for further evaluation, work-up and treatment. At LSP, Form HC-09B-A shall likewise be completed as appropriate for all HCV positive offenders and sent to the LSU hospital hepatitis staff and the LSP Medical Director. However, a clinic

WESLEY/MCC 4

Health Care Policy No. HC-09B
08 June 2011
Page Four

        referral form must be completed for the offender to be referred to the on-site hepatitis clinic.

F.      LSP, EHCC and LCIW offenders who have not been excluded from treatment consideration based on the established criteria shall be seen in the respective on-site hepatitis clinic for further evaluation, work-up and possible treatment.

G.     Offenders who are transferred to EHCC for further evaluation shall remain at EHCC during the course of their treatment.   The offender shall be returned to the transferring facility when:

        1)     It is determined after further work-up that the offender does not qualify for treatment;

        2)     The offender refuses or cannot tolerate the treatment; or

        3)     Treatment is completed.

H.     Follow-up and surveillance shall continue at the offender's original facility, pursuant to the provisions of this policy.  However, in the event of extenuating circumstances that prevent the offender from being treated at the original facility, an offender may undergo work-up and treatment at a facility other than LSP, EHCC or LCIW.  These facilities shall then follow the same guidelines as those listed for offenders transferred to EHCC.  Since there will be no on-site hepatitis clinic, they shall be followed in the hepatitis clinic at an LSU hospital.

I.      If a health care practitioner has a clinical suspicion that an offender is infected with HCV, screening is initiated by performing a Liver Enzyme Level (ALT) test.

J.     If the ALT is elevated (any elevation above the upper limit of normal (>ULN) for the testing lab) and the elevation cannot be attributed to medication or other medical conditions, an HCV screening antibody test shall be performed.  If HCV test is positive, treatment screening shall be initiated by assessing the absolute contraindications for treatment.

K.     If the ALT test is within normal limits, the offender shall be observed with annual ALT testing if indicated.

L.     If there is a confirmed report of a prior positive HCV screening antibody test, then further testing is required to determine the qualification for treatment.

        1)     Perform ALT:

            &bull;    If the ALT result is normal, no further work-up needed, follow ALT levels every one to two years;

WESLEY/MCC 5

- If the ALT result is elevated, evaluate for absolute contraindications to treatment.

2) If the offender has laboratory evidence of significant liver disease (e.g. prolonged PT, elevated total bilirubin; decreased albumin, or low platelet count) initiate screening for treatment even if the ALT is normal.

M. If the offender is HCV (+), has at least one elevated ALT (or has other evidence of significant liver disease) and is negative for all absolute contraindications, the offender shall be referred to the LSU Hospital hepatitis staff for evaluation of relative contraindications. If the offender is positive for any of the absolute contraindications, referral for treatment to the LSU hospital hepatitis clinic is not indicated. Rather, the offender shall be evaluated by the facility medical staff on a regular basis (annually at a minimum.) However, Form HC-09B-A is to be completed as described in this Section, whether for treatment consideration or not, and sent to the LSU hospital hepatitis staff and the LSP Medical Director.

N. Absolute contraindications to treatment

1) Absolute neutrophil count (ANC) < 1000 cells/mm$^3$;

2) Platelets < 75,000 cells/mm$^3$;

3) Previously diagnosed autoimmune disease:

    a. Rheumatoid arthritis;
    b. Multiple sclerosis;
    c. Hemolytic anemia (Hgb <10 grams);
    d. Certain types of glomerulonephritis;
    e. Myasthenia gravis;
    f. Chronic thyroiditis;
    g. Reiter's syndrome;
    h. Graves' disease;
    i. Systemic lupus erythematosus (SLE).

4) Poorly controlled chronic disease:

    a. DM (HgA1C > 9);
    b. HTN (SBP >150 mmHg, DBP > 100 mmHg) on repeat readings;
    c. Severe or unstable coronary artery disease (CAD):

        - Symptomatic angina;
        - S/p coronary bypass, angioplasty, or MI in preceding 12 months;
        - Hx CHF;
        - Cardiomyopathy;

WESLEY/MCC 6

Health Care Policy No. HC-09B
08 June 2011
Page Six

- Dysrhythmias;
- If >50 years old, need EKG; if abnormal or history indicates, order exercise stress test (EST); if EST is normal, review subjective contraindications.

5) Renal disease with serum creatinine >2.0 mg/dl, or chronic renal failure requiring dialysis;

6) Seizures (any seizure documented in preceding 12 months);

7) Diagnosis of major depression or psychotic disorders (i.e., schizophrenia, bipolar, etc.) documented chronic violent behavior; major suicide attempt. If history or current status is questionable, get an evaluation by a psychiatrist due to psychiatric contraindications to interferon therapy;

8) Decompensated cirrhosis or sequelae (ascites, varices, etc.);

9) Remaining time left until earliest discharge date less than two years (24 months);

10) Positive illicit drug screen or Disciplinary Board Court conviction for drug paraphernalia within previous 12 months;

11) Solid organ transplant;

12) Pregnancy;

13) Concurrent HIV infection with CD4 count < 300;

14) Age < 18.

Note: Because some of these contraindications may change with time, continued follow-up and evaluation is required, with referral when indicated.

O.   Relative Contraindications

1) Age >60;

2) Stable CAD/abnormal ECG;

3) Controlled chronic disease;

4) Any serious disease with a poor ten year survival;

5) Previous or current diagnosis of neoplasm;

WESLEY/MCC 7

Health Care Policy No. HC-09B
08 June 2011
Page Seven

    6)      Psoriasis;

    7)      Thyroid Disease (hyperthyroidism or hypothyroidism).

P.    Treatment for HCV Infection

    1)      The primary goal for treatment of HCV is the prevention of cirrhosis. There are different treatment modalities currently available for the treatment of HCV. The decision to treat, and with which modality, shall be made in consultation with LSU hospital hepatology staff.

    2)      If the offender is currently taking Isoniazid (INH) for tuberculosis or another potentially hepatotoxic medication, referral can be delayed. The ALT shall be rechecked six weeks after the treatment is completed to determine if the elevation is due to HCV or the medication. If the ALT is still elevated, then referral is indicated.

    3)      If the offender tests positive for tuberculosis (TST) (with normal chest x-ray) while undergoing ALT evaluation for HCV, the initiation of INH shall be delayed until the evaluation is completed.

    4)      The LSU hospital hepatitis staff will review all biopsy results and other clinical findings to determine HCV management.

Q.    Prophylaxis against HCV Infection

    1)      Currently, there is no vaccine available for the prevention of Hepatitis C.

    2)      Currently, there is no recommended prophylactic treatment for HCV exposure.

s/James M. Le Blanc
Secretary

Form HC-09B-A:    Hepatitis Clinic Screening

This Health Care Policy supersedes Health Care Policy No. HC-34 dated 30 August 2004.

HC – 09B Form A

**HEPATITIS CLINIC SCREENING**
**COMPLETE FOR ALL PATIENTS SCREENED**

_____ NO SCREENING CONTRAINDICATION FOR TREATMENT (complete form as thoroughly as possible)
_____ REQUIRES FURTHER EVALUATION FOR POSSIBLE TREATMENT (complete form thoroughly)
_____ TREATMENT CONTRAINDICATED AS PER CRITERIA (complete form revealing contraindications)

DOC#:_____ FACILITY:_____ DATE:_____
LAST NAME:_____ FIRST NAME:_____
GENDER:_____ DATE OF BIRTH:_____
RACE: AA   White   Hisp   Asian   Native American   Other:
HCV Ab:_____ Date:_____
Prior liver biopsy?   No   Yes _____
Previous HCV treatment?   No   Yes _____

**LAB RESULTS:**
Initial ALT:   Date:_____   Result:_____   Lab Normal_____
F/U ALT:   Date:_____   Result:_____   Lab Normal_____
            Date:_____   Result:_____   Lab Normal_____
Hematology:   Date:_____ WBC:_____ ANC:_____ Hgb:_____ Hct:_____ Platelet:_____
Previous HCV Viral Load (if done):_____   Date:_____
HIV Test:   Date:_____ Result:_____ CD4:_____ Date:_____
Misellaneous:   Date:_____ PT:_____ Bilirubin:_____ Albumen:_____

**SCREENING CRITERIA:**
NO   YES
_____ _____ AGE:   <18, >60
_____ _____ DOC time left to serve <24 months:  GTD_____ PED_____ Full D/C Date:_____
_____ _____ POSITIVE ELLICIT DRUG SCREEN OR DB COURT CONVICTION FOR DRUGS (<12 MONTHS)
_____ _____ PROTECTIVE CUSTODY ISSUES (N5)
_____ _____ PREGNANT
_____ _____ HX/TREATMENT FOR MAJOR MENTAL DISORDERS:_____ CURRENT:_____ Prior date:_____
              PSYCH DX:_____
              DOCUMENTED CHRONIC VIOLENT OR EXPLOSIVE BEHAVIOR
_____ _____ HISTORY OF SUICIDE ATTEMPT:   DATE:_____
_____ _____ POORLY CONTROLLED DIABETES MELLITUS (HgbA1C>9)  Date:_____ Result:_____
_____ _____ SERIOUS PULMONARY DISEASE
_____ _____ ACTIVE GOUT
_____ _____ ACTIVE THYROID DISEASE (uncontrolled with treatment)
_____ _____ POORLY CONTROLLED PSORIASIS
_____ _____ RENAL FAILURE, CHRONIC RENAL DISEASE
_____ _____ REQUIRES ORAL STEROIDS >10 MG DAILY
_____ _____ POORLY CONTROLLED HYPERTENSION(sys>150,dia>100repeatedly; can re-eval when controlled)
_____ _____ SYMPTOMATIC PERIPHERAL VASCULAR DISEASE
_____ _____ CAD:   _____Symptomatic angina   _____S/P CABG, angioplasty, or MI:  Date:_____
              _____Hx CHF   _____Cardiomyopathy   _____Arrhythmias
_____ _____ AGE>50: Needs EKG, if abnormal – needs EST:  Date:_____ Result:_____
_____ _____ SIGNIFICANT RETINAL ABNORMALITIES
_____ _____ HISTORY OF CNS TRAUMA OR SEIZURE WITHIN 12 MONTHS
_____ _____ POSITIVE HIV TEST WITH CD4<300
_____ _____ PREVIOUS OR CURRENT NEOPLASM: Date:_____ Source:_____
_____ _____ HISTORY OF ORGAN TRANSPLANT: What:_____ Date:_____ Where:_____
_____ _____ HEMATOLOGY DISORDERS OR ABNORMALITIES: Date:_____ Hgb_____(<11)
              Hct_____(<32%) WBC_____ ANC_____(<1000) PLATELETS_____(<75,000)
_____ _____ HISTORY OR EVIDENCE OF ASCITES:  Date:_____ Treatment:_____
_____ _____ EVIDENCE OF ENCEPHALOPATHY: Describe (ie. Asterixis, Confusion)
_____ _____ OTHER AUTOIMMUNE DISEASE:____Rheumatoid Arthritis ____Multiple Sclerosis ____SLE
              ____Myasthenia Gravis ____Reiter's syndrome ____Other:
_____ _____ HYPERSENSITIVITY TO INTERFERON OR REBAVIRIN: Date:_____ Describe:

WESLEY/MCC 9

HC-09B Form A
PAGE 2

HEPATITIS CLINIC SCREENING

LAST NAME:_____ FIRST NAME:_____ DOC#:_____

INSTITUTION MEDICAL DIRECTOR REVIEW

SIGNATURE:_____ DATE:_____

PHONE:_____ FAX:_____

1. FORWARD COPY TO E. BRITTON @ LSU UNIT FAX (225) 368-1076:

   DATE:

   CONSULT REQUESTED:         _____NO        _____YES

   HEPATITIS CLINIC RECOMMENDATIONS:

   _____ DATA INDICATES CONTRAINDICATION TO TREATMENT FOR HCV (see Screening Criteria)

   _____ POTENTIAL CANDIDATE FOR TREATMENT, WILL RE-EVAL: DATE:

   _____ NORMAL ALT TESTS; REPEAT ALT TESTS AS PER ALGORITHM.

   _____ DATA COMPLETE, NO CONTRAINDICATIONS KNOWN AT THIS TIME FOR HCV TREATMENT.
         FORWARD COPY TO EHCC.

   DATE:_____ SIGNATURE:_____

2. FORWARD TO EHCC FOR REVIEW:

   DATE:_____ FAX:_____ E-MAIL:_____ MAIL:_____

   EHCC RESPONSE:

   _____ Transfer to EHCC:    Date:

   _____ Comments/Recommendations:


   DATE:_____ SIGNATURE EHCC MD:_____

3. FORWARD TO LSP MEDICAL DIRECTOR FOR INCLUSION INTO DOC DATABASE

   DATE:_____    FAX: 225-655-2273    E-MAIL:_____

Revised 6/01/06

WESLEY/MCC 10

Form HC-09-B
19 August 2011

Quarter/Year: _____

## INFECTIOUS DISEASE STATUS AND TESTING PRIOR TO RELEASE ON PAROLE

| Unit | THIS QUARTER | | SYPHILIS | | | | HIV | | | | HEPATITIS A | | | | HEPATITIS B | | | | HEPATITIS C | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | # Released on Parole | # Refused Testing | Known Positive | Tested + | Tested - | Known Converter | Known Positive | Tested + | Tested - | Known Converter | Known Positive | Tested + | Tested - | Known Converter | Known Positive | Tested + | Tested - | Known Converter | Known Positive | Tested + | Tested - | Known Converter |
| AVC | | | | | | | | | | | | | | | | | | | | | | |
| JLDCC | | | | | | | | | | | | | | | | | | | | | | |
| DCI* | | | | | | | | | | | | | | | | | | | | | | |
| DWCC | | | | | | | | | | | | | | | | | | | | | | |
| EHCC | | | | | | | | | | | | | | | | | | | | | | |
| FWCC | | | | | | | | | | | | | | | | | | | | | | |
| LCIW | | | | | | | | | | | | | | | | | | | | | | |
| LSP | | | | | | | | | | | | | | | | | | | | | | |
| PCC | | | | | | | | | | | | | | | | | | | | | | |
| RCC | | | | | | | | | | | | | | | | | | | | | | |
| ALC | | | | | | | | | | | | | | | | | | | | | | |
| WNC | | | | | | | | | | | | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | | | | | | | | | | | | |

* Includes State Police Barracks

WESLEY/MCC 11

HC-09B Attachment A



HC - 09 B Attachment B



Revised 2/23/04

WESLEY/MCC 13

HC-09 B Attachment C

**SCHOOL OF
MEDICINE IN NEW ORLEANS**
Louisiana State University
Medical Center
Earl K. Long Medical Center
5825 Airline Highway
Baton Rouge, LA 70805-2498
Telephone: (504) 358-1065
Fax: (504) 358-1076



Medicine

March 22, 2002

Re: Psychiatric Component of HCV Screening Tool

Document on the screening tool use of any current psychotropic drugs (specify the drugs) and reason for its use (diagnosis). If the inmate is currently on drug therapy and/or has active mental illness (aside from controlled depression), we need a psychiatrist to interview the inmate to evaluate for contraindications to interferon treatment which include:

1. Past / present psychosis and meds prescribed for such condition
2. Uncontrolled or history of recurrent major depression
3. Hx of suicide attempts (document methods and dates)
4. Documented chronic violent or explosive behavior

Please call Nancy Bailey or Elizabeth Britton at (225) 354-2000 if you have any questions.

William M. Cassidy, MD

HCVscreenpsy

School of Allied Health Professions   School of Graduate Studies      School of Medicine in Shreveport      2/23/04
School of Dentistry                   School of Medicine in New Orleans   School of Nursing

WESLEY/MCC 14